No. 20-1732C
(Judge Dietz)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

LESLIE J. CONTI,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

---

**PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

---

BRIAN D. SCHENK
Midwest Military & Veterans Law, PLLC
310 4th Avenue S., Suite 5010
Minneapolis, Minnesota 55415
Telephone: (202) 557-6570 (c)
Facsimile: (612) 206-3170
brian@militaryandveteranslaw.com

*Counsel for Plaintiff*

June 28, 2021

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... iii

I. QUESTION PRESENTED ........................................................................1

II. STATEMENT OF THE CASE .................................................................1

   A. Nature of the Case.............................................................................1

   B. Legal Standards................................................................................2

      1. RCFC 12(b)(6) Motion to Dismiss for Failure to State a Claim........................................2

      2. RCFC 52.1 Judgment on The Administrative Record .....................................2

      3. Judicial Review of Military Records-Correction Board Decisions ..................................3

      4. Relevant Regulatory Standards Applicable to ANG Promotions and Assignments ..........6

   C. Counter-Statement of Facts ................................................................12

      1. Ms. Conti's career and position overgrade status ...........................................12

      2. Inspector General Complaint ...........................................................16

      3. AFBCMR Application.....................................................................18

      4. AFBCMR Decision.........................................................................22

III. ARGUMENT .........................................................................................23

   A. The ABCMR's 2019 decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law because the Board failed to find, despite clear evidence, that Ms. Conti's command committed material error or injustice by violating procedures requiring timely, adequate resolution of her overgrade status and career progression....................................23

      1. Ms. Conti presented clear errors and injustices to the AFBCMR that her command committed several procedural violations related to her overgrade status and career progression ...............................................................23

      2. The AFBCMR arbitrarily and capriciously failed to find that Ms. Conti's command's procedural violations precluded her eligibility for promotion .........................................27

3. The AFBCMR's adoption and incorporation of the IG findings and NGB Advisory Opinion resulted in irrational decisionmaking ................................................................30

4. The AFBCMR's rationale failed to adequately consider issues raised in Ms. Conti's application ...........................................................................................................................32

IV. RESPONSE TO DEFENDANT'S MOTION TO DISMISS ...................................................34

A. This Court has jurisdiction over Ms. Conti's claims ...........................................................34

B. Ms. Conti's allegations with respect to the myriad procedural irregularities related to her overgrade status and denial of career progression and promotion are justiciable because they state facially plausible procedural violations in the AFBCMR's decisionmaking and the underlying conduct of Ms. Conti's command on review before the Board...................35

C. Because Ms. Conti's claims are firmly rooted in plausible allegations of procedural errors committed by Ms. Conti's command and the AFBCMR, Ms. Conti need not establish a clear-cut legal entitlement to a promotion to state a claim for relief ...................................40

V. CONCLUSION ......................................................................................................................41

## TABLE OF AUTHORITIES

**CASES**

*Adams v. United States*, 117 Fed. Cl. 628 (2014) ..........................................................................5, 6

*Adkins v. United States*, 68 F.3d 1317 (Fed. Cir. 1995) ........................................36, 38, 39

*Arroyo v. United States*, 116 Fed. Cl. 691 (2014).........................................................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................2

*Bannun, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005) .....................................................3

*Barnick v. United States*, 591 F.3d 1372 (Fed. Cir. 2010).............................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................2

*Bond v. United States*, 47 Fed. Cl. 641 (2000) ...........................................................................36

*Boyer v. United States*, 81 Fed. Cl. 188 (2008) ..........................................................................5

*Butler v. Principi*, 244 F.3d 1337 (Fed. Cir. 2001) .....................................................................5

*Caddington v. United States*, 147 Ct. Cl. 629 (1959) .................................................................4

*Call Henry, Inc. v. United States*, 855 F.3d 1348 (Fed. Cir. 2017) .............................................2

*Cameron v. United States*, 106 Fed. Cl. 551 (2012) ...................................................................4

*Camilo v. United States*, 89 Fed. Cl. 671 (2009) .......................................................................3

*Chappell v. Wallace*, 462 U.S. 296 (1983) ............................................................................3, 37

*Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020)...................................................................................................................6, 30, 36

*Dodson v. Dep't of Army*, 988 F.2d 1199 (Fed. Cir. 1993) .......................................................36

*Duhon v. United States*, 198 Ct. Cl. 564 (1972) .........................................................................4

*Dysart v. United States*, 369 F.3d 1303 (Fed. Cir. 2004) ........................................................3, 9

*FFTF Restoration Co., LLC v. United States*, 86 Fed. Cl. 226 (2009).........................................19

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005).............................................................35

*Gose v. U.S. Postal Serv.*, 451 F.3d 831 (Fed. Cir. 2006) .............................................................29

*Haselwander v. McHugh*, 774 F.3d 990 (D.C. Cir. 2014) .......................................................4, 31

*Heisig v. United States*, 719 F.2d 1153 (Fed. Cir. 1983) ...............................................................5

*Hensley v. United States*, 292 F. Supp. 3d 399 (D.D.C. 2018).....................................................23

*Hoskins v. United States*, 61 Fed. Cl. 209 (2004) .........................................................................2

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001) ........................................................................................................................................5

*In re Sang-Su Lee*, 277 F.3d 1338 (Fed. Cir. 2003)......................................................................32

*Lewis v. United States,* 458 F.3d 1372 (Fed. Cir. 2006) .........................................................9, 40

*Lindsay v. United States,* 295 F.3d 1252 (Fed. Cir 2002).................................................23, 35, 36, 39

*Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) ..........................................................3

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .....................................................................................................................................6, 31

*Miller v. United States*, 98 Fed. Cl. 767 (2011).............................................................34, 38, 40

*Murphy v. United States*, 993 F.2d 871 (Fed. Cir. 1993)..................................................23, 36, 39

*Pedden v. United States*, 145 Fed. Cl. 785 (2019)...................................................................28, 29

*Perez v. United States*, 156 F.3d 1366 (Fed. Cir. 1998) ..............................................................1

*Porter v. United States*, 163 F.3d 1304 (Fed. Cir. 1998)..............................................................3

*Reeves v. United States*, 49 Fed. Cl. 560 (2001)..........................................................................41

*Roberts v. United States*, 741 F. 3d 152 (D.C. Cir. 2014) .....................................................23, 30

*Roth v. United States*, 378 F.3d 1371 (Fed. Cir. 2004)...........................................................4, 37

*Sargisson v. United States*, 913 F.2d 918 (Fed. Cir. 1990).........................................................39

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) .....................................................................................2

*Schism v. United States*, 316 F.3d 1259 (Fed. Cir. 2002) ..................................................5

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ................................................................29

*Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735 (2012) ...................................3

*Smith v. Sec'y of Army*, 384 F.3d 1288 (Fed. Cir. 2004) .............................................34

*Terry v. United States*, 144 Fed. Cl. 150 (2019) .........................................................37

*Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005) .........................32

*Van Cleave v. United States*, 70 Fed. Cl. 674 (2006) ...................................................5

*Verbeck v. United States*, 97 Fed. Cl. 443 (2011).............................................5, 31, 32

*Walls v. United States*, 582 F.3d 1358 (Fed. Cir. 2009) ...............................................4

*Wronke v. Marsh*, 787 F.2d 1569 (Fed. Cir. 1986) .......................................................4

*Yee v. United States*, 206 Ct. Cl. 388 (1975) ...............................................................4

*Young v. United States*, 497 F. App'x 53 (Fed. Cir. 2012)...........................................2

## STATUTES

10 U.S.C. § 628......................................................................................................37

10 U.S.C. § 1201....................................................................................................35

10 U.S.C. § 1401....................................................................................................35

10 U.S.C. § 1552.................................................................................................3, 37

28 U.S.C. § 1491....................................................................................................41

## RULES, REGULATIONS, AND OTHER AUTHORITIES

Air Force Policy Directive AFPD 36-25, *Military Promotion and Demotion* (May 7, 2014) .........
....................................................................................................6, 19, 20, 21, 24

Air Force Instruction 36-2101, *Classifying Military Personnel (Officer and Enlisted)* (June 25, 2013) ...................................................................................................7, 8, 9, 40

Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) .........................................................................6, 7, 9, 10, 17, 19, 20, 21, 24, 28, 29, 31

Air Force Instruction 36-2603, Air Force Board for Correction of Military Records (AFBCMR) (Sept. 18, 2017)............................................................................................................................20

Air National Guard Instruction 36-2101, *Assignments within the Air National Guard (ANG)* (Apr. 10, 2012)............................................................................11, 12, 16, 19, 21, 22, 24, 25, 39

Air National Guard Instruction 36-2502, *Promotion of Airmen* (June 17, 2010).............................
....................................................................................................................7, 9, 10, 24, 28, 29

Department of Defense Directive 1304.20, *Enlisted Personnel Management System (EPMS)*, (July 28, 2005) ................................................................................6, 19, 20, 21, 24, 39

RCFC 12 .............................................................................................................................1, 2

RCFC 52.1 ................................................................................................................................2

APPENDIX

Plaintiff's Exhibit A: Air Force Instruction 36-2101, *Classifying Military Personnel (Officer and Enlisted) (June 25, 2013)* ..............................................................................................................1

**PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR JUDGMENT ON THE ADMINISTRATIVE <u>RECORD</u>**

Plaintiff, Leslie J. Conti, respectfully submits this memorandum of law in opposition to Defendant's motion to dismiss or for judgment on the administrative record. Further, pursuant to RCFC 52.1, Ms. Conti now cross-moves for judgment on the administrative record and supplies this memorandum in support of her cross-motion.

## I. QUESTION PRESENTED

Is the AFBCMR's 2019 final decision arbitrary, capricious, contrary to law, or unsupported by substantial evidence where it failed to find, despite clear record evidence, that Ms. Conti's command committed error or injustice by violating procedures requiring timely, adequate resolution of her overgrade status and career progression?

