No. 20-1732C
(Judge Dietz)

---

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

LESLIE J. CONTI,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

---

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

BRIAN D. SCHENK
Midwest Military & Veterans Law, PLLC
400 S. 4th Street, Suite 501-410
Minneapolis, Minnesota 55415
Telephone: (202) 557-6570 (c)
brian@militaryandveteranslaw.com

*Counsel for Plaintiff*

August 1, 2022

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

I. QUESTION PRESENTED .........................................................................................................1

II. STATEMENT OF THE CASE ..................................................................................................1

  A. Nature of the Case.................................................................................................................1

  B. Legal Standards.....................................................................................................................2

    1. RCFC 52.1 Judgment on The Administrative Record ......................................................2

    2. Judicial Review of Military Records-Correction Board Decisions ..................................2

    3. Applicable Regulations ....................................................................................................4

  C. Statement of Facts .................................................................................................................9

    1. Ms. Conti's career, position overgrade status and stagnant career progression ................9

    2. Inspector General Complaint ..........................................................................................14

    3. Ms. Conti's Retirement in the Reserve Grade of E-6 .....................................................18

    4. First AFBCMR Decision .................................................................................................18

    5. Litigation and Remand.....................................................................................................18

    6. Second AFBCMR Decision .............................................................................................21

III. ARGUMENT.........................................................................................................................24

  A. The AFBCMR's 2022 decision is arbitrary, capricious, unsupported by substantial
     evidence, and contrary to law. ............................................................................................24

    1. The AFBCMR erroneously determined that it did not have authority to grant the records-
       correction relief Ms. Conti requested ............................................................................24

    2. The AFBCMR arbitrarily and capriciously failed to find that Ms. Conti's command's
       procedural violations precluded her promotion to E-7....................................................27

    3. The AFBCMR failed to correct an error clearly presented to it ......................................30

IV. CONCLUSION.............................................................................................................31

PLAINTIFF'S APPENDIX ...............................................................................................App. 001

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adams v. United States*, 117 Fed. Cl. 628 (2014)..............................................................3

*Adkins v. United States*, 68 F.3d 1317 (Fed. Cir. 1995) ...................................................27

*Arroyo v. United States*, 116 Fed. Cl. 691 (2014)..............................................................2

*Bannun, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005) ........................................2

*Caddington v. United States*, 147 Ct. Cl. 629 (1959) ........................................................3

*Cameron v. United States*, 106 Fed. Cl. 551 (2012) ....................................................3, 30

*Camilo v. United States*, 89 Fed. Cl. 671 (2009) ...............................................................2

*Duhon v. United States*, 198 Ct. Cl. 564 (1972) ..........................................................3, 30

*Haselwander v. McHugh*, 774 F.3d 990 (D.C. Cir. 2014)................................................30

*Lindsay v. United States,* 295 F.3d 1252 (Fed. Cir 2002)................................................27

*Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003)...............................................2

*Miller v. United States*, 98 Fed. Cl. 767 (2011)...............................................................27

*Roth v. United States*, 378 F.3d 1371 (Fed. Cir. 2004)...............................................2, 30

*Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735 (2012) .......................................2

*Skaradowski v. United States*, 471 F.2d 627 (Ct. Cl. 1973) ...........................................30

*Strand v. United States,* 138 Fed. Cl. 633, 639–40 (2018) ...............................................3

*Verbeck v. United States*, 97 Fed. Cl. 443 (2011)..............................................................3

*Walls v. United States*, 582 F.3d 1358 (Fed. Cir. 2009) ....................................................3

*Wronke v. Marsh*, 787 F.2d 1569 (Fed. Cir. 1986)............................................................3

*Yee v. United States*, 206 Ct. Cl. 388 (1975) ..............................................................3, 30

**STATUTES**

5 U.S.C. § 706.....................................................................................................................3

10 U.S.C. § 101 ...................................................................................................................24

10 U.S.C. § 1201 .................................................................................................................16

10 U.S.C. § 1552 ..............................................................................................................1, 25

10 U.S.C. § 10101 ...............................................................................................................25

10 U.S.C. § 10112 ...............................................................................................................24

10 U.S.C. § 10503 ...............................................................................................................25

10 U.S.C. § 12107 ...............................................................................................................25

32 U.S.C. § 101 ...................................................................................................................24

## RULES AND REGULATIONS

32 C.F.R. § 865 ..................................................................................................................31

Air Force Policy Directive AFPD 36-25, *Military Promotion and Demotion* (May 7, 2014) .........
...............................................................................................................................4, 8, 17, 23

Air Force Instruction 36-2101, *Classifying Military Personnel (Officer and Enlisted)* (Mar. 7, 2006) ........................................................................5, 6, 8, 14, 17, 19, 20, 21, 22, 28

Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) .............................................................................................5, 7, 19, 23, 28

Air Force Instruction 36-2603, *Air Force Board for Correction of Military Records (AFBCMR)* (Sept. 18, 2017).................................................................................18, 20, 27

Air National Guard Instruction 36-2101, *Assignments within the Air National Guard (ANG)* (Apr. 10, 2012)...................................................................................7, 8, 9, 23

Air National Guard Instruction 36-2502, *Promotion of Airmen* (June 17, 2010).....5, 7, 11, 17, 22, 23, 28

Air Force Instruction 90-301, *Inspector General Complaints Resolution* (Aug. 27, 2015) ..........15

Department of Defense Directive 1304.20, *Enlisted Personnel Management System (EPMS)*, (July 28, 2005) ................................................................................4, 8, 17, 23, 28

RCFC 52.1 .........................................................................................................................1, 2

**AFBCMR DECISIONS**

AFBCMR Dkt. No. BC199900374 (July 1, 1999) ........................................................27

AFBCMR Dkt. No. BC200700367 (Dec. 4, 2007) ......................................................27

AFBCMR Dkt. No. BC201003680 (Apr. 27, 2011) ....................................................26

AFBCMR Dkt. No. BC201300293 (Aug. 18, 2014) ...................................................26

AFBCMR Dkt. No. BC201401220 (Mar. 4, 2015) .....................................................26

AFBCMR Dkt. No. BC201305647 (Apr. 16, 2015) ....................................................26

AFBCMR Dkt. No. BC201305714 (Apr. 16, 2015) ....................................................26

AFBCMR Dkt. No. BC201402634 (Nov. 20, 2015) ...................................................26

AFBCMR Dkt. No. BC201404711 (Feb. 19, 2016) ....................................................26

AFBCMR Dkt. No. BC201500042 (Feb. 24, 2016) ....................................................26

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to RCFC 52.1 Plaintiff, Leslie J. Conti, respectfully submits this memorandum of law in support of judgment on the administrative record.

## I. QUESTION PRESENTED

Is the Air Force Board for Correction of Military Records (AFBCMR)'s 2022 final decision arbitrary, capricious, contrary to law, an abuse of discretion, or unsupported by substantial evidence where it failed to grant full and effective relief despite finding procedural errors or injustices that Ms. Conti's command committed error or injustice by violating procedures requiring timely, adequate resolution of her overgrade status and career progression?

## II. STATEMENT OF THE CASE

### A. Nature of the case

This case involves numerous indisputable procedural violations by Ms. Conti's unit that impacted her career progression and promotability. Despite finding these procedural violations amounted to error and injustice under 10 U.S.C. § 1552, the AFBCMR incorrectly asserted that it did not have authority to grant relief and further arbitrarily and capriciously claimed that Ms. Conti's promotion was too speculative to warrant a correction to her records.  However, there is a clear nexus between the procedural violations in this case, their impact on Ms. Conti's promotion eligibility and her non-promotion before her retirement in a lower grade. Not only is the AFBCMR's decision arbitrary, capricious, and contrary to law, it is an abdication of the boards statutory duty to determine the true nature of errors or injustices and grant thorough and fitting relief.