## II. STATEMENT OF THE CASE

### A. Nature of the case

This case involves allegations of procedural irregularities by the Air Force Board for Correction of Military Records (AFBCMR) in its review of evidence and arguments Ms. Conti raised in a *pro se* application that her command violated numerous regulations, in relevant part, by failing to adequately resolve her overgrade status which halted her career progression and precluded her promotion. Despite its mandate to determine the true nature of the error or injustice raised before it and its authority to grant the promotion-related relief Ms. Conti requested, the AFBCMR rendered a decision that failed to rationally address important aspects of the problem and failed to find, against clear record evidence, that her command's violation of numerous regulations adversely impacted her promotability. The AFBCMR's decision

is arbitrary, capricious, contrary to law, and unsupported by substantial evidence and, therefore, the Court should grant summary judgment on the administrative record in Ms. Conti's favor.

## B. Legal Standards

### 1. RCFC 12(b)(6) Motion to Dismiss for Failure to State a Claim

To prevail on its motion to dismiss, a defendant must show that the "facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). When analyzing a motion to dismiss, the Court must construe the allegations of the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court similarly assumes that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017). Thus, to survive a motion to dismiss pursuant to RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). "When there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant. *Id.* at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Relevant here, where parties present and the Court considers matters beyond the pleadings, such as the administrative record, the Court may convert the defendant's motion to dismiss to a motion the administrative record under RCFC 52.1. *See Young v. United States*, 497 F. App'x 53, 58 n.7 (Fed. Cir. 2012); *see also Hoskins v. United States*, 61 Fed. Cl. 209, 218 (2004)("Although defendant's motion to dismiss on the alternative basis of nonjusticiability is a

Rule 12(b)(6) motion, it must be decided under the motion for summary judgment standard because an administrative record has been filed in this case and the evidence therein is necessary to the disposition of defendant's motion.")(citing RCFC 12(b)).

### 2. RCFC 52.1 Judgment on The Administrative Record

Motions for judgment upon the administrative record under RCFC Rule 52.1 require that the Court determine, given all the disputed and undisputed facts in the administrative record, whether "the plaintiff has met [his] burden of proof to show that the decision was not in accordance with law." *Camilo v. United States*, 89 Fed. Cl. 671, 678 (2009). Rule 52.1 provides for "trial on a paper record, allowing fact-finding by the trial court." *Bannun, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). "Unlike summary judgment, for instance, 'a genuine dispute of material fact does not preclude a judgment on the administrative record.'" *Arroyo v. United States*, 116 Fed. Cl. 691, 697 (2014)(quoting *Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 751 (2012)).

### 3. Judicial Review of Military Records Correction Boards Decisions

For decades, this Court has reviewed military records-correction board decisions where the member has elected to pursue relief from such boards under 10 U.S.C. § 1552. *Martinez v. United States*, 333 F.3d 1295, 1314 (Fed. Cir. 2003); *see also, e.g., Chappell v. Wallace*, 462 U.S. 296, 303 (1983)("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence."); *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998). *See also Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004)("The Corrections Board statute, 10 U.S.C. § 1552, provides for correction of military records if a promotion has been improperly denied . . . and for judicial review of the Board's decision.")

The AFBCMR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Caddington v. United States*, 147 Ct. Cl. 629, 634 (1959). *See also Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014)(same). It "is obligated not only to properly determine the nature of any error or injustice, but also to take 'such corrective action as will appropriately and fully erase such error or compensate such injustice.'" *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (citation omitted). "As this court has said before and reaffirms today, when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate. And such a violation, contrary to the evidence, is arbitrary and capricious." *Yee v. United States*, 206 Ct. Cl. 388, 397 (1975). "The correction boards were created to remedy wrongs not to confound them." *Duhon v. United States*, 198 Ct. Cl. 564, 570 (1972).

In this Court, "judicial review of decisions of military correction boards is conducted under the [Administrative Procedure Act (APA)]" standard of review. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). The Court addresses whether the decision "is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010). A plaintiff must show by "cogent and clearly convincing evidence" that the decision of the military correction board fails this standard. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (internal quotation marks omitted). When reviewing the administrative record, there is a "strong presumption that military officials, including those sitting on the ABCMR, have acted in accordance with the law." *Cameron v. United States*, 106 Fed. Cl. 551, 560–61 (2012) (citations omitted). "Notwithstanding that deference, the military must follow any regulations it issues." *Id*. at 561 (citation omitted).

While the Court "accords a presumption of regularity and deference to a correction board's denial of relief," when it "does not act to redress clear injustice, its decision is arbitrary and capricious and must be overturned upon review by this court." *Boyer v. United States*, 81 Fed. Cl. 188, 193 (2008). "The 'presumption of regularity' supports official acts of public officers . . . . [T]he doctrine presumes that public officers have properly discharged their official duties" unless the protestor shows otherwise. *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001). The presumption can be rebutted by clear and convincing evidence. *See Schism v. United States*, 316 F.3d 1259, 1302 (Fed. Cir. 2002) (en banc); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001) (explaining that the presumption of regularity is rebutted by "evidence suggesting that the agency decision is arbitrary and capricious").

The Court "must satisfy itself that the Board considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it." *Adams v. United States*, 117 Fed. Cl. 628, 653 (2014) (quoting *Verbeck v. United States*, 97 Fed. Cl. 443, 451 (2011) (citing *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) ("Under the substantial evidence rule, *all* of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion.") (emphasis in original); *Van Cleave v. United States*, 70 Fed. Cl. 674, 678–79 (2006) ("boards must examine relevant data and articulate satisfactory explanations for their decisions.") (internal citations omitted). "If the Board 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [Board,] or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise,' its decision runs afoul of even this lenient standard of

review." *Adams*, 117 Fed. Cl. at 654 (modification in original) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1916 (2020) (reversing agency action for failing to comply with a "*procedural requirement* that it provide a reasoned explanation for its action" and noting that the agency "failed to consider . . . conspicuous issues" relevant to its determination) (emphasis added).

### 4. Relevant Regulatory Standards Applicable to ANG Promotions and Assignments

Department of Defense Directive 1304.20, *Enlisted Personnel Management System (EPMS)*, para. 1.2.3 (July 28, 2005) sets forth the policies, responsibilities, objectives and requirements for a subordinate service's Enlisted Personnel Management Plan (EPMP). *See* AR 137. It provides that it is DoD Policy that the Air Force "shall define desired promotion timing objectives for grades E-5 through E- 7. In normal years the average experience at promotion shall be within l year (above or below) the desired promotion timing." *Id.* para. 4.1.4. Further, "Experience (time-in-service (TIS)) at promotion shall be the key indicator of the alignment of grade and experience pyramids." *Id.* para. 4.1.3. One of the specific goals of the EMPS is to "provide visible, relatively stable career progression opportunities over the long term." *Id.* para. 4.2.2.

Air Force Policy Directive (AFPD) 36-25, *Military Promotion and Demotion* (May 7, 2014) implements DoDD 1304.20. *See* AR 140. The regulation reiterates the overall guiding policy that "[t]he Air Force promotion system will provide a visible, relatively stable career progression, consistent with the Defense Officer Personnel Management Act of 1980, Reserve Officer Promotion Management Act of 1996, and Top Five enlisted guidelines provided in [DoDD 1304.20]. The system will provide for promotion opportunity and timing for advancing

Airmen with the appropriate experience and skill to fill projected requirements . . . ." *Id.* para. 2. It mandates that the Air Force components "Select Airmen for promotion based on potential to serve in the next higher grade. Selections will be made using the fully qualified or best qualified concept, which values duty performance and potential based on that performance, but not to the exclusion of other factors." *Id.* para. 3.1.

Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) implements AFPD 36-25 and "provides guidance and procedures on promoting enlisted airmen" including Air National Guard (ANG) personnel. The instruction replaced Air National Guard Instruction (ANGI) 36-2502, *Promotion of Airmen* (June 17, 2010) and contains similar provisions relevant to this case.[1]

To frame the Court's review of ANGI 36-2502, AFI 36-2502 and their applicability to this case, a discussion of a few of the interrelated force-management concepts may be useful. Enlisted Air National Guard members are placed in duty positions based on qualifications within an Air Force Specialty (AFS) and each AFS has a title and a code, called an Air Force Specialty Code (AFSC). *See* AFI 36-2101, *Classifying Military Personnel (Officer and Enlisted)*, p. 62 (June 25, 2013), Pl.'s Ex. A.

An AFSC is comprised of "[a] combination of numbers and alpha characters used to identify an AFS. . . . [E]nlisted AFSCs consist of five characters. Alpha prefixes or suffixes are used with the numerical codes when more specific identification of position requirements and individual qualifications is necessary." *Id.* at p. 63; *see also* ANGI 36-2101 at p. 37. The first letter of an AFSC identifies the career group (e.g. 1-Operations; 2-Logistics; 3-support). AFI 36-

---

[1] Defendant attached copies of ANGI 36-2502 and AFI 36-2502 to its motion to dismiss or, alternatively motion for judgment on the administrative record (ECF No. 14, Def.'s Mot. Dismiss & Mot. J. Admin. R.) as Defendant's Exhibits (Def.'s Exs.) C and D, respectively.

2101, Table 1.1, Line 1. The second and third letters indicate the career field and career field

subdivision. *Id.* Table, 1.1, Line 2; *see also* https://www.af.mil/About-Us/Fact-

Sheets/Display/Article/104609/enlisted-afsc-classifications/ (last visited June 28, 2021).

The fourth letter indicates the "skill level" assigned to the AFSC, which is "[t]he level of

qualification within an awarded enlisted AFS." *Id.* Table, 1.1, Line 3. There are six skill levels:

1-Helper; 2-Apprentice; 3-Journeyman; 7-Crafstman; 9-Superintendent; 0-Chief Enlisted

Manager (CEM). *Id.* at p. 66. Relevant in this case, "[t]he 7-skill level (craftsman) identifies

enlisted personnel who have gained a high degree of technical knowledge in their AFSC and

who have additionally acquired supervisory capability through training and experience.

Craftsmen continue to gain experience in technical, supervisory, and managerial functions.