1

## B. Legal Standards

### 1. RCFC 52.1 Judgment on The Administrative Record

Motions for judgment upon the administrative record under RCFC 52.1 require that the Court determine, given all the disputed and undisputed facts in the administrative record, whether "the plaintiff has met [his] burden of proof to show that the decision was not in accordance with law." *Camilo v. United States*, 89 Fed. Cl. 671, 678 (2009). Rule 52.1 provides for "trial on a paper record, allowing fact-finding by the trial court." *Bannun, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). "Unlike summary judgment, for instance, 'a genuine dispute of material fact does not preclude a judgment on the administrative record.'" *Arroyo v. United States*, 116 Fed. Cl. 691, 697 (2014) (quoting *Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 751 (2012)).

### 2. Judicial Review of Military Records Correction Boards Decisions

For decades, this Court has reviewed military records-correction board decisions where the member has elected to pursue relief from such boards under 10 U.S.C. § 1552. *Martinez v. United States*, 333 F.3d 1295, 1314 (Fed. Cir. 2003). The AFBCMR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Caddington v. United States*, 147 Ct. Cl. 629, 634 (1959). It "is obligated not only to properly determine the nature of any error or injustice, but also to take 'such corrective action as will appropriately and fully erase such error or compensate such injustice.'" *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (citation omitted). "[W]hen a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate. And such a violation, contrary to the evidence, is arbitrary and capricious." *Yee v. United States*, 206 Ct. Cl. 388, 397 (1975). "The correction boards were

created to remedy wrongs not to confound them." *Duhon v. United States*, 198 Ct. Cl. 564, 570 (1972).

In this Court, "judicial review of decisions of military correction boards is conducted under the [Administrative Procedure Act (APA)]" standard of review. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). "[T]he Court must 'hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .'" *Strand v. United States,* 138 Fed. Cl. 633, 639–40 (2018) (noting that the court must apply the standard of review set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)). A plaintiff must show by "cogent and clearly convincing evidence" that the decision of the military correction board fails this standard. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (internal quotation marks omitted). When reviewing the administrative record, there is a "strong presumption that military officials, including those sitting on the ABCMR, have acted in accordance with the law." *Cameron v. United States*, 106 Fed. Cl. 551, 560–61 (2012) (citations omitted). "Notwithstanding that deference, the military must follow any regulations it issues." *Id*. at 561 (citation omitted).

Further, although the Court "accords a presumption of regularity and deference to a correction board's denial of relief," when it "does not act to redress clear injustice, its decision is arbitrary and capricious and must be overturned upon review by this court." *Boyer v. United States*, 81 Fed. Cl. 188, 193 (2008). The Court "must satisfy itself that the Board considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it." *Adams v. United States*, 117 Fed. Cl. 628, 653 (2014) (quoting *Verbeck v. United States*, 97 Fed. Cl. 443, 451 (2011)).

### 4. Applicable regulations

Department of Defense Directive 1304.20, *Enlisted Personnel Management System (EPMS)*, para. 1.2.3 (July 28, 2005) sets forth the policies, responsibilities, objectives and requirements for a subordinate service's Enlisted Personnel Management Plan (EPMP). *See* AR285. It provides that it is DoD Policy that the Air Force "shall define desired promotion timing objectives for grades E-5 through E-7. In normal years the average experience at promotion shall be within l year (above or below) the desired promotion timing." DoDD 1304.20*,* para. 4.1.4. Further, "Experience (time-in-service (TIS)) at promotion shall be the key indicator of the alignment of grade and experience pyramids." *Id.* para. 4.1.3. One of the specific goals of the EMPS is to "provide visible, relatively stable career progression opportunities over the long term." *Id.* para. 4.2.2.

Air Force Policy Directive (AFPD) 36-25, *Military Promotion and Demotion* (May 7, 2014) implements DoDD 1304.20. *See* AR288. The regulation reiterates the overall guiding policy that "[t]he Air Force promotion system will provide a visible, relatively stable career progression, consistent with the Defense Officer Personnel Management Act of 1980, Reserve Officer Promotion Management Act of 1996, and Top Five enlisted guidelines provided in [DoDD 1304.20]. The system will provide for promotion opportunity and timing for advancing Airmen with the appropriate experience and skill to fill projected requirements . . . ." AFPD 36-25*,* para. 2. It mandates that the Air Force components "Select Airmen for promotion based on potential to serve in the next higher grade. Selections will be made using the fully qualified or best qualified concept, which values duty performance and potential based on that performance, but not to the exclusion of other factors." *Id.* para. 3.1.

Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) implements AFPD 36-25 and "provides guidance and procedures on promoting enlisted airmen" including Air National Guard (ANG) personnel. The instruction replaced Air National Guard Instruction (ANGI) 36-2502, *Promotion of Airmen* (June 17, 2010).

To frame the Court's review of ANGI 36-2502, AFI 36-2502 and their applicability to this case, a discussion of a few of the interrelated force-management concepts may be useful. Enlisted Air National Guard members are placed in duty positions based on qualifications within an Air Force Specialty (AFS) and each AFS has a title and a code, called an Air Force Specialty Code (AFSC). *See* AFI 36-2101, *Classifying Military Personnel (Officer and Enlisted)*, p. 62 (June 25, 2013).

An AFSC is comprised of "[a] combination of numbers and alpha characters used to identify an AFS. . . . [E]nlisted AFSCs consist of five characters. Alpha prefixes or suffixes are used with the numerical codes when more specific identification of position requirements and individual qualifications is necessary." *Id.* at p. 63; *see also* ANGI 36-2101, at p. 37. The first letter of an AFSC identifies the career group (e.g. 1-Operations; 2-Logistics; 3-support). AFI 36-2101, Table 1.1, Line 1. The second and third letters indicate the career field and career field subdivision. *Id.* Table, 1.1, Line 2.

The fourth letter indicates the "skill level" assigned to the AFSC, which is "[t]he level of qualification within an awarded enlisted AFS." *Id.* Table, 1.1, Line 3. There are six skill levels: 1-Helper; 2-Apprentice; 3-Journeyman; 7-Craftsman; 9-Superintendent; 0-Chief Enlisted Manager (CEM). *Id.* at p. 66. Relevant in this case, "[t]he 7-skill level (craftsman) identifies enlisted personnel who have gained a high degree of technical knowledge in their AFSC and who have additionally acquired supervisory capability through training and experience.

5

Craftsmen continue to gain experience in technical, supervisory, and managerial functions. Craftsmen plan, coordinate, implement, and direct work activities." *Id.* A 7-skill level is attained by completing educational training, being an E-5 or above, completing 12 months of on-the-job training, meeting certain requirements specific to the AFS, and being recommended by their supervisor. *Id.* Table 3.8, Rule 4. The fifth letter adds more specificity to the AFSC. *Id.* Table 1.1, Line 5. As described in more detail below, the skill levels reflected in an AFSC are integral to a member's career progression.

A member may hold multiple AFSCs, which are reflected in unit documents such as a personnel roster. *See, e.g.,* AR171; AR109. A member holds a Primary AFSC (PAFSC) which is the AFSC "in which the individual is most qualified to perform duty" as determined by a number of factors including skill level, experience, complexity of the specialty, amount of formal education and training and the desires of the individual. AFI 36-2101 para. 3.1. A member is also designated Duty AFSC (DAFSC) which "is the AFSC denoting the specialty in which the individual is performing duty." *Id.* at p. 64. A member may also hold a Secondary AFSC (2AFSC) reflecting the code for which the "individual is second best qualified to perform duty." *Id.* at p. 66. A member also carries a Control AFSC (CAFSC) which is the "AFSC in which the airman enlisted" and is "A management tool used to make enlisted Airman assignments, to assist in determining training requirements, and to consider individuals for promotion." *Id.* para. 2.3.1; *id.* at p. 64. The actual UMD position a member occupies is signified by a position number. *See, e.g.*, AR 9. A member's position further carries with it an "authorized grade," which is "the grade that appears on a manpower document for a particular [UMD] position [and normally is] the authorized grade is the highest grade that can be held by the incumbent of the position." ANGI 36-2101 at p. 37.