Craftsmen plan, coordinate, implement, and direct work activities." *Id.* A 7-skill level is attained

by completing educational training, being an E-5 or above, completing 12 months of on-the-job

training, meeting certain requirements specific to the AFS, and being recommended by their

supervisor. *Id.* Table 3.8, Rule 4. The fifth letter adds more specificity to the AFSC. *Id.* Table

1.1, Line 5. As described in more detail below, the skill levels reflected in an AFSC integral to a

member's career progression.

A member may hold multiple AFSCs, which are reflected in unit documents such as a

personnel roster. *See, e.g.,* AR23. A member holds a Primary AFSC (PAFSC) which is the

AFSC "in which the individual is most qualified to perform duty" as determined by a number of

factors including skill level, experience, complexity of the specialty, amount of formal education

and training and the desires of the individual. AFI 36-2101 para. 3.1. A member is also

designated Duty AFSC (DAFSC) which "is the AFSC denoting the specialty in which the

individual is performing duty." *Id.* at p. 64. A member may also hold a Secondary AFSC

(2AFSC) reflecting the code for which the "individual is second best qualified to perform duty." *Id.* at p. 66. A member also carries a Control AFSC (CAFSC) which is the "AFSC in which the airman enlisted" and is "A management tool used to make enlisted Airman assignments, to assist in determining training requirements, and to consider individuals for promotion." *Id.* para. 2.3.1; *id.* at p. 64. The actual UMD position a member occupies is signified by a position number. *See, e.g.*, AR 9. A member's position further carries with it an "authorized grade," which is "the grade that appears on a manpower document for a particular [UMD] position [and normally is] the authorized grade is the highest grade that can be held by the incumbent of the position." ANGI 36-2101 at p. 37.

Far from being "upstream" from the promotion process, personnel force-management procedures regulating assignments and AFSCs are key elements of the promotion system for ANG members. Importantly, promotions of enlisted and ANG members are not subject to the formal constitutional appointment process applicable to officers, which requires nomination, confirmation, and appointment. *See, e.g., Dysart*, 369 F.3d at 1307–08; *see also, e.g., Lewis v. United States,* 458 F.3d 1372, 1378 (Fed. Cir. 2006) (describing that a promotion claim's reviewability depends on whether the denial of the promotion was an official's exercise of "Presidential discretion in declining to grant the appointment or whether the official is improperly construing the Constitution, a statute, or regulation directing appointments (in which case the action is reviewable)"). Promotions for enlisted and ANG members are driven by regulation.

ANGI 36-2502 provides that unit commanders serve as the recommendation authority for ANG members and must "ensure their personnel meet all promotion criteria as outlined in this instruction prior to promotion. They are also responsible for ensuring that a viable personnel

force management plan is in place *to provide for the progressive development and upward mobility of their assigned personnel.*" *Id.* para. 1.1.4 (emphasis added); *see also* AFI 36-2502 para. 10.1.11.[2]

    If a member meets eligibility criteria, they can be considered for promotion upon recommendation by their unit commander. ANGI 36-2502, paras. 1.4.1; 1.4.2; AFI 36-2502, para. 10.1.1.2. The ultimate authority to approve a promotion to E-7 lies with the state Adjutant General (TAG). ANGI 36-2502, para. 1.2.2; AFI 36-2502, para. 10.1.3.1

    Relevant in this case, an ANG E-6 meets eligibility criteria for consideration to promotion to E-7 when the member: holds a 7-skill level in their PAFSC; accrues 108 months time-in-service (TIS); has 24 months time-in-grade (TIG); completes Noncommissioned Officer Academy (NCOA); and has 12 months of retainability. ANGI 36-2502, Table 2.1, Rule 6; AFI 36-2502, Table 10.1, Rule 5. The member must also be assigned to "a valid UMD position with an authorized grade greater than or equal to the grade for which the member is being recommended." ANGI 36-2502, para. 2.1.2; AFI 36-2502, para. 10.1.15.2. Importantly, the member cannot be in "overgrade" status, which means that the member is filling a position designated below their grade. ANGI 36-2502, para. 2.1.2; AFI 36-2502 para. 10.1.15.3; *see* ANGI 36-2101, *Assignments within the Air National Guard (ANG)* (Apr. 10, 2012), p. 38 (defining overgrade status).[3]

---

[2] ANGI 36-2502, p. 24 further elaborates that a Force Management Plan "must lead to a program for the management of the personnel force that provides the optimum career progression and promotion opportunity while keeping personnel in excess and overgrade status to a minimum." This language is not contained in AFI 36-2502.

[3] A copy ANGI 36-2101 is attached to Defendant's brief as Exhibit B. Ms. Conti agrees that, although a previous version of the regulation was in place during some relevant points of this case, the provisions are materially similar.

Air Force and Air National Guard policy place clear responsibilities on unit commanders and their squadron to resolve an ANG member's overgrade status within a specified period of time. *See* ANGI 36-2101. Broadly, the regulation requires that unit commanders "ensure their personnel are assigned to authorized positions within their unit, adequately briefed on career impacting assignment issues, and that a viable personnel force management plan is in place to ensure that it meets the needs of the ANG." *Id.* para. 1.1.3. The purpose of a viable force management plan is to "provide[] the optimum career progression and promotion opportunity *while keeping personnel in excess and overgrade status to a minimum*." *Id.* at p. 38 (emphasis added).

Consistent with the goal of keeping members who are in overgrade status to a minimum and limiting occurrences that contravene stable, career-progression goals set forth in DoDI 1304.20 and AFPD 36-25, several command duties apply. If a member's duty position becomes overgrade, a unit commander must counsel the member as to "why the condition occurred, the overgrade or excess code, effective date, expiration date and what could happen as a result of this assignment." ANGI 36-2101 para. 2.18.1. "Unit commanders must exercise due care in making assignment/reassignment decisions, giving primary considerations to mission need and ANG requirements. When a commander places a member in an excess or overgrade condition, they are tasked with having the member sign NGB 36-11, Statement of Understanding." *Id.* para. 2.18.2. "It is incumbent on the unit commander to keep members informed of their status and to continually work with the member to rectify the excess or overgrade condition." *Id.* para. 2.18.2.2.

Particularly relevant here, the regulation specifies a "maximum allowed" time of 24 months for members to be retained in overgrade status. *Id.* para. 4.2. "[E]nlisted personnel and

officers below the grade of colonel, who become overgrade as a result of NGB directed realignment, reorganization, or UMD change may be retained for 24 months or 20 years of satisfactory service . . . whichever occurs first." *Id.* para. 4.2.1. Relatedly, "Any member assigned in an excess or overgrade status *must be reassigned* to the first available position commensurate with their grade and for which they are qualified." *Id.* para. 2.18.11(emphasis added).

Also relevant to this reassignment provision and the 24-month limitation, a member's Force Support Squadron (FSS) is required to "produce and provide a listing at least quarterly to each commander identifying those currently assigned excess or overgrade and whose condition will expire within twelve months." *Id.* para. 2.18.4. The unit commander is tasked with using the listing to make necessary "force management decisions in regards to . . . overgrade assignments/reassignments" *Id.* Further, "[t]he listing will be returned to the FSS [by the unit commander] with a viable plan for resolution of each excess or overgrade condition." *Id.*

## C. Counter-Statement of Facts

### 1. Ms. Conti's career and position overgrade status

Ms. Conti's military career stretches back to March 1980 when she enlisted for a four-year active-duty service obligation, which she successfully completed with an honorable discharge in March 1984. AR76. Thereafter, she completed two years of reserve service before serving three years in the Ohio Air National Guard (ANG) from August 1991 through August 1994. AR99.

On July 15, 2004, Ms. Conti entered the Texas ANG as a staff sergeant (E-5) for a period of 6 years. AR93. In 2005, Ms. Conti entered active-duty status via the Active Duty for Operation Support (ADOS) program on May 2, 2005 and was attached to the 149th Flight Wing

in San Antonio, Texas, primarily holding a 5-skill, personnel AFSC (3A051). *See* AR32. On

April 21, 2007 she was placed in a 7-skill level, information management AFSC (3A071) after

completing all required training and upon her supervisor's recommendation "to upgrade to 7-

level." AR58. She was promoted to technical sergeant (E-6) on September 19, 2008. AR116. On

June 11, 2010, at the end of her previous six-year obligation, Ms. Conti reenlisted for another six

years. AR90–92. Her Expiration of Term of Service (ETS) was therefore set at June 10, 2016.

*See* AR90; AR15.

As of September 28, 2011, Ms. Conti was fully qualified for two 7-level AFSCs:

knowledge operations management AFSC (3D071) in addition to the 3A171 AFSC. AR06;

AR10. In January 2012, Ms. Conti was filling a duty position tied to a 3D071 DAFSC. AR9. On

January 1, 2012, due to enlisted grade restructuring and changes in the Unit Manpower

Document (UMD) outside of Ms. Conti's control, the authorized grade for her duty position was

downgraded to staff sergeant (E-5). *See* AR9. As a result, as an E-6, Ms. Conti was filling a duty

position now below her grade and was therefore in "overgrade" status. AR9. Her overgrade

status rendered her ineligible for promotion and would set off a chain reaction of promotion-

related issues for several years until her retirement.

On February 29, 2012, Ms. Conti and her then unit commander, Christopher Miller,

signed an NGB Form 36-11, Statement of Understanding for Excess/Overgrade Condition. AR9;

*see also* AR19–20. The form backdated the effective start of her position's overgrade status to

January 1, 2012 with an expiration date of December 31, 2014—a period of 35 months and 30

days. AR9. The form further stated the following:

> I understand that prior to my expiration date of the OVERGRADE condition, my
> unit and I share the responsibility to locate and place me in a vacant position (within
> the AFSC for which I am currently qualified) which is commensurate with my
> grade. If a valid position is not available by my expiration date, I further understand

that: 1) I must be reassigned for retraining purposes to another vacant position commensurate with my grade or, 2) My unit commander may request an extension to my expiration date, or 3) I will be administratively demoted to the authorized grade of my current position, or 4) I will be involuntarily separated from the Air National Guard.

AR9.