Personnel force-management procedures for assignments and Air Force Specialty Codes (AFSCs) are key elements of the promotion system for ANG members. ANGI 36-2502 provides that unit commanders serve as the recommendation authority for ANG members and must "ensure their personnel meet all promotion criteria as outlined in this instruction prior to promotion. They are also responsible for ensuring that a viable personnel force management plan is in place *to provide for the progressive development and upward mobility of their assigned personnel*." *Id.* para. 1.1.4 (emphasis added); *see also* AFI 36-2502 para. 10.1.11.

If a member meets eligibility criteria, they can be considered for promotion upon recommendation by their unit commander. ANGI 36-2502, paras. 1.4.1; 1.4.2; AFI 36-2502, para. 10.1.1.2. The authority to approve a promotion to E-7 lies with the state Adjutant General (TAG). ANGI 36-2502, para. 1.2.2; AFI 36-2502, para. 10.1.3.1

Relevant in this case, an ANG E-6 meets eligibility criteria for consideration to promotion to E-7 when the member: holds a 7-skill level in their PAFSC; accrues 108 months time-in-service (TIS); has 24 months time-in-grade (TIG); completes Noncommissioned Officer Academy (NCOA); and has 12 months of retainability. ANGI 36-2502, Table 2.1, Rule 6; AFI 36-2502, Table 10.1, Rule 5. The member must also be assigned to "a valid UMD position with an authorized grade greater than or equal to the grade for which the member is being recommended." ANGI 36-2502, para. 2.1.2; AFI 36-2502, para. 10.1.15.2. Importantly, the member cannot be in "overgrade" status, which means that the member is filling a position designated below their grade. ANGI 36-2502, para. 2.1.2; AFI 36-2502 para. 10.1.15.3; *see* ANGI 36-2101, *Assignments within the Air National Guard (ANG)* (Apr. 10, 2012), p. 38 (defining overgrade status). Also, the member may not be "pending a Medical Evaluation Board (MEB)/ Physical Evaluation Board (PEB)/ Worldwide Duty Determination and/ or is not

qualified for worldwide duty." ANGI 36-2502, Table. 1.1, Rule 1; AFI 36-2502, Table 10.2,

However, members who are non-deployable with an Assignment Limitation Code (ALC) but

otherwise fit for duty are eligible for promotion. ANGI 36-2502Table 1.1, Rule 1, Note 1; *see*

AFI 36-2502, Table 10.2, Rule 1.

Air Force and Air National Guard policy place clear responsibilities on unit commanders

and squadron personnel to resolve an ANG member's overgrade status within a specified period.

*See* ANGI 36-2101. Broadly, the regulation requires that unit commanders "ensure their

personnel are assigned to authorized positions within their unit, adequately briefed on career

impacting assignment issues, and that a viable personnel force management plan is in place to

ensure that it meets the needs of the ANG." *Id.* para. 1.1.3. The purpose of a viable force

management plan is to "provide[] the optimum career progression and promotion opportunity

*while keeping personnel in excess and overgrade status to a minimum.*" *Id.* at p. 38 (emphasis

added).

Consistent with the goal of keeping members who are in overgrade status to a minimum

and limiting occurrences that contravene stable, career-progression goals set forth in DoDI

1304.20 and AFPD 36-25, several command duties apply. If a member's duty position becomes

overgrade, a unit commander must counsel the member as to "why the condition occurred, the

overgrade or excess code, effective date, expiration date and what could happen as a result of this

assignment." ANGI 36-2101, para. 2.18.1. "Unit commanders must exercise due care in making

assignment/reassignment decisions, giving primary considerations to mission need and ANG

requirements. When a commander places a member in an excess or overgrade condition, they are

tasked with having the member sign NGB 36-11, Statement of Understanding." *Id.* para. 2.18.2.

"It is incumbent on the unit commander to keep members informed of their status and to continually work with the member to rectify the excess or overgrade condition." *Id.* at 2.18.2.2.

Particularly relevant here, the regulation specifies a "maximum allowed" time of 24 months for members to be retained in overgrade status. *Id.* para. 4.2. "[E]nlisted personnel and officers below the grade of colonel, who become overgrade as a result of NGB directed realignment, reorganization, or UMD change may be retained for 24 months or 20 years of satisfactory service . . . whichever occurs first." *Id.* para. 4.2.1. Relatedly, "Any member assigned in an excess or overgrade status *must be reassigned* to the first available position commensurate with their grade and for which they are qualified." *Id.* para. 2.18.11(emphasis added).

Also relevant to this reassignment provision and the 24-month limitation, a member's Force Support Squadron (FSS) is required to "produce and provide a listing at least quarterly to each commander identifying those currently assigned excess or overgrade and whose condition will expire within twelve months." *Id.* para. 2.18.4. The unit commander is tasked with using the listing to make necessary "force management decisions in regards to . . . overgrade assignments/reassignments" *Id.* Further, "[t]he listing will be returned to the FSS [by the unit commander] with a viable plan for resolution of each excess or overgrade condition." *Id.*

## C. Statement of Facts

### 1. Ms. Conti's career, position overgrade status and stagnant career progression

On July 15, 2004, Ms. Conti simultaneously enlisted in the Texas Air National Guard (TXANG) and as a Reserve of the United States Air Force. AR449–50. On May 2, 2005, Ms. Conti entered the Active Duty for Special Work (ADSW) program as a staff sergeant (E-5) and was attached to the 149th Flight Wing in San Antonio, Texas to support national guard drug

9

interdiction and counter-drug activities. *See* AR163; AR211; AR431. The ADSW program was later called Active Duty for Operational Support (ADOS). AR430. Ms. Conti would remain on orders in this program until her retirement on May 28, 2018. *See* AR431; AR473.

Effective April 21, 2007 she was placed in a 7-skill level, information management AFSC (3A071) after completing all required training and upon her supervisor's recommendation "to upgrade to 7-level." AR414. On September 19, 2008, Ms. Conti was promoted to technical sergeant (E-6) "in the TXANG and as a reserve of the Air Force" with an effective date of rank (DOR) of September 8, 2008. AR472.

On June 11, 2010, at the end of her previous six-year obligation, Ms. Conti reenlisted in the TXANG and in the Air Force Reserve of the United States for another six years. AR446–48. She specifically agreed to "remain a member of the ready reserve during the period of enlistment unless sooner released by proper authority." AR446. Her Expiration of Term of Service (ETS) was therefore set at June 10, 2016. *See* AR06.

As of September 28, 2011, Ms. Conti was fully qualified for two 7-level AFSCs: knowledge operations management AFSC (3D071) in addition to the 3A171 AFSC. AR154; AR158. In January 2012, Ms. Conti was filling a duty position tied to a 3D071 DAFSC. *See* AR157. On January 1, 2012, due to enlisted grade restructuring and changes in the Unit Manpower Document (UMD) outside of Ms. Conti's control, the authorized grade for her duty position was downgraded to staff sergeant (E-5). *See* AR157; AR109; *see also* AR08. As a result, Ms. Conti was filling a duty position now below her E-6 grade and was therefore in "overgrade" status. Her overgrade status rendered her ineligible for promotion and would set off a chain reaction of promotion-related issues for several years until her retirement.