Despite being in overgrade status, Ms. Conti continued to work toward meeting the eligibility requirements for promotion to E-7. On November 22, 2013, she completed the USAF Noncommissioned Officer (NCO) course. AR8. At that point, she met the general promotion-eligibility criteria for promotion to E-7. Specifically, she possessed two 7-skill level AFSCs, had time-in-service that well exceeded the 108 months minimum, as she had more than 192 months; she also exceeded the minimum 2-years time-in-grade, having more than 5-years time-in-grade; and had completed the NCO Academy course. *See* ANGI 36-2502, Table 2-1, Rule 6. However, primarily because she was still in an unresolved overgrade status, she could not be promoted. December 31, 2013 marked 24 months from the date Ms. Conti's position became overgrade.

On May 20, 2014, Ms. Conti's PAFSC was indirectly converted from 3D071 to 3A171. AR10; AR11. Ms. Conti later explained that the conversion was a result of the change in her duty assignment associated with the position that had become overgrade. *See* AR10; AR23. In other words, the conversion was a consequence of the UMD change in her duty position and her subsequently becoming overgrade in 2012. On the same day, she was notified by FSS that "In October, we anticipate your AFSC will again be converted to 3S011 and you will be required to retrain into the Personnel AFSC." AR11. She still remained qualified for other duty positions within the 3D071 AFSC. *See* AR10.

Nearly fourteen months later, on July 12, 2015, Ms. Conti's overgrade 3A171 DAFSC, PAFSC, and CAFSC were converted to a 3S011, but the effective date of the change was

backdated to October 1, 2014. AR54. The conversion required Ms. Conti to retrain but due to medical duty limiting restrictions she could not attend training to actually obtain the new AFSC into which she had been forced. *See* AR15. On the same day, Ms. Conti and her then unit commander, Lt Col Robert Eskridge, signed a new NGB Form 36-11 that contained the backdated effective date of October 1, 2014 and an expiration date of June 10, 2016 which, at the time, was the date Ms. Conti's expiration – term of service (ETS). AR14; *see also* AR15.

On March 8, 2016, Lt Col Eskridge requested an exception to policy to extend Ms. Conti's ETS date by 14 months. AR15. He explained that because her current DAFSC (3S0X1)—which she was "mandatorily forced into" as a further consequence of her position being overgrade status—was "incorrect," she could not reenlist. AR15.[4] He continued to state that "[d]ue to medical duty limiting conditions, TSgt Conti is unable to travel in a TDY status to Technical School to obtain the new AFSC." AR15.

On or about March 3, 2017, Lt Col Eskridge signed off on her Enlisted Performance Report (EPR) for the period covering December 1, 2014 through November 30, 2016. AR37–38. He marked that Ms. Conti was "promotion eligible" and further recommended that she be promoted. AR38.

---

[4] The Defendant essentially frames its statement of facts as a series of arguments as to why Ms. Conti was not promotion eligible during various time frames. But, as argued in more detail *infra* Part III.A, her promotion ineligibility was a result of her command's procedural violations. Here, for instance, the Defendant states that on June 21, 2015, Ms. Conti's retainability was under 12 months and, thus, asserts that she could not be promoted. Def.'s Mot. Dismiss & Mot. J. Admin. R. 9 (citing AFI 36-2502, Table 10.1, Rule 6). However, the reason her retainability was under 12 months in June 2015 was because she could not reenlist to extend her June 2016 ETS date. AR15. And she could not reenlist because she had "the incorrect AFSC" due to the indirect conversion to her DAFSC in May 2014 as a result of her assigned duty position becoming overgrade in 2012. AR15.

### 2. Inspector General Complaint

On March 1, 2018, Ms. Conti filed a complaint with the 149th Flight Wing Inspector General (IG). AR17–18. As she would later elaborate in her AFBCMR application, she stated that "[a]lthough I discussed my concerns many times with my chain-of-command and the Force Support Management leadership regarding vacant positions and regulatory requirements, I was not reassigned and the overgrade condition was never corrected. Ultimately, I filed an IG complaint." AR133.

In her IG complaint, she asserted, in relevant part, that her command had violated ANGI 26-2101 by failing to resolve her overgrade condition within 24 months of January 2012 and reassigning her to the first available position commensurate with the grade in which she was qualified. AR18. Notably, Ms. Conti explained the reason she had resorted to seeking an investigation by filing the IG complaint. Emphasizing her efforts to resolve the matter through lower channels, she stated she had "talked with management in Force Support and presented my concerns to everyone in my chain of command, to include the Wing Commander. My concerns and requests for redress have gone unanswered." AR18. She continued to state that "My leadership and FSS management told me several times there were no available positions to correct the over-grade condition. However, I discovered last August [2017] that there were in fact eight positions in the wing for which I could have been moved to in order to correct the over-grade condition." AR18.

In support of her contentions that there were available positions while she remained in overgrade status, Ms. Conti submitted excerpts of a personnel roster containing UMD assignment information for certain members of the 149th. *See* AR18; AR23–28. Unfortunately, up until this point, Ms. Conti had not discovered this personnel-roster evidence that she believed

showed that, despite indications from "leadership and FSS management," there were positions available to her while she remained in overgrade status that were filled by less qualified or non-promotable members. *See* AR18. By this time, she had signed two NGB 36-11 forms and had been in overgrade status for years.

The IG complaint was handled and processed by Lt Col Christopher Miller, who was Ms. Conti's previous commander and signatory to her initial NGB Form 36-11 in 2012. *See* AR9; AR19–20. On April 10, 2018, perhaps not surprisingly, Lt Col Miller stated that "My analysis determined that since December 2015 you have not meet [sic] the minimum requirements as specified in Air Force Instruction (AFI) 36-2502, *Enlisted Airman Promotion Demotion Programs*, Table 10.1 rule 6 for having a 7 skill level in the assigned AFSC and 1 year of retainability after promotion to Master Sergeant." AR19. Of course, the reason she did not possess a 7-level skill in her "assigned AFSC" and one year of retainability was because her position became overgrade in 2012 (AR09) and then her PAFSC was converted to an "incorrect AFSC" (AR11) which made her ineligible to reenlist past her June 2016 ETS (AR15).

 In any event, Lt Col Miller conceded that the Ms. Conti "could have possibly been placed into a different position to possibly satisfy the AFSC requirement for promotion." AR19.[5] Ultimately, Lt Col Miller's basis for dismissal was that "there is no documentation stating your Commander supported promotion to Master Sergeant." *Id.* Lt Col Miller notified Ms. Conti that

---

[5] The Defendant attempts to de-contextualize and minimize this statement as a mere "stray observation." Def.'s Mot. Dismiss & Mot. J. Admin. R. 12. But Lt Col Miller's conclusion comes after his purported analysis in response to arguments and evidence Ms. Conti presented that there were available positions while she languished in overgrade status that she could have filled to resolve her status and satisfy requirements for promotion. Moreover, Lt Col Miller was Ms. Conti's commander when she was initially placed in overgrade and is the signatory on the 2012 NGB Form 36-11. *See* AR9; AR19–20.

she had the right to "petition the Air Force Board for Correction of Military Records (AFBCMR) to correct any adverse personnel actions" and, if she did, she "should inform them that IG records exist pertaining to the pending request." *Id.*

In April 2018, at the culmination of the Disability Evaluation System (DES) process that found her physically unfit for continued duty, the Secretary of the Air Force directed that she be permanently retired under 10 U.S.C. § 1201, with a 40 percent rating under the Veterans Affairs Schedule for Rating Disabilities (VASRD). AR33. Ms. Conti was separated on May 28, 2018 for reason of disability retirement. AR34. Over her long career, she accrued twenty-two years, six months and nineteen days of service for basic pay, over seventeen years and three months of which was active-duty service. AR33; AR105; AR32.

### 3. AFBCMR Application

On October 13, 2018, Ms. Conti submitted a *pro se* application to the AFBCMR. In the DD Form 149, Ms. Conti argued that, in accordance with ANGI 36-2101 any member assigned in an overgrade status must be reassigned to the first available position commensurate with their grade and qualifications (para 2.18.11), and every effort will be made to ensure that assignments for retraining do not result in an overgrade condition (para 2.7). AR6. Ms. Conti continued to state that in violation of these requirements, she was not reassigned but instead she was mandatorily forced into retraining when her overgrade position converted to another AFSC and was forced to continue in the overgrade condition. AR6. She stated that "Had I been reassigned IAW ANGI 36-2101, I would have been both eligible and qualified to promote IAW AFI 36-2502 as of 1 Dec 2015." AR6. She requested "a grade/rank adjustment to E-7/MSgt effective 1 Dec 2015 and awarded appropriate backpay." AR6.

As advised by Lt Col Miller,[6] Ms. Conti informed the AFBCMR that the matter had been reviewed by 149th IG. AR6. Ms. Conti submitted excerpts of the personnel roster containing UMD assignment information for certain members of the 149th and she annotated entries for certain members of the 149th that she argued were occupying positions that she should have been placed in to resolve her overgrade status. AR23–28. In relevant part, she highlighted an E-7 member in a 3D071 DAFSC who was then retraining for her position (i.e. in "Training Status: G"). AR24 (*see also* AFI 36-2101, Table 3.8, Rule 4). Ms. Conti argued that this "[m]ember retraining to 3D071 and below requisite skill level. Member told me she came from another state and enlisted in the Texas ANG in Feb 2016 to fill this position. IAW ANGI 36-2101, I should have been reassigned to this position when it became available before recruitment from out-of-state." AR24.

She continued:

> The IG dismissed my complaint because it did not find credible evidence of a violation of law, instruction, regulation, or policy. However, as noted above, this matter involved violations of DODD 1304.20, AFPD 36-25, AFI 36-2502, AFI 36-2626, and ANGI 36-2101. As a fully qualified 7 skill level in two AFSCs, 3D071 and 3Al71, I could have been reassigned to any one of 6 positions; but instead, those positions were filled with members without the requisite AFSC or skill level, or junior members not eligible to promote. While the IG acknowledged I could have been reassigned, he ultimately concluded there wasn't any documentation stating my Commander supported a promotion. However, contrary to the IG conclusion, my Commander did in fact recommend promotion on my EPR even though I couldn't be promoted due to the overgrade status.

AR6.