On February 29, 2012, Ms. Conti and the 149th Civil Engineer Squadron (CES) commander at the time, Lt Col Christopher Miller, signed an NGB[1] Form 36-11, Statement of Understanding for Excess/Overgrade Condition. AR157. The form backdated the effective start of her position's overgrade status to January 1, 2012 with an expiration date of December 31, 2014—a period of 35 months and 30 days. *Id.*

In March 2013*,* Ms. Conti contacted then 149th Communications Flight Commander, 1st Lt Terrance Johnson asking whether he had "information regarding [her] position being grandfathered for [her]." AR135 (copying Lt Col Miller on the email). 1st Lt Johnson recommended that "Lt Col Miller should get with FSS and Col Dickens [commander of the 149th Mission Support Group] to play the shell game to keep [her] safe." *Id.* Ms. Conti forwarded 1st Lt Johnson's email to Lt Col Miller, stating that she understood 1st Lt Johnson believed there was "a DSG position DSG position in Ops, a MSgt position, in which I could be slotted against to protect me." *Id.* There is no evidence that Lt Col Miller answered the request.

Despite being in overgrade status, Ms. Conti continued to work toward meeting the eligibility requirements for promotion to E-7. On November 22, 2013, she completed the USAF Noncommissioned Officer (NCO) course. AR156. At that point, she met the general promotion-eligibility criteria for promotion to E-7 because she possessed two 7-skill level AFSCs, had time-in-service that well exceeded the 108 months minimum, as she had more than 192 months; she also exceeded the minimum 2 years time-in-grade, having more than 5-years time-in-grade; and had completed the NCO Academy course. *See* ANGI 36-2502, Table 2-1, Rule 6. However,

---

[1] The National Guard Bureau (NGB) is a federal agency tasked with, among other things: [m]onitoring and assisting the States in the organization, maintenance, and operation of National Guard; [s]upervising and administering the Active Guard and Reserve program as it pertains to the National Guard; and issuing directives, regulations, and publications consistent with approved policies of the Army and Air Force, as appropriate. 10 U.S.C. § 10503(5), (10), (11).

primarily because she was still in an unresolved overgrade status, she could not be promoted. *See id.* Table 1.1, Rule 10.

December 31, 2013 marked 24 months from the date Ms. Conti's position became overgrade. *See* AR157. At the time, Ms. Conti was undergoing a Medical Evaluation Board (MEB) review, which made her promotion ineligible but would find her fit for duty with a "C2" Assignment Limitation Code on January 21, 2014. AR112; *see* ANGI 36-2502, Table 1.1, Rule 1; *id.* Rule 1, Note 1.

On May 20, 2014, Ms. Conti's PAFSC was indirectly converted from 3D071 to 3A171. AR25. Ms. Conti later explained that the conversion was a result of the change in her duty assignment associated with the position that had become overgrade. AR158; AR159. In other words, the conversion was a consequence of the UMD change in her duty position and her subsequently becoming overgrade in 2012. On the same day, she was notified by FSS that "In October, we anticipate your AFSC will again be converted to 3S011 and you will be required to retrain into the Personnel AFSC." AR159. However, she remained qualified for other duty positions within the 3D071 and 3A171 AFSCs. *See* AR158.

On October 1, 2014, Ms. Conti's overgrade 3A171 position and her DAFSC, PAFSC, and CAFSC were converted to a 3S011, which would require her to retrain. AR202; AR13. However, due to medical duty limiting restrictions she could not attend training to obtain the new AFSC into which she had been forced. AR163. On July 12, 2015, Ms. Conti and the squadron commander who succeeded Lt Col Miller, Lt Col Robert Eskridge, signed a new NGB Form 36-11 that contained a backdated effective date of October 1, 2014 and an expiration date of June 10, 2016 which, at the time, was the date Ms. Conti's expiration – term of service (ETS). AR162; *see also* AR163.

On March 8, 2016, Lt Col Eskridge requested an exception to policy in order to extend Ms. Conti's ETS date by 14 months. AR163. He explained that because her current DAFSC (3S0X1)— which she was "mandatorily forced into"—as a further consequence of her position being overgrade status—was "incorrect," she could not reenlist. *Id.* He continued to state that "[d]ue to medical duty limiting conditions, TSgt Conti is unable to travel in a TDY status to Technical School to obtain the new AFSC." *Id.*

On or about March 3, 2017, Lt Col Eskridge signed off on Ms. Conti's Enlisted Performance Report (EPR) for the period covering December 1, 2014 through November 30, 2016. AR169–70. He marked that Ms. Conti was "promotion eligible" and, in the "promotion recommendation" field, he recommended that she be promoted. *Id.*

Thereafter, Ms. Conti made several attempts to address with her command the events that had halted her career progression and prevented her from being promoted to E-7. In August 2017, Ms. Conti requested an appointment with the 149th Group commander to "discuss concerns regarding events affecting my promotion eligibility for the past several years." AR141. When asked whether she had discussed the issues with her supervisor and commander, Ms. Conti stated that she had and that her "supervisors [were] quite aware of [her] concerns and [had] been for well over a year." AR140–41. Her supervisor had recommended she discuss it with the Wing commander. AR141. After no resolution, Ms. Conti elevated her concerns via email to the 149th Wing commander, which did not result in any relief. AR142–43.

On March 1, 2018, Ms. Conti filed a complaint with the 149th Flight Wing Inspector General (IG). AR103–31. As she would later elaborate in her initial AFBCMR application, she stated that "[a]lthough I discussed my concerns many times with my chain-of-command and the Force Support Management leadership regarding vacant positions and regulatory requirements, I

was not reassigned and the overgrade condition was never corrected. Ultimately, I filed an IG complaint." AR154.

### 2. Inspector General Complaint

In her IG complaint, Ms. Conti asserted that her command had violated ANGI 26-2101 by failing to resolve her overgrade condition within 24 months of January 2012 and reassigning her to the first available position commensurate with the grade in which she was qualified. AR104. Notably, Ms. Conti explained the reason she had resorted to seeking an investigation by filing the IG complaint. Emphasizing her efforts to resolve the matter through lower channels, she stated she had "talked with management in Force Support and presented my concerns to everyone in my chain of command, to include the Wing Commander. My concerns and requests for redress have gone unanswered." AR104. She continued to state, "My leadership and FSS management told me several times there were no available positions to correct the over-grade condition. However, I discovered last August [2017] that there were in fact eight positions in the wing for which I could have been moved to in order to correct the over-grade condition." *Id.*

Referencing a timeline she created that cited supporting documents, she stated,

[T]here are 34 events noted in the timeline which affected my career and promotion eligibility; 27 (79%) negative, 6 (18%) positive, and 1 (3%) neutral event. IAW ANGI 36-2101, the first negative event in January 2012, should have been resolved within 2 years of the event. Paragraph 2.18.11, specifically states, "Any member assigned in an excess or overgrade status must be reassigned to the first available position commensurate with their grade and for which they are qualified." Instead, I was left in the position and subjected to numerous other events which adversely influenced my career and promotion eligibility.

AR105–06. She further asserted "I believe my promotion eligibility has been adversely impacted because I opposed illegal discrimination practices. I further believe I have been subjected to continual acts of harassment and reprisal because I pursue redress for my concerns." AR104.

14

The IG complaint was handled and processed by Lt Col Christopher Miller, who was Ms. Conti's previous unit commander during much of the time germane to the allegations and arguments raised in her IG complaint. AR167–68. He signed her initial NGB Form 36-11 in 2012 (AR157) and was her squadron/unit commander for the 24-month regulatory period until February 2014 (*see* AR132–33; AR113).