---

[6] Despite Lt Col Miller's indications otherwise, the AFBCMR evidently did not request or review the full application Ms. Conti had submitted to the IG despite indications from Lt Col Miller. Ms. Conti's full submission is not contained in the Administrative Record, which is supposed to contain include all documents and materials that the agency directly or indirectly considered. *See FFTF Restoration Co., LLC v. United States*, 86 Fed. Cl. 226, 231 n. 8 (2009).

The AFBCMR subsequently requested an advisory opinion from the National Guard

Bureau Force Management Branch (NGB/A1PP) (AR131)[hereinafter "NGB Advisory Opinion"

or "Advisory Opinion"], which the AFBCMR forwarded to Ms. Conti for comment on or about

July 23, 2019 (AR150).[7] The Advisory Opinion generally described some of the facts of the case,

conceding that Ms. Conti was fully qualified in her 7-skill level and that the "IG acknowledged

that TSgt Conti could have been reassigned . . . " (AR131). The Advisory Opinion stated that the

"requirement" (which it did not specify) "identifies any member assigned in an excess or

overgrade status must be reassigned to the first available position commensurate with their grade

and for which they are qualified." AR131. However, the Advisory Opinion argued that the

"requirement does not entitle the member to a promotion" because the authority to approve

promotions to E-7 is "The Adjutant General per AFI 36-2502 para 10.1.2." AR131. The

Advisory Opinion claimed that the "EPR promotion recommendation would not suffice in

approving a member promotion." AR131. It claimed it could not conclude that overgrade

procedures were not followed and Ms. Conti "had the option to apply for vacant positions

throughout the Air National Guard. Her 7-skill qualification would have deemed her eligible for

MSgt positions." AR131. The Advisory Opinion did not directly address applicable regulations'

24-month maximum time limit that a member could remain in overgrade status nor did it directly

---

[7] The AFBCMR may seek advisory opinions, which it describes as "the one and only opportunity the Air Force will have to affirm its position on a case and set forth its rationale." AFI 36-2603, Air Force Board for Correction of Military Records (AFBCMR), para. 4.2.2 (Sept. 18, 2017), https://static.e-publishing.af.mil/production/1/saf_mr/publication/afi36-2603/afi36-2603.pdf. Advisory opinions must contain "A clear and concise summary of the relevant facts of the case, the applicant's contentions, an analysis addressing the crux issues of the case, and a recommendation based on the applicable Air Force policy, regulatory requirements, or applicable law in effect at the time of the alleged error or injustice." *Id.* para. 4.2.2.2. Further, "[r]egardless of the recommendation provided (e.g., grant or deny), the advisory opinion shall include instructions on specific corrective action to be taken if the Board recommends relief be granted." *Id.* para. 4.2.2.3.

address Ms. Conti's argument with respect to violations of AFPD 36-25 and DoDD 1304.20. *See* AR131.

On or about August 26, 2019, Ms. Conti submitted a rebuttal to the Advisory Opinion. AR133. In it, she asserted that the Advisory Opinion "did not discredit any of the evidence brought forth in my application and failed to discuss any pertinent regulatory requirements pertaining to the facts." AR133. She stated that she filed an IG complaint after she had "discussed my concerns many times with my chain-of-command and the Force Support Management leadership regarding vacant positions and regulatory requirements, [but] I was not reassigned and the overgrade condition was never corrected." AR133.

> She reiterated her argument that
>
> My overgrade status halted my career progression for 6.5 years in violation of DODD 1304.20 and AFPD 36-25. AFI 36-2110 and ANGI 36-2101, stipulates an overgrade condition must not exceed 24 months and members will be reassigned to the first available position or a force management command decision will be rendered to resolve the overgrade condition. A force management command decision includes moving members to duty positions which more closely match a members rank, AFSC, and skill level. The evidence clearly shows there were numerous positions available in my 7-level AFSCs to satisfy the regulatory requirements to resolve my overgrade condition and allow progressive development and upward mobility.

AR133.

She noted, correctly, that both the NGB Advisory Opinion and the IG "acknowledged [she] could have been reassigned to another position to correct [her] overgrade condition and to satisfy promotion requirements." AR133. She highlighted the personnel roster data which she argued showed that, while she languished in overgrade status, there were "positions were filled by members who were either retraining or in upgrade training, and/or were junior members not eligible to promote." AR133. She argued that a force management command decision was not done to move her to any of the positions as required by regulation. AR133.

She further argued that, in accordance with AFI 36-2110 and ANGI 36-2101 the FSS

"should have provided a listing, at least quarterly, to each commander identifying those members

currently in overgrade and whose condition was set to expire within 12 months. Commanders are

then required to return the listing to FSS with a viable plan to resolve overgrade conditions.

AR131; *see also* ANGI 36-2101, para. 2.18.4. She argued that these requirements were not

followed because if they had, "the first quarterly listing would have been sent out to

Commanders and a plan to resolve my overgrade condition would have been initiated beginning

in December 2013." AR133–34.

Ultimately, she argued that procedural requirements were not followed, stating

> If I had been reassigned as required by AFI 36-2110 and ANGI 36-2101, I would
> have satisfied all promotion requirements in accordance with AFI 36-2502. There
> is no evidence to suggest I was ineligible for promotion or that a commander would
> not have supported a promotion. To the contrary, there is evidence indicating my
> commander did, in fact, support promotion.

AR134.

### 4. AFBCMR Decision

The AFBCMR panel convened on November 21, 2019 and voted to deny Ms. Conti's

application. AR4–5. In the "statement of facts" section of the Record of Proceedings, the Board

described some basic facts of the case and only superficially described Ms. Conti's contentions

in her initial DD 149 and her more comprehensive response to the Advisory Opinion. AR2–4.

The Board's basis for denial is as follows:

> The Board concurs with the rationale and recommendation of NGB/AlPP and finds
> a preponderance of the evidence does not substantiate the applicant's contentions.
> Documentation revealed the applicant was unable to meet the retraining approval
> requirements and concurred with over grade conditions on two separate occasions
> over a 4-year period. Additionally, the Board notes the 149 FW/IG's dismissal of
> the applicant's request to redress her over-grade status and promotion to E-7,
> finding no credible evidence of violation of law instruction, regulation, or policy.

Therefore, in the absence of evidence to the contrary, the Board recommends against correcting the applicant's records.

AR4.

Instead of providing its own analysis of the issues Ms. Conti raised, the AFBCMR concurred with the "rationale and recommendation" of the Advisory Opinion and "note[d] the 149 FW/IG's dismissal of [Ms. Conti's] request for redress." AR4. Although it is generally permissible for the AFBCMR to adopt the rationale of such documents in lieu of providing its own analysis, the NGB Advisory Opinion and IG dismissal therefore become subsumed as the agency's own and are subject to the same arbitrary-and-capricious standard. *See Roberts v. United States*, 741 F. 3d 152, 158–59 (D.C. Cir. 2014); *Hensley v. United States*, 292 F. Supp. 3d 399, 410 (D.D.C. 2018) ("An advisory opinion, like any agency decision, is arbitrary and capricious if it fails to address meaningful objections that have been put before the agency.").

### III. ARGUMENT

**A. The AFBCMR's 2019 decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law because the Board failed to find, despite clear evidence, that Ms. Conti's command committed material error or injustice by violating procedures requiring timely, adequate resolution of her overgrade status and career progression.**

> **1. Ms. Conti presented clear errors and injustices to the AFBCMR that her command committed several procedural violations related to her overgrade status and career progression.**

"The military no less than any other organ of the government is bound by statute, and even when granted unfettered discretion by Congress the military must abide by its own procedural regulations should it choose to promulgate them." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed. Cir 2002) (citing *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993)).

Relying on more than a "single provision," Ms. Conti asserted several procedural violations to support her request for promotion-related relief from the AFBCMR. From the top of

the regulatory hierarchy, DoDI 1304.20 requires "provide visible, relatively stable career progression opportunities over the long term" through an EPMP that provides opportunity and "promotion timing objectives." *Id.* para. 4.2.2; AR138. AFPD 36-25, which implements DoDI 1304.20, echoes the goal of providing "visible, relatively stable career progression" for members. It mandates that promotions be made on the "fully qualified or best qualified concept." AR140.

Implementing regulations clearly aim to limit occurrences that frustrate these career-progression goals. Relevant here, to keep overgrade assignments to a minimum, a commander must execute a viable force-management plan to resolve each overgrade condition based on quarterly data provided by FSS that identifies members whose condition is set to expire in twelve months. ANGI 36-2502 para. 1.1.4; *see also* AFI 36-2502 para. 10.1.11. *See also* ANGI 36-2101, p. 38 (stating that purpose of a viable force management plan is to "provide[] the optimum career progression and promotion opportunity *while keeping personnel in excess and overgrade status to a minimum*") (emphasis added). Further, a member's overgrade status, insofar as it occurs as a result of a UMD change, may not exceed 24 months. ANGI 36-2101 paras. 4.2; 4.2.1. When a member becomes overgrade, they *must be reassigned* to the first available position commensurate with their grade and for which they are qualified." *Id.* para. 2.18.11 (emphasis added). "It is incumbent on the unit commander to keep members informed of their status and to continually work with the member to rectify the excess or overgrade condition." *Id.* at 2.18.2.2

Read harmoniously, the regulatory scheme places discernable, significant obligations on the unit commander to resolve a member's overgrade status within 24 months by assigning them to the first available position, commensurate with their grade and for which they are best qualified, through force management decisions consistent with a plan that provides optimum career progression and promotion opportunity. Indeed, it is the *commander's* obligation to

implement and execute a timely, viable force management plan that comports with regulation. And it is the *commander*—not the subordinate member—who controls unit-assignment data and wields the force-management reassignment authority required to resolve a member's overgrade condition in compliance with procedural obligations. Thus, contrary to Defendant's characterization of the NGB Form 36-11 as a "warning" to an "over-compensated" member (Def.'s Mot. Dismiss & Mot. J. Admin. R. 4, 6) a member's overgrade status and counseling is not some sort of motivational tool to incentivize a member to resolve her own overgrade condition. If anything, it is a warning to the command to timely resolve a member's overgrade condition in a manner that comports with procedural guidelines.