On April 10, 2018, Lt Col Miller dismissed Ms. Conti's complaint, citing a regulatory provision that permits dismissal "[i]f the complaint analysis reveals the complainant has not brought forth credible evidence of a violation of law, instruction, regulation, or policy." AR167–68; *see* AFI 90-301, *Inspector General Complaints Resolution* (Aug. 27, 2015). He explained, "My analysis determined that since December 2015 you have not meet [sic] the minimum requirements as specified in Air Force Instruction (AFI) 36-2502, *Enlisted Airman Promotion Demotion Programs*, Table 10.1 rule 6 for having a 7 skill level in the assigned AFSC and 1 year of retainability after promotion to Master Sergeant." AR167.[2]

Lt Col Miller conceded that Ms. Conti "could have possibly been placed into a different position to possibly satisfy the AFSC requirement for promotion." *Id.* Ultimately, Lt Col Miller's basis for dismissal was that "there is no documentation stating your Commander supported promotion to Master Sergeant." *Id.* Lt Col Miller notified Ms. Conti that she had the right to "petition the Air Force Board for Correction of Military Records (AFBCMR) to correct any adverse personnel actions" and, if she did, she "should inform them that IG records exist pertaining to the pending request." AR168.

---

[2] The reason she did not possess a 7-level skill in her "assigned AFSC" and one year of retainability was because her position became overgrade in 2012 (AR157) and then her PAFSC was converted to an "incorrect AFSC" (AR159) which made her ineligible to reenlist past her June 2016 ETS (AR163).

On April 24, 2018, Ms. Conti emailed Lt Col Miller with concerns about his handling of her IG complaint. She stated, "Since you were my first line supervisor and my Commander during the time-line of events which adversely impacted my promotion eligibility; shouldn't you have referred it to the next higher level for review?" AR133. He responded, "you bring up a good point" and acknowledged, "I did have prior knowledge of your situation." AR132. However, he claimed that his "analysis took into account my prior knowledge and look[ed] at the actions that happened starting in 2015." *Id.*

### 3.   Ms. Conti's Retirement in the Reserve Grade of E-6

In April 2018, at the culmination of the Disability Evaluation System (DES) process that found her physically unfit for continued duty, the Secretary of the Air Force directed that she be permanently retired under 10 U.S.C. § 1201, with a 40 percent rating under the Veterans Affairs Schedule for Rating Disabilities (VASRD). AR469; AR473; AR474. Effective May 28, 2018, by order of the Secretary of the Air Force, Ms. Conti was "relieved from active duty" and permanently disability retired under 10 U.S.C. § 1201. *See* AR474 (Special Order ACD-02561); AR473 (Special Order ACD-02623 amending portions of Special Order ACD-02561); AR45. Her orders indicated that her reserve grade on retirement was TSgt and that she had accrued 22 years, 5 months and 20 days of service for basic pay, of which 17 years, 3 months, and sixteen days constituted active service for retirement. AR473; AR431.

On October 13, 2018, Ms. Conti submitted a *pro se* application to the AFBCMR. AR154–76. In the DD Form 149, Ms. Conti argued that, in accordance with ANGI 36-2101 any member assigned in an overgrade status must be reassigned to the first available position commensurate with their grade and qualifications (para 2.18.11), and every effort will be made to ensure that assignments for retraining do not result in an overgrade condition (para 2.7).

AR154. Ms. Conti continued to state that, in violation of these requirements, she was not reassigned but instead she was mandatorily forced into retraining when her overgrade position converted to another AFSC and was forced to continue in the overgrade condition. *Id.* She stated that "Had I been reassigned IAW ANGI 36-2101, I would have been both eligible and qualified to promote IAW AFI 36-2502 as of 1 Dec 2015." She requested "a grade/rank adjustment to E-7/MSgt effective 1 Dec 2015 and awarded appropriate backpay." *Id.*

As advised by Lt Col Miller (AR168), Ms. Conti informed the AFBCMR that the matter had been reviewed by 149th IG (AR154). Ms. Conti submitted excerpts of a personnel roster containing UMD assignment information for certain members of the 149th and she annotated entries for certain members of the 149th that she argued were occupying positions that she could have been placed in to resolve her overgrade status. AR154; AR171–76. In relevant part, she highlighted an E-7 member in a 3D071 DAFSC who was then retraining for her position (i.e. in "Training Status: G"). AR172 (*see also* AFI 36-2101, Table 3.8, Rule 4). Ms. Conti argued that this "[m]ember retraining to 3D071 and below requisite skill level. Member told me she came from another state and enlisted in the Texas ANG in Feb 2016 to fill this position. IAW ANGI 36-2101, I should have been reassigned to this position when it became available before recruitment from out-of-state." AR172.

She continued:

The IG dismissed my complaint because it did not find credible evidence of a violation of law, instruction, regulation, or policy. However, as noted above, this matter involved violations of DODD 1304.20, AFPD 36-25, AFI 36-2502, AFI 36-2626, and ANGI 36-2101. As a fully qualified 7 skill level in two AFSCs, 3D071 and 3A171, I could have been reassigned to any one of 6 positions; but instead, those positions were filled with members without the requisite AFSC or skill level, or junior members not eligible to promote. While the IG acknowledged I could have been reassigned, he ultimately concluded there wasn't any documentation stating my Commander supported a promotion. However, contrary to the IG conclusion,

my Commander did in fact recommend promotion on my EPR even though I couldn't be promoted due to the overgrade status.

AR154.

The AFBCMR subsequently requested an advisory opinion from the National Guard Bureau Force Management Branch (NGB/A1PP) (*see* AR279), which the AFBCMR forwarded to Ms. Conti for comment on or about July 23, 2019 (AR280).[3] On or about August 26, 2019, Ms. Conti submitted a rebuttal to the Advisory Opinion. AR281–96.

### 4.  First AFBCMR Decision

The AFBCMR panel convened on November 21, 2019 and voted to deny Ms. Conti's application. AR152–53. The Board's basis for denial is as follows:

> The Board concurs with the rationale and recommendation of NGB/AlPP and finds a preponderance of the evidence does not substantiate the applicant's contentions. Documentation revealed the applicant was unable to meet the retraining approval requirements and concurred with over grade conditions on two separate occasions over a 4-year period. Additionally, the Board notes the 149 FW/IG's dismissal of the applicant's request to redress her over-grade status and promotion to E-7, finding no credible evidence of violation of law instruction, regulation, or policy. Therefore, in the absence of evidence to the contrary, the Board recommends against correcting the applicant's records.

AR152.

### 5.  Litigation and Remand

On December 2, 2020, Ms. Conti filed a complaint in the U.S. Court of Federal Claims. ECF No. 1. On August 23, 2021, after discovering that the NGB/A1PP advisory opinion upon which the AFBCMR had relied had violated AFI 36-2603, para. 4.2.2.4, the Defendant filed an

---

[3] AFI 36-2603, *Air Force Board for the Correction of Military Records (AFBCMR)*, para. 4.2.2.4 (Sept. 18, 2017) provides that "If the matter before the Board pertains to . . . promotion issues . . . the opinion must be signed by at least a colonel (O-6) or GS-15 within the organization providing the advisory." The NGB Advisory Opinion was signed (and evidently drafted) by a master sergeant (E-7). AR279.

unopposed motion for a voluntary remand and for a stay of court proceedings pending remand

results. ECF No. 20. On August 31, 2021, the case was remanded via an order instructing the

AFBCMR to, among other things, evaluate specific regulatory violations at the heart of this case.

AR074–75. AR04–05.

Ms. Conti submitted supplemental material to the AFBCMR that included a

memorandum (AR77–102) and additional evidence (AR103–45). She requested that the

AFBCMR correct her records to reflect (a) promotion to E-7 with an effective date of March 3,

2014; and (b) an adjusted retired grade of E-7 effective on the date of her retirement. AR94–95.