Ms. Conti's command clearly violated these procedures, as she plainly argued in her AFBCMR materials. After years of faithful service and due to no fault of her own, Ms. Conti's position became overgrade as a result of a UMD change on January 1, 2012, which triggered the 24-month limitation period and her command's various responsibilities to appropriately resolve her overgrade status. Six weeks later, her command presented her with an NGB Form 36-11 that provided for an overgrade expiration date that exceeded the maximum 24 months. Thereafter, and especially during the initial 24-month regularity timeline that expired on December 31, 2013, Ms. Conti's command did not fulfill the multiple regulatory obligations to resolve her overgrade status described above, as best evidenced by the fact that she remained in overgrade status for 6.5 years.[8]

---

[8] In light of the fact that the NGB Form 36-11 reflected that Ms. Conti's overgrade was set to expire beyond the 24-month regulatory limitation period (AR9), it stands to reason that the FSS did not properly identify Ms. Conti as being 12-months from expiration of her overgrade status on the appropriate date (i.e., on or about December 31, 2012), which would then have required her commander to execute specific, viable force-management plan decisions to resolve the condition before the end of the 24-month limitation period (i.e. on or about December 31, 2013). *See* ANGI 36-2101, para. 2.18.4. Ms. Conti raised this argument to the AFBCMR stating that if

Defendant attempts to shift the blame for the consequences of Ms. Conti's command's procedural violations onto Ms. Conti. Evidently relying on the "shared responsibility" language in the NGB Form 36-11, the Defendant repeatedly accuses her of failing to find her own assignment to resolve her overgrade status. Def.'s Mot. Dismiss & Mot. J. Admin. R. 6 (claiming no evidence of Ms. Conti inquiring about the status of a position to resolve her overgrade); *id.* at 7 ("There is no record during this time of TSgt (RET) Conti working to resolve these obstacles preventing her promotion."); *see also id.* at 13, 28.  The Defendant's assertions find little support in the regulatory scheme that inarguably places the bulk of the responsibilities on her command, as described above. Even if she was somehow required and authorized but failed to find her own assignment to resolve her overgrade status, the evidence shows that Ms. Conti did attempt to resolve her overgrade condition with her command. In her IG Complaint (made under penalty of making a false statement under the UCMJ and federal law), she asserted that her command told her "several times that there were no available positions to correct the over-grade condition" and that "I've talked with management in Force Support and presented my concerns to everyone in my chain of command, to include the Wing Commander. My concerns and requests for redress have gone unanswered." AR18. It was not until 2017, after years of languishing in overgrade status, that Ms. Conti discovered documentary evidence showing that there were viable positions that she argued were available to resolve her overgrade condition that she asserted were filled by less qualified members. AR18. One position in particular was a 3D071 position (for which Ms.

---

these regulations would have been followed, "the first quarterly listing would have been sent out to Commanders and a plan to resolve my overgrade condition would have been initiated beginning in December 2013." AR133 (the "December 2013" date Ms. Conti wrote appears to be an inadvertent error as 12 months prior to the proper 24-month expiration date (December 21, 2013) would be December 31, 2012). The AFBCMR did not acknowledge or address the argument. *See* AR2–4.

Conti was also qualified) with an E-7 authorized grade that Ms. Conti explained was filled by an out-of-state member who needed to be retrained into the position. *See* AR24. Ms. Conti argued that she "should have been reassigned to this position when it became available before recruitment of from out-of-state." *Id.*

Albeit indirectly, Ms. Conti's procedural-violation assertions found evidentiary support in the IG process and from the NGB Advisory Opinion upon which the AFBCMR's rationale is based. When she presented her evidence and argumentation to the IG, Lt Col Miller—who was her commander at the time her position initially became overgrade and the signatory on the original NGB 36-11 (AR9)—acknowledged that she could have been placed in a position "to possibly satisfy the AFSC requirement for promotion" (AR19). Even the NGB advisory opinion that was adopted by AFBCMR conceded that the "IG acknowledged that TSgt Conti could have been reassigned." AR131; *see also id.* ("Her 7-skill qualification would have deemed her eligible for MSgt positions.") These procedural violations are clear and, as discussed below, had a direct impact on Ms. Conti's inability to promote.

### 2. The AFBCMR arbitrarily and capriciously failed to find that Ms. Conti's command's procedural violations precluded her eligibility for promotion.

As Ms. Conti correctly argued in the materials she submitted to the AFBCMR, she met the general promotion-eligibility requirements on when she completed the NCO course on November 22, 2013. AR08. Neither the Defendant (nor the AFBCMR) disputes that Ms. Conti met the general eligibility requirements on that date. Def.'s Mot. Dismiss & Mot. J. Admin. R. 7; AR2. Nonetheless, the Defendant argues that the 24-month limitation to overgrade conditions and the command's concomitant duties to resolve them are derived from an assignment instruction, not a promotion instruction and therefore cannot entitle Ms. Conti to a promotion. Def.'s Mot. Dismiss & Mot. J. Admin. R. 29.

The Defendant's argument is misguided. Assignments are an inextricable component of the promotion process applicable to ANG members. For instance, the characteristics of a member's AFSCs and the nature of one's duty assignment has a direct bearing on their ability to promote—they comprise specific promotion-eligibility criteria. *See* ANGI 36-2502, Table 2.1, Rule 6; AFI 36-2502, Table 10.1, Rule 5. Further, ANGI 36-2502, the promotion regulation that applied at relevant times to Ms. Conti's case, required units to "ensure their personnel meet all promotion criteria as outlined in this instruction prior to promotion" and to "ensure[] that a viable personnel force management plan is in place to provide for the progressive development and upward mobility of their assigned personnel." ANGI 36-2502 para. 1.1.4; *see also* AFI 36-2502, para 1.4.1 (indicating that ensuring personnel meet promotion criteria is a "promotion program element"). In other words, a command is tasked with carefully monitoring assignments and directing force-management decisions as an element of the promotion process. Indeed, a command's failure to adhere to assignment procedures has a direct impact on a member's promotability, which happened in this case.

The Defendant further argues that the assignment instruction "would not locate her an E-7 position necessary for her promotion, nor ensure her promotion thereafter." Def.'s Mot. Dismiss & Mot. J. Admin. R. 29–30 (citing ANGI 36-2502, para. 2.1.2; AFI 36-2502, para. 10.1.15.2). The Defendant appears to reassert the argument made earlier in its brief where it claims that the initial NGB Form 36-11 only would have required locating Ms. Conti an E-6 position, not one authorized for E-7, which is required for promotion. Def.'s Mot. Dismiss & Mot. J. Admin. R. 5-6. In the context of the Court's review of the AFBCMR's decision, the Defendant's argument amounts to *post hoc* rationalization because the Board itself did not assert or rely upon this line of argumentation. *See Pedden v. United States*, 145 Fed. Cl. 785, 801

(2019) (citing *Gose v. U.S. Postal Serv.*, 451 F.3d 831, 838 (Fed. Cir. 2006) ("The courts may

not accept appellate counsel's *post hoc* rationalizations for agency action; [*SEC v. Chenery

Corp.*, 332 U.S. 194 (1947)] requires that an agency's discretionary order be upheld, if at all, on

the same basis articulated in the order by the agency itself . . . .")).

    The Defendant's argument, aside from being a *post hoc* rationalization, is belied by the

IG's findings and the AFBCMR-adopted NGB Advisory Opinion. Taken together, both the IG

and NGB Advisory Opinion effectively acknowledge that she could have been placed in a duty

position to satisfy the assignment requirements for promotion, which then would have removed

barriers to her promotion eligibility caused by her assignment status and inability to reenlist. This

is consistent with her command's regulatory duty to resolve her overgrade condition within 24-

months by placing her in the first available position consistent with a force management plan that

ensures optimum career progression, upward mobility and promotion opportunity, which they

demonstrably failed to do. Had she been eligible, there is compelling evidence that her

commander would have formally recommended her for promotion as evidence by his "promote"

election on her EPR.[9] Although the TAG is the ultimate authority promoting an enlisted member,

---

[9] The Defendant's attempts to minimize Lt Col Eskridge's "promote" recommendation on Ms. Conti's EPR fall flat. *See* Def.'s Mot. Dismiss & Mot. J. Admin. R. 23–24. The regulation the Defendant quotes indicates that a majority of airmen receive "promote" recommendations as it indicates that the member is performing, with a majority of her peers, *at or above* standards and expectations. Def.'s Mot. Dismiss & Mot. J. Admin. R. 24. There may be stronger recommendations authorized by regulation but a "promote" rating on an EPR is still a recommendation from a commander that the member be promoted. Further, the Defendant's claim that promotions are "limited" and "highly competitive" (Def.'s Mot. Dismiss & Mot. J. Admin. R. 23, 26, 28) is misleading because promotion eligibility for ANG members, by regulation, necessarily entails that the position the member is *already* filling is authorized for the higher grade into which they are promoted. *See* ANGI 36-2502, para. 2.1.2; AFI 36-2502, para. 10.1.15.2.

there would have been no reasonable basis for TAG to deny her promotion had her command's procedural violations not kept her from reaching that point.

### 3. The AFBCMR's adoption and incorporation of the IG findings and NGB Advisory Opinion resulted in irrational decisionmaking.

As an initial matter, the AFBCMR may adopt the findings of an advisory opinion and, presumably, other documents in lieu of its own analysis but the adopted materials must meet the same decisionmaking standards. *See Roberts,* 741 F. 3d at 158–59. Here, both provide flawed, irrational bases for denial that render the AFBCMR's decision arbitrary and capricious and provide independent grounds to set aside the decision.

The NGB Advisory Opinion and IG's bases for denial, which the AFBCMR adopted as its own,[10] ultimately hinge on grounds that (1) the authority to approve a promotion rests with the TAG and the TAG did not approve Ms. Conti's promotion (AR131); (2) Ms. Conti was not recommended for promotion by her commander (AR19). Notably, the Court's review "is limited to the grounds that the agency invoked when it took the action." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. at 1907.