Also requested removal or correction of all records necessary to effectuate the granted relief and

any other corrections necessary to provide "full and effective relief" in accordance with AFI 36-

2603, para. 4.10.2. *Id.* She further requests all pay, allowances, compensation, emoluments, or

other pecuniary benefits to which she is entitled because of any records corrections. AR95. In

addition, she requested, to the extent possible, that any advisory opinion solicited from an office

of primary responsibility (OPR) be sought from an office with access to documents and data

relevant to the facts of the case. *Id.*

The AFBCMR subsequently sought an advisory opinion from Colonel Lisa Kirk, Chief

of the National Guard Bureau Force Management Division (NGB/A1PP), which was sent to Ms.

Conti on January 31, 2022. AR300–307, AR308. Explaining whether the 149th complied with

ANGI 36-2101, paras. 4.2 and 4.1, Col Kirk stated "Evidence shows that TSgt Conti was kept in

an overgrade status from 01 January 2012 to 10 June 2016 which goes against policy. In order to

keep a member on overgrade status beyond 24 months requires NGB/A1PP approval which was

not requested or received." AR300.

Addressing AFI 36-2502, para 10.1.11.2, Col Kirk concluded that there was "NO

evidence that TSgt Conti's commander had a force management plan in place to allow for her progressive development and upward mobility." AR301. Regarding the question as to whether the 149th complied with ANGI 36-2101, para 2.18.2.2, she opined, "There is NO evidence that the unit commander took any action to rectify TSgt Conti's overgrade condition." *Id.* (emphasis in original). As to the unit's compliance with DoDD 1304.20 para 4.2.2, Col Kirk stated, "[t]here is NO evidence that TSgt Coni was provided career progression. Keeping her on an overgrade status for over 48 months prevented her from being eligible for a promotion opportunity." *Id.* (emphasis in original)

Despite concluding that Ms. Conti's unit violated numerous regulations and she was the victim of an injustice, Col Kirk recommended denial. She opined:

> Based on the documentation provided by the applicant and analysis of the facts, there **IS** evidence of an injustice. The Inspector General did not address the applicant's complaint of being kept in an overgrade status for over 48 months, or the acts of harassment and reprisal she endured on account of her pursuant for redress of her concerns. Although TSgt Conti should not have been in an overgrade status for an extended period of time, there is no guarantee the TAG would have promoted the member had she been in a valid position.

AR301 (emphasis in original).

In accordance with AFI 36-2603, para. 4.2.2.3, the NGB/A1PP advisory opinion included instructions on specific corrective action to be taken if the Board recommended relief be granted. AR302. She stated

> Should the board elect to grant the request, [the Air Reserve Personnel Center (ARPC)] should correct the applicant's systems of record to reflect MSgt with an effective date of rank of 01 Dec 2015 and NGB Form 22 and or/DD Form 214 if applicable. Members Retirement order (Special Order Number ACD-02623) would need to be corrected by [the Air Force Personnel Center (AFPC)] to reflect the correct Grade/Rank of E-7/MSgt.

AR302.[4]

On February 1, 2022, Ms. Conti responded to the NGB advisory opinion. AR317–19. In her response, she acknowledged that the opinion had confirmed that Ms. Conti's command committed violations of all the regulatory provisions identified in the remand order and concurred that she was the victim of an error and injustice. *Id.* Her response further asserted, in part, that the lack of promotion consideration by the TAG was itself an error and injustice itself because, due to procedural errors related to her command's obligation to resolve her overgrade status and ensure her career progression, she did not meet promotion-eligibility requirements that she otherwise would have met had these procedural errors not occurred. AR319.

### 6. Second AFBCMR Decision

The AFBCMR[5] convened on February 28, 2022 and an "Addendum to Record of Proceedings" was completed on March 11, 2022. AR4–12. The Record of Proceedings generally set forth some facts of the case and its procedural posture, including the specific remand items directed by the Court, each of which it addressed in a "Findings and Conclusions" section. AR10.

The Board found Ms. Conti's unit "did not comply with ANGI 36-2101, paragraphs 4.2 and 4.2.1 when they established the applicant's overgrade condition effective 1 Jan 12,[6] and

---

[4] In contrast with the earlier advisory opinion sought by the AFBCMR during Ms. Conti's first application (AR284), Col Kirk did not argue that Ms. Conti lacked a promotion recommendation from her commander. Indeed, her EPR, which was issued March 3, 2017, contained a promotion recommendation (AR169–70).

[5] In accordance with the remand order, the AFBCMR empaneled three members who did not decide the first matter. *Cf.* AR12 *with* AR17–18. However, panel member Phyllis Joyner was the acting executive director for the first AFBCMR decision. AR19.

[6] Lt Col Miller—the officer who dismissed Ms. Conti's IG complaint in 2018 (AR33)—was Ms. Conti's commander when she was initially placed in overgrade status in 2012 and remained her

again on 12 Jul 15, and allowed her to remain in the overgrade condition beyond 24 months." AR09. The Board also found that "the unit the unit did not comply with ANGI 36- 2101, paragraph 2.18.11 . . . by failing to reassign the applicant to the first available position commensurate with her grade for which she was qualified." AR10.

The Board acknowledged that ANGI 36-2502, paragraph 1.1.4. and its successor regulation AFI 36-2502, paragraphs 10.1.11.2 and 10.1.11.3, required Ms. Conti's commander "to ensure members meet all promotion criteria prior to promotion and to ensure a viable personnel force management plan is in place to provide for the progressive development and upward mobility of the assigned personnel." AR11. The Board then stated, "The applicant's contention that she was denied promotion due to her overgrade condition supports the unit's compliance with the requirement for a member to meet all promotion criteria prior to promotion; however, there was no evidence the unit complied with the requirement to have a force management plan in place." *Id.*

The Board confirmed that "ANGI 36-2101, paragraph 2.18.2.2. [sic] requires a copy of the NGB Form 36-11, signed by the member and commander, to be provided to the Force Support Squadron (FSS)" and that "[t]he commander is further required to keep the member informed of their overgrade status and continually work to rectify the condition." *Id.* The Board found that there was no evidence that the NGB Forms 36-11, which were signed by the Ms. Conti and her commander, were provided to the FSS or "that any effort was made to resolve the applicant's overgrade condition." *Id.*

---

commander through at least December 24, 2013 (AR113). Thus, he bore much of the commanders' regulatory responsibilities the AFBCMR found had been violated. *See* AR10 (unit violated ANGI 36-2101, paras. 4.2, 4.2.1); AR11 (unit violated ANGI 36-2502, para. 1.1.4 and AFI 36-2502, para. 10.1.11.3).

The Board further found that there is no evidence the unit complied with the portion of ANGI 36-2101, paragraph 2.18.4, which required the FSS to produce and provide a quarterly listing to the commander identifying those members currently assigned as overgrade whose condition would expire in the next 12 months. It also found that "[t]here was . . . no evidence the applicant's commander used such a listing for force management decisions regarding overgrade assignments/reassignments, or that a listing was returned to the FSS with a viable plan for resolution of each overgrade condition." The Board next concluded that Ms. Conti's unit violated DoDD 1304.20, paragraph 4.2.2 by not resolving her overgrade condition but reasoned that the unit's failure to promote her complied with AFPD 36-25, paragraph 3.1 because she was in an overgrade status. *Id.* ("her qualifications were moot as her overgrade condition rendered her ineligible for promotion consideration.")