Addressing Lt Col Miller's IG finding first, his stated bases for concluding that there was "no credible evidence of violation of law, instruction, regulation or policy" was that there was

---

[10] The Defendant conveniently argues that the AFBCMR "only noted" Lt Col Miller's conclusion and none of the rationale upon which the conclusion was based. Def.'s Mot. Dismiss & Mot. J. Admin. R. 26. In effect, the Defendant suggests that the context and reason for the finding, no matter how flawed, is irrelevant. Certainly, adequate judicial review must take into consideration *why* the IG found the way he did, even if the AFBCMR could arbitrarily cherry pick only the parts of documentary evidence that support denial. In any event, the AFBCMR inarguably adopted the NGB Advisory Opinion's rationale as its own and the Advisory Opinion clearly understood and accepted Lt Col Miller's determination "TSgt Conti could have been reassigned" to satisfy promotion-eligibility requirements. AR131. At the very least, the document provides record evidence of the validity of components of Ms. Conti's claims and constitutes an important aspect of the problem.

"no documentation stating your Commander supported promotion to Master Sergeant." AR19. Insofar as this statement can be taken to mean that the reason for the finding was that her commander had not formally issued a recommendation, it missed the point of Ms. Conti's complaint and arbitrarily disregarded the fact that her commander could not formally recommend her promotion *because* she was ineligible *as a result* of the procedural violations detailed above.

The NGB Advisory Opinion deploys similarly faulty reasoning. By relying on the fact that TAG did not approve Ms. Conti's promotion to E-7, the opinion fails to consider an important aspect of the problem and otherwise does not address the crux of the of the errors or injustices Ms. Conti raised. *See Verbeck*, 89 Fed. Cl. at 68 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). Ms. Conti does not argue that AFI 36-2502 para. 10.1.2 is inapplicable as Defendant seems to suggest is necessary for Ms. Conti to sustain her case. Def.'s Mot. Dismiss & Mot. J. Admin. R. 29–30. Rather, her argument is that, due to procedural errors related to her command's obligation to resolve her overgrade status and ensure Ms. Conti's career progression, she did not meet promotion-eligibility requirements she otherwise would have met and, thus, was erroneously and unjustly kept from this particular stage of the promotion process. Indeed, ultimately the lack of TAG approval is the very error Ms. Conti asked the AFBCMR to correct so the Board's reliance (via the Advisory Opinion) on the lack of TAG approval as the reason for its denial constitutes irrational decisionmaking. *See Haselwander*, 774 F.3d at 992 (setting aside BCMR decision and stating that the board "misapprehend[ed] its powers and duties as a record correction body" where it denied relief for the very reason the applicant sought records correction in the first place).

Compounding the problem, the AFBCMR misstated or incorrectly interpreted at least one key finding in the NGB Advisory Opinion. The Board's summary of the NGB Advisory Opinion

states that Ms. Conti's position was converted to a different AFSC in 2012, requiring her to

retrain in the new AFSC. The Board states that this occurred "while in the over-grade status."

AR3. However, the conversion requiring retraining that the Board describes began to occur in

May 2014 when her PAFSC was indirectly converted from 3D071 to 3A171 (AR10, AR11)

which then resulted in an additional conversion (for which Ms. Conti was notified on July 12,

2015) that had a backdated effective date of October 1, 2014 (AR54). The NGB Advisory

Opinion is vague and does not specify the dates of these key events but it clearly does not

suggest that Ms. Conti was required to retrain into a new AFSC in 2012 as the AFBCMR

incorrectly stated. *See* AR131. The Board's misstatement is notable because these conversions

that began in May 2014 took place after the 24-month limitation period associated with the date

her position became overgrade on January 1, 2012.

Given these deficiencies in the NGB Advisory Opinion and IG findings, the AFBCMR's

decision adopt or even "note" them amounts to arbitrary and capricious decisionmaking.

### 4. The AFBCMR's rationale failed to adequately consider issues raised in Ms. Conti's application.

An agency's decision is arbitrary and capricious when it entirely fails to consider an

important aspect of the problem. *Verbeck*, 89 Fed. Cl. at 68. Further, "an agency must explain its

action with sufficient clarity to permit 'effective judicial review.'" *Id.* (quoting *Timken U.S.*

*Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005)). For judicial review to be effective

under the standards prescribed by the Administrative Procedure Act, "the agency tribunal must

present a full and reasoned explanation of its decision. The agency tribunal must set forth its

findings and the grounds thereof, as supported by the agency record, and explain its application

of the law to the found facts." *Id.* (quoting *In re Sang-Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir.

2003)).

Here, the AFBCMR's decision did not sufficiently address Ms. Conti's arguments and evidence demonstrating several regulatory violations regarding the handling of her overgrade condition and career progression. In fact, the Board omitted or otherwise misstated material facts necessary for the Board to render a full and reasoned decision on the issue. The Board characterized the conditions of Ms. Conti's overgrade status as being that "she must be reassigned for retraining purposes to another vacant position commensurate with her grade; or the unit commander may request an extension to the expiration date; or she would be administratively demoted to the authorized grade of the current position; or she would be involuntarily separated from the ANG." AR2. It omitted the fact that these conditions were only necessary if Ms. Conti was not placed in a valid position within the AFSC for which she was qualified that is commensurate with her grade, which is a central procedural error Ms. Conti raised to the AFBCMR.

The NGB Advisory Opinion, which the AFBCMR adopted, made only a passing reference to the "requirement [that] identifies any member assigned in an excess or overgrade status must be reassigned to the first available position commensurate with their grade and for which they are qualified" and then declares it "cannot conclude with the documentation that the overgrade procedures were not followed." AR131. But it did not address the 24-month limitation or the myriad other procedural violations Ms. Conti alleged were committed by her command in failing to resolve her overgrade status within a prescribed timeframe. Even if the AFBCMR's decision could be read to have met these basic procedural decisionmaking obligations, any conclusion that these overgrade-resolution provisions were not violated is unsupported by the record, as argued above.

The Defendant, like the AFBCMR, conspicuously evades discussion the regulation's 24-month limitation and the accordant responsibilities placed on a commander and squadron. The Defendant claims that the NGB Form 36-11's provision of 36-months of overgrade was a "scrivner's error" from which Ms. Conti actually benefitted. Def.'s Mot. Dismiss & Mot. J. Admin. R. 5; *see also id.* 20–21. The NGB Advisory Opinion also mentions that Ms. Conti had signed two NGB Form 36-11s as if these forms absolved her command of their clear regulatory duties. AR131. But Defendant's argument relies on a flawed premise that ignores the clear responsibilities on the part of her command and squadron FSS to resolve her overgrade status within a 24-month time frame.

The Board's failure to adequately consider important aspects of the problem it provides the Court with an independent basis to set aside the AFBCMR's decision and grant relief it deems appropriate. *See Miller v. United States*, 119 Fed. Cl. 717, 733 (2015).

## IV. RESPONSE TO DEFENDANT'S MOTION TO DISMISS

**A. This Court has jurisdiction over Ms. Conti's claims.**

The Defendant begins its Rule 12 argument by making a flawed jurisdictional challenge, arguing that the Military Pay Act does not provide requisite money-mandating basis for Ms. Conti's promotion-related claims. Def.'s Mot. Dismiss & Mot. J. Admin. R. 15. The Defendant relies primarily on the approach to Military Pay Act jurisdiction articulated in *Smith v. Sec'y of Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004), which acknowledged the Military Pay Act generally applied to promotion-related claims but engaged in an additional step of addressing whether the act could provide a monetary remedy. But, as observed in *Miller*, "the holding in *Smith* has been eroded" by more recent Federal Circuit precedent. No longer does the Court apply the type of two-step analysis the Defendant suggests is required in this case. 199 Feb. Cl.

at 729 (quoting *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) ("The single step would be one in which the trial court determines both the question of whether the statute provides the predicate for its jurisdiction, and lays to rest for purposes of the case before it the question of whether the statute on its merits provides a money-mandating remedy.")). Here, Ms. Conti's Complaint asserts promotion-related, back pay and retired pay claims anchored by plausible allegations of procedural violations and flawed review by the AFBCMR. The Military Pay Act provides for the difference in pay Ms. Conti would have received had she been promoted consistent with applicable regulation and the disability pay statutes, 10 U.S.C. § 1201 and 10 U.S.C. § 1401, provide for the additional retired pay Ms. Conti would receive if her retired grade is adjusted. The statutes clearly provide the predicate for this Court's jurisdiction under the applicable single-step analysis articulated in *Fisher*.

**B.  Ms. Conti's allegations with respect to the myriad procedural irregularities related to her overgrade status and denial of career progression and promotion are justiciable because they state facially plausible procedural violations in the AFBCMR's decisionmaking and the underlying conduct of Ms. Conti's command on review before the Board.**

Although some cases may present nonjusticiable controversies that are "beyond the ken of judicial competence," Def.'s Mot. Dismiss & Mot. J. Admin. R. 17, this is not one of them because it is premised on procedural defects in the AFBCMR's decision-making process and in the underlying actions of the agency challenged before the Board. It is well within the competency of this Court to determine whether these procedural standards were properly followed.

As the Federal Circuit observed in *Lindsay v. United States* in the context of an officer-promotion case, "[w]here, however, review is sought not of the substance of a military decision, but instead its compliance with an applicable statute or regulation, we have not abstained from

review." 295 F.3d 1252, 1257 (Fed. Cir 2002); *see also Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995). "The military no less than any other organ of the government is bound by statute, and even when granted unfettered discretion by Congress the military must abide by its own procedural regulations should it choose to promulgate them." *Lindsay*, 295 F.3d at 1257. (citing *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993)). "A claim of procedural violations may present a justiciable controversy because 'the test or standards against which this court measures the military's action are inherent: they are the applicable statutes and regulations.'" *Id.* at 1258 (quoting *Adkins*, 68 F.3d at 1323)). *See also Bond v. United States*, 47 Fed. Cl. 641, 651 (2000) (finding that the plaintiff's challenge to his military duty assignment was justiciable because the plaintiff alleged that the military did not follow the classification scheme that it was required by regulation to follow); *Dodson v. Dep't of Army*, 988 F.2d 1199, 1207 n.7 (Fed. Cir. 1993) (reviewing the procedural regularity of the challenged action, but not the substance of the Army's decision, and finding Army Board for Correction of Military Records erred in failing to correct procedural error). Moreover, the Supreme Court has held that, within the context of APA review, it is a "procedural requirement" that an agency (such as the AFBCMR) "provide a reasoned explanation for its action" which includes a requirement that an agency consider the "conspicuous issues" before it. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. at 1916. Further, to survive a motion to dismiss on these claims, "a claimant need not provide definitive proof of prejudicial error before the Court of Federal Claims, but only enough of a factual predicate to direct further inquiry into the nexus between the error or injustice and its adverse consequences." *Lindsay*, 295 F.3d at 1261.