Importantly, in consideration of all remand items, the Board reasserted that the 149th violated ANGI 36-2101 and DoDD 1304.20 and the "error was exacerbated by the unit's partial compliance with the requirements of ANGI 36-2502, and its successor AFI 36-2502, whereby the applicant was appropriately not promoted due to ineligibility." *Id.* The Board then acknowledge that Ms. Conti's promotion "ineligibility was to a certain extent, the result of error or oversight on the part of the unit, creating an injustice upon the applicant by impairing her ability to advance in her career." *Id.*

Despite finding procedural errors and injustice, the Board opined that

[T]he unit's responsibility to correct the applicant's overgrade condition by reassigning her to a position commensurate with her grade and for which she was qualified would have been met by placing her in a technical sergeant (E-6) billet, as acknowledged by counsel's statement that placement in a master sergeant (E-7) authorized position was possible, if not mandatory. This would have corrected the overgrade condition, but the applicant would still not have been eligible for promotion to the rank and grade of master sergeant (E-7), in accordance with AFI 36-2502, which requires the applicant to be assigned to a valid UMD position with

23

an authorized grade greater than or equal to the grade for which she is being recommended. Therefore, the Board concurs with the advisory opinion and rationale of NGB/A1PP and finds a preponderance of the evidence does not substantiate the applicant's position with regard to her promotion to the rank and grade of master sergeant (E-7), finding her contention that correction of her overgrade condition would have resulted in her promotion to be wholly speculative.

AR11–12; AR13.

Ultimately, however, despite confirming that Ms. Conti had suffered an error and injustice, the AFBCMR based its denial recommendation on their opinion that the Board could not provide the relief Ms. Conti had requested. AR12. The Board claimed that "per 10 USC 10112, the Air National Guard, while in service to the United States, is a component of the Air Force. When not in service to the United States, ANG units are in service of their respective state (32 USC 101(6)), placing the applicant's request for relief outside this Board's authority." *Id; see also* AR13.

### III. ARGUMENT

**A.  The AFBCMR's 2022 decision is arbitrary, capricious, unsupported by substantial evidence, and contrary to law.**

> **1. The AFBCMR erroneously determined that it did not have authority to grant the records-correction relief Ms. Conti requested.**

The AFBCMR appears to reason that Ms. Conti's records-correction relief was "outside this Board's authority" because they claim her unit was not in service to the United States. AR12 (citing 10 U.S.C. § 10112; 32 U.S.C. § 101(6)). The Board suggests that Ms. Conti's requested relief is wholly a state issue, recommending that she "seek relief from the state agency holding the appropriate authority." AR12. The Board's reasoning is contrary to law because the Air National Guard clearly remains a federal entity even when not in active federal service. The Air National Guard of the United States is comprised of "federally recognized" state units which are "organized, armed, and equipped whole or partly at Federal expense." 32 U.S.C. §§ 101(6)(C)–

(D); 10 U.S.C. §§ 10112–13. The Air National Guard of the United States is a reserve component of the Air Force. 10 U.S.C. § 10101(5). When a person enlists in the Air National Guard, they "shall be concurrently enlisted . . . as a Reserve of the Air Force for service in the Air National Guard of the United States" in accordance with regulations prescribed by the Secretary of the Air Force. 10 U.S.C. § 12107 (b)(2). Thus, Ms. Conti served as a member of the Air Force Reserve–a federal status to which federal records attach. Indeed, her enlistment contracts specified enlistment into the reserve component of the Air Force (AR446, AR449), her enlistment orders reflect enlistment as a "Reserve of the AF" (AR452), and her promotion to E-6 states she as promoted as an Air Force reservist (AR472). Her separation orders and DD Form 214 reflect that she was relieved from active duty by order of the Secretary of the Air Force under Title 10 provisions with a reserve retired grade of TSgt (E-6). AR473; AR474; AR431. Thus, any notion that this was entirely a state issue is arbitrary, capricious, and contrary to law— especially given the reach of the AFBCMR's remedial records-correction authority under 10 U.S.C. § 1552.

Because of Ms. Conti's status as a reserve member, the AFBCMR's authority clearly extends to the records that would be corrected to remedy the error or injustice. 10 U.S.C. § 1552 broadly defines "military record" to include:

> [A] document or other record that pertains to (1) an individual member or former member of the armed forces, or (2) at the discretion of the Secretary of the military department concerned, any other military matter affecting a member or former member of the armed forces, an employee or former employee of that military department, or a dependent or current or former spouse of any such person.

*Id.* § 1552(j).

Here, all the records the AFBCMR would correct to effectuate Ms. Conti's requested relief emanate from the Department of the Air Force. They are unquestionably federal records.

The NGB clearly understood this when Col Kirk stated that, should the AFBCMR grant relief, ARPC should correct: its system of records to reflect MSgt (E-7) with a new effective date or rank; her DD 214 and/or NGB Form 22 (presumably to reflect a new rank, date of rank, and retired grade); and the Secretary of the Air Force's Special Order Number ACD-02623 to reflect the corrected rank.[7] *See* AR302.

Importantly, the AFBCMR's position is further belied by the fact that it has granted relief on applications brought by current and former ANG members on numerous occasions in multifarious circumstances. For instance, the AFBCMR has corrected "pertinent military records [of the Department of the Air Force]" to grant constructive service credit and retroactively promote an ANG officer from second lieutenant to first lieutenant. AFBCMR Dkt. No. BC201003680 (Apr. 27, 2011). It has corrected the promotion dates in ANG members' Air Force records which, among other things, implicates back pay and adjustments to a member's time-in-grade that, in turn, affect a key factor in a member's ANG promotion eligibility. *See, e.g.,* AFBCMR Dkt. No. BC201401220 (Mar. 4, 2015) (correcting enlisted ANG member's DOR despite NGB/A1PP's recommendation for denial due to lack of promotion recommendation on date to which adjustment was requested);[8] AFBCMR Dkt. No. BC201501120 (Mar. 11, 2016) (adjusting two dates of rank and directing back pay compensation); AFBCMR Dkt. No. BC201500106 (Mar. 17, 2016); AFBCMR Dkt. No. BC201305647 (Apr. 16, 2015); AFBCMR Dkt. No. BC201300293 (Aug. 18, 2014). It has changed records to reflect enlistment into the

---

[7] Department of the Air Force Special Order Number ACD-02623 (May 11, 2008) amended Special Order Number ACD-02561 (May 8, 2018). AR472; AR474.

[8] All AFBCMR decisions cited in this brief are contained in the Appendix at App. 467–91 and were procured from the Lexis/Nexis database. Public decisions from the boards for correction of military records for all branches are also available in a public reading room at: https://boards.law.af.mil.

ANG in a higher pay grade. AFBCMR Dkt. No. BC201305714 (Apr. 16, 2015) (noting that the purpose of correcting pay grade was to entitle ANG member to backpay); AFBCMR Dkt. No. BC201404711 (Feb. 19, 2016). It routinely corrects NGB Forms 22. AFBCMR Dkt. No. BC201500084 (Apr. 26, 2016); AFBCMR Dkt. No. BC201500042 (Feb. 24, 2016); AFBCMR Dkt. No. BC201402634 (Nov. 20, 2015); AFBCMR Dkt. No. BC200700367 (Dec. 4, 2007); AFBCMR Dkt. No. BC199900374 (July 1, 1999). Conspicuously absent from these decisions is any mention of the records-correction authority limitations by which the AFBCMR now claims to be constrained. Notably, the AFBCMR's governing regulation states that members of the ANG are eligible to apply to the Board. AFI 36-2603, para. 3.1.1.

Thus, not only is the Board's assertion incorrect as a matter of law and an abdication of its statutory records-correction mandate, but it is also wholly undermined by years of decisions where the AFBCMR has demonstrated it understands its records-correction authority to allow for relief to ANG applicants. The Board's rationale on this point is arbitrary, capricious, and contrary to law.

### 2. The AFBCMR arbitrarily and capriciously failed to find that Ms. Conti's command's procedural violations precluded her promotion to E-7.