Ms. Conti's claims seek review of an AFBCMR decision and are firmly grounded by allegations of procedural violations that provide clear tests and standards by which this Court can

evaluate the agency's actions. Citing applicable regulation, Ms. Conti's complaint asserts

plausible allegations that, among other irregularities, the Air Force violated procedures by failing

to resolve her overgrade condition within 24 months and reassigning her to a position for which

she was qualified and in accordance with a management plan that provides the optimum career

progression and promotion opportunity while keeping personnel in excess and overgrade status

to a minimum. *See* Compl. It further plausibly alleges that but for these violations that

perpetually affected her promotion eligibility, she would have been promoted. Contrary to

Defendant's assertions, these regulations provide objective, discernable regulatory standards that

her command was required to follow and did not, as the Complaint alleges.

Importantly, these allegations are asserted through a procedural challenge to the

AFBCMR's decision.[11] *See Miller*, 119 Fed. Cl. at 731 ("[O]nce a service-member has had

recourse to a corrections board, the focus is both on the procedural infirmity alleged before the

board, as well as on a review of the board's decision under the arbitrary and capricious

standard."); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. at 1916. The

AFBCMR's decision which incorporated IG findings and the NGB Advisory Opinion that

---

[11] Contrary to cases involving officer-promotion matters, the AFBCMR's authority to grant full
promotion relief in enlisted-member cases is far more direct. In officer cases, the Board is
limited to making records corrections and directing Special Selection Boards (SSB), under 10
U.S.C. § 628, which then later consider an applicant's suitability for promotion and may or may
not select the officer for promotion. *See Roth v. United States*, 378 F.3d 1371, 1393 (Fed. Cir.
2004) (stating that "the proper approach after a correction board makes record corrections is for
the board to decide for itself whether or not to convene SSBs"); *Terry v. United States*, 144 Fed.
Cl. 150, 157–58 (2019)(discerning a promotion-related claim involving review of ABCMR
decision not to correct records or direct convening an SSB). On the other hand, in non-officer
cases, the BCMR can direct records corrections to reflect that a member was promoted and, in
fact, the Secretary has the discretion to do so via the BCMR process without acting through a
board of civilians. *See* 10 U.S.C. § 1552(a)(2); *see also Chappell v. Wallace*, 462 U.S. 296, 303
(1983)(stating, in the context of a case involving enlisted personnel, "The Board is empowered to
order retroactive backpay and retroactive promotion").

further illuminate the underlying procedural irregularities Ms. Conti raised, only enhances to the competency of this court to evaluate whether these regulations were properly followed and whether the AFBCMR's decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *See Miller*, 119 Fed. Cl. at 731–32.

The Defendant asserts several arguments that Ms. Conti's promotion-related claims are nonjusticiable but none are persuasive given the clear procedural violations at the heart of this case. The Defendant claims that Ms. Conti was not "participating in the promotion process" yet offers no explanation as to when the process begins for ANG members like Ms. Conti. Def.'s Mot. Dismiss & Mot. J. Admin. R. 19. The Defendant nonetheless argues that Ms. Conti's alleged procedural violations relate to an assignment instruction, not a promotion instruction, and therefore there is no inherent test or standard for the Court to measure the Air Force's conduct. *Id.* As explained *supra* Part III.A.2, assignments are an inextricable component of the promotion process for enlisted ANG members and, therefore, failure to follow assignment regulations can negatively affect promotion eligibility and consideration. As alleged in Ms. Conti's Complaint, the Air Force's violations of these "assignment" provisions had clear, discernable impact on Ms. Conti's career progression, promotion eligibility, and promotion. *See, e.g.*, Compl. ¶¶ 29, 35–37, 55, 56, 70, 85, 86. To the extent she was not technically "participating in the promotion process," the reason she was kept from the process was due to her command's failure follow binding regulation, which is reviewable by this Court. *See Lindsay*, 295 F.3d at 1258.

Defendant next claims that assignment decisions are generally matters of a commander's discretion and therefore there are no inherent tests or standards to measure the Air Force's conduct. Def.'s Mot. Dismiss & Mot. J. Admin. R. 20. As this Court has held numerous times, "In cases in which procedural violations are alleged, the test or standards against which this court

measures the military's conduct are inherent: they are the applicable statutes and regulations."
*Adkins*, 68 F.3d 1317, 1323; *Murphy*, 993 F.2d at 873; *Lindsay*, 295 F.3d at 1257–58; *see also Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990) (holding that when the military promulgates procedural regulations and instructions and makes them the basis for a personnel action, that action is "subject to judicial review for compliance with those regulations and instructions.")

The Defendant cites a few isolated provisions of ANGI 36-2101 that it argues give a commander unreviewable discretion over assignments. Def.'s Mot. Dismiss & Mot. J. Admin. R. 20–21. But the argument ignores the clear, objective procedures that governed her command's conduct and required specific action when Ms. Conti's position became overgrade. For example, the Defendant ignores the overall requirement a command "provide visible, relatively stable career progression opportunities over the long term;" the 24-month limitation period (which the initial NGB Form 36-11 exceeded); and the command's duties to identify members in overgrade 12 months before the expiration period and to "provide[] the optimum career progression and promotion opportunity *while keeping personnel in excess and overgrade status to a minimum*"— all of which frame the command's obligation to reassign an overgrade member to the first available position commensurate with their grade and for which they are qualified. *See* DoDD 1304.20, para. 4.2.2; ANGI 36-2101. para. 1.1.3; *id.* at p. 38; para. 2.18.11 (emphasis added). The Defendant's argument also ignores evidence arising during the IG and AFBCMR process that there were viable available positions to resolve her overgrade status to make her promotion eligible, through force-management decisions.

Further, whether a member is "qualified" is not reserved wholly to a commander's discretion as the Defendant insists. Def.'s Mot. Dismiss & Mot. J. Admin. R. 20. Rather, it is

controlled by objective qualification criteria such as the member's AFS, skill level attained by, among other things, acquiring technical knowledge and serving a certain amount of time in service—all encapsulated by a member's AFSC within the context of a defined classification scheme. *See* AFI 36-2101, para. 1.2.3.1 ("The classification system is established to identify requirements and identify the personnel qualified to fill those requirements."); *see also id.* paras. 3.1.1–3.1.6 (describing factors that determine a PAFSC, which thereafter indicates the duties for which a member is most qualified to perform). All of these items suggest that it was *not* a discretionary command decision that kept Ms. Conti in overgrade status and promotion ineligible, but a series of regulatory violations that the Court is competent to assess.

### C. Because Ms. Conti's claims are firmly rooted in plausible allegations of procedural error committed by Ms. Conti's command and the AFBCMR, Ms. Conti need not establish a clear-cut legal entitlement to a promotion to state a claim for relief.

This Court has found a procedural challenge to a decision not to promote adequately states a claim for relief. *See Miller*, 119 Fed. Cl. at 731. The *Miller* court discerned a claim for relief where, as Ms. Conti does here, "a plaintiff seeks review not of the substance of a military decision, but instead its compliance with an applicable statute or regulation, this court may review a military promotion decision for procedural error." *Id*. The Court further found "once a service-member has had recourse to a corrections board, the focus is both on the procedural infirmity alleged before the board, as well as on a review of the board's decision under the arbitrary and capricious standard." *Id*. at 731. Denying the defendant's motion to dismiss, the court identified a procedural issue inherent the plaintiff's military pay claim relating to his promotion in the complaint. *Id*. at 732. *Lewis v. United States,* 458 F.3d 1372, 1378 (Fed. Cir. 2006) (stating that a promotion claim's reviewability depends on whether the denial of the promotion was an official's exercise of "Presidential discretion in declining to grant the

appointment or whether the official is improperly construing the Constitution, a statute, or regulation directing appointments (in which case the action is reviewable).")

Here, as discussed throughout this memorandum, Ms. Conti is challenging numerous procedural irregularities which she raised to the AFBCMR that should be reviewed under the arbitrary and capricious and error-of-law standards. This case does not implicate the justiciability concerns in a typical promotion-type case but instead asks the Court to evaluate the AFBCMR's failure to properly consider underlying failures of Ms. Conti's command to comply with controlling statutes and regulations.

To the extent that the Court deems Plaintiff's request for promotion under its ancillary records-correction authority under 28 U.S.C. § 1491(a)(2) to be beyond its authority, the Court still has clear authority to review the AFBCMR for procedural irregularities and set aside the decision. *See Reeves v. United States*, 49 Fed. Cl. 560, 570 n. 26 (2001) ("[I]f if serious prejudicial procedural violation(s) are established, or if a military board's decision is shown to be arbitrary, capricious, unsupported by substantial evidence, or contrary to law, the Court can remand the matter to a military department, inter alia, for additional consideration as required.")

## V. CONCLUSION

Based on the foregoing, Ms. Conti respectfully requests that the Court deny the Defendant's Motion to Dismiss or, Alternatively, Judgment on the Administrative Record and grant Plaintiff's Cross-Motion for Judgment on the Administrative Record.

///

///

///

///

Dated:  June 28, 2021                    Respectfully submitted,

                                         _____/s/ *Brian D. Schenk*_____
                                         Brian D. Schenk
                                         Midwest Military & Veterans Law, PLLC
                                         310 4th Avenue S., Suite 5010
                                         Minneapolis, Minnesota  55415
                                         Telephone: (202) 557-6570 (c)
                                         Facsimile: (612) 206-3170
                                         brian@militaryandveteranslaw.com

                                         *Counsel for Plaintiff*