"The military no less than any other organ of the government is bound by statute, and even when granted unfettered discretion by Congress the military must abide by its own procedural regulations should it choose to promulgate them." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When a party asserts that the military violated a specific procedure mandated by statute or regulation, "the test[s] or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations." *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995). "[O]nce a service-member has had recourse to a corrections board, the focus is both on the procedural infirmity alleged before the board, as

well as on a review of the board's decision under the arbitrary and capricious standard. *Miller v. United States*, 119 Fed. Cl. 717, 731 (2015).

Here, the AFBCMR determined that Ms. Conti's unit committed numerous procedural errors that had a direct bearing on her promotion eligibility. Chief among them is that the unit violated regulations when it placed her in overgrade status twice for periods longer than 24 months and then failed to even monitor or take mandatory action to reassign her into a position commensurate with her grade and for which she was qualified. *See* AR 10–11. These procedural violations are now beyond dispute. Yet, despite conceding them, the AFBCMR argued that Ms. Conti is not entitled to promotion-related relief for two reasons, both of which are arbitrary and capricious, contrary to law and unsupported by the evidence.

First, the AFBCMR argued that resolving Ms. Conti's overgrade status only would have required that she be placed in an E-6 position. AR11–12; *see* AFI 36-2502, para. 10.1.15.2. However, the AFBCMR's conclusion fails to account for the regulatory requirement that she be provided "visible, relatively stable career progression opportunities." *See* DoDD 1304.20, para. 4.2.2; *see also* ANGI 36-2101, at 38 (purpose of required force management plan—that the 149th did not have (AR11)— is "provide[] the optimum career progression and promotion opportunity while keeping personnel in excess and overgrade status to a minimum."). Thus, placing her in an E-6 position might have satisfied AFI 36-2502, para. 10.1.15.2, but failing to place her in an E-7 authorized position would have contravened the obligation to provide career progression—an obligation the AFBCMR found her unit violated. The AFBCMR concedes that the 149th violated DoD 1304.20 and ANGI 36-2101 and that "this error was exacerbated by the unit's partial compliance with ANGI-2502, and . . . AFI 36-2502." Importantly, the Board then found that these violations "created an injustice upon the applicant by impairing her ability to

advance her career" and that they were "to a certain extent, the result of error or oversight on the part of the unit." AR11. In the context of this case, not being in placed in an E-7 authorized position is a central reason for Ms. Conti's promotion ineligibility and, thus, the AFBCMR's concession establishes a nexus between the myriad regulatory violations and her failure to promote.

Notably, the AFBCMR does not contest Ms. Conti's assertion that there was at least one viable E-7 slot that would not only have resolved her overgrade but also would have satisfied the regulatory requirement for stable career progression. In her IG complaint, Ms. Conti stated that she had discovered in 2017 that there were positions for which she was qualified and one of the positions had an E-7 authorized grade that Ms. Conti explained was filled by an out-of-state member who needed to be retrained into the position. AR104. She argued that Ms. Conti argued that she "should have been reassigned to this position when it became available before recruitment of from out-of-state." *Id.* Although he dismissed the complaint,[9] Lt Col Miller

---

[9] Lt Col Miller's dismissal of Ms. Conti's complaint on grounds that she had not brought forth credible evidence of a violation of law, instruction, regulation, or policy was plainly erroneous given the clear evidence of procedural violations Ms. Conti raised at the time. *See* AR33; *see also* AFI 90-301, para. 3.26 and Table 3.12, Rule 1. It is also problematic because Lt Col Miller was Ms. Conti's commander when she was initially placed in overgrade status in 2012 and remained her commander through at least December 24, 2013 (*see* AR113). Thus, he was responsible for many of the commanders' regulatory responsibilities the AFBCMR found had been violated. *See, e.g.,* AR10 (unit violated ANGI 36-2101, paras. 4.2; 4.2.1); AR11 (unit violated ANGI 36-2101, paras. 2.18.2.2 and 2.18.4 which required commander to take specific action to resolve member's overgrade status). As argued in Ms. Conti's remand materials, Lt Col Miller's actions as IG deprived Ms. Conti of a fair investigatory process and encumbered her ability to not only to have this matter resolved at a lower administrative level but to acquire additional evidence to further substantiate her already compelling case to the AFBCMR. AR102. Aside from mentioning the argument in its description of Ms. Conti's response to Col Kirk's advisory opinion (AR09), the AFBCMR itself did not mention the issue in its analysis (AR10–12).

essentially conceded Ms. Conti's point that she "could have possibly been placed into a different position to possibly satisfy the AFSC requirement for promotion." AR167.

Second, the Board appears to adopt the NGB Advisory Opinion's assertion that the decision to promote Ms. Conti rested with the TAG that there was no guarantee the TAG would have promoted her had she been in a valid position. AR301; AR12. However, the lack of TAG consideration was a consequence of her command's numerous procedural errors related to their to failure resolve her overgrade status and ensure optimum career progression. She did not meet promotion-eligibility requirements she otherwise would have met because she was erroneously and unjustly kept from this particular stage of the promotion process. Indeed, the lack of TAG approval is the very error Ms. Conti asked the AFBCMR to redress so the Board's reliance (via the Advisory Opinion) on the lack of TAG approval as the reason for its denial constitutes irrational decisionmaking. *See Haselwander*, 774 F.3d at 992 (finding BCMR decision arbitrary and capricious where it "misapprehend[ed] its powers and duties as a record correction body" by denying relief for the very reason the applicant sought records correction in the first place). The lack of TAG approval is an injustice itself and a result of the unit's procedural errors.

In sum, there is a direct nexus between the unit's procedural violations, Ms. Conti's ineligibility for promotion and her failure to promote to E-7. The AFBCMR's findings otherwise simply do not constitute reasoned decisionmaking.

## C. The AFBCMR failed to correct an error clearly presented to it.

"[W]hen a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its [primary] mandate" and "such a violation . . . is arbitrary and capricious." *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (quoting *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975)). *See also Skaradowski v. United States*, 471

F.2d 627, 628 (Ct. Cl. 1973). In cases of clear injustice, the board has a moral duty to "take steps to grant thorough and fitting relief.'" *Id.* (quoting *Caddington v. United States*, 178 F. Supp. 604, 607 (Ct. Cl. 1959)). When a board does not act to redress clear injustice, its decision is arbitrary and capricious and must be overturned upon review by this court. *Yee*, 512 F.2d at 1387 (citing *Skaradowski*, 471 F.2d 627 and *Duhon v. United States*, 461 F.2d 1278, 198 Ct. Cl. 564 (Ct. Cl. 1972)). It is a regulatory requirement that AFBCMR determine (1) "whether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record" then (2) "if so, what corrections are needed to provide full and effective relief." 32 C.F.R. § 865.4(l)(4).

The AFBCMR's decision here reveals just such an injustice. Indeed, the Board found that Ms. Conti was the victim of an error or injustice, finding that numerous procedural violations contributed by "impairing her ability to advance her career" and that they were "to a certain extent, the result of error or oversight on the part of the unit." AR11. As argued above, the AFBCMR's claim that they have no records-correction authority in this case is wrong and, without that basis, their decision is reduced to a failure to act to redress a clear injustice. The Court, therefore, has compelling reason to overturn the Board's decision.

## IV. CONCLUSION

Based on the foregoing, Ms. Conti respectfully requests that the Court grant Plaintiff's Motion for Judgment on the Administrative Record.

Dated:  August 1, 2022                                    Respectfully submitted,

                                                                          /s/ *Brian D. Schenk*
                                                                          Brian D. Schenk
                                                                          Midwest Military & Veterans Law, PLLC
                                                                          400 S. 4th Street, Suite 401-510
                                                                          Minneapolis, Minnesota  55415
                                                                          Telephone: (202) 557-6570 (c)

brian@militaryandveteranslaw.com
*Counsel for Plaintiff*