No. 20-1732C
(Judge Dietz)

---

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

LESLIE J. CONTI,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

## DEFENDANT'S MOTION TO DISMISS, MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, AND RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

BRIAN M. BOYNTON
Principle Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

STEVEN J. GILLINGHAM
Assistant Director

Of Counsel:

DANIEL A. HOFFMAN
Trial Attorney
Commercial Litigation Branch

SCOTT MEDLYN, Maj, USAF
Personnel and Information Law
AF/JAC Military Personnel Law and Litigation
1500 West Perimeter Rd., Suite 1370
Joint Base Andrews-
Naval Air Facility, MD 20762

Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 253-0547

August 31, 2022

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

QUESTIONS PRESENTED.................................................................................................. 1

STATEMENT OF THE CASE.............................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 3

    I.           Background ................................................................................................... 3

        A.      The ANG Regulates Enlistments, Assignments, and Promotions with Separate Instructions................................................................................................................. 3

        B.      The Air Force Specialty Code System.................................................................. 4

        C.      Medical Evaluation of Service Members For Continued Military Service And TSgt (RET) Conti's Involvement In The Disability Evaluation System (DES)................ 4

        D.      TSgt (RET) Conti's Early Air National Guard Career ........................................... 7

    II.        The Significant Barriers To TSgt (RET) Conti's Promotion.................................... 8

        A.      From June 11, 2010, Until November 21, 2013, TSgt (RET) Conti Was Promotion Ineligible Due To Her Incomplete USAF NCO Course .................................................... 8

        B.      From January 2012 Until Her May 2018 Retirement, TSgt (RET) Conti Was Promotion Ineligible Due To Both Her Overgrade Status And Lack Of Assignment To A UMD Position Authorized For Grade E-7 Or Greater ....................................................... 8

        C.      Beginning in November 2012, TSgt (RET) Conti Was Participating In The MEB Or IDES Process Approximately 42 Of 66 Months Prior To Her May 2018 Retirement; During Those 42 Months TSgt (RET) Conti Was Promotion Ineligible; During The Remaining 24 Months TSgt (RET) Conti's Commanders Had Additional Discretion Whether To Promote Her ................................................................................................. 11

        D.      During The 24 Months TSgt (RET) Conti Was Not Involved In The DES, She Took No Responsibility For Finding An E-6 Position To Resolve Her Overgrade Condition Nor Did She Locate A E-7 Or Greater UMD Position To Make Herself Promotion Eligible .......................................................................................................... 12

        E.      As Of October 1, 2014, TSgt (RET) Conti Was Also Promotion Ineligible

Because Of Her Retraining Status And Her Choice Not To Attend Technical School .... 14

F.     From January 2016 Until Her May 2018 Retirement, TSgt (RET) Conti Was Promotion Ineligible Due To Three Or More of the Following: Her Overgrade Status, Lack of Assignment To A UMD Position Authorized For Grade E-7 Or Greater, Her Retraining Status / Failure to Attend Technical School, And Her DES Status ............... 16

G.     Sometime In 2016 TSgt (RET) Conti Became Promotion Ineligible Because Of High Year Tenure ....................................................................................................... 16

III.     Despite TSgt (RET) Conti's Lack Of Effort To Resolve Her Overgrade Status, Her Commanders Made Significant Efforts To Retain Her In The ANG ............................. 17

IV.     After TSgt (RET) Conti's PEB Found Her Unfit For Duty In March 2017, She Sent Emails Months Later To Her Group Commander and Wing Commander Pleading She Should Have Been Promoted ........................................................................................ 20

V.     On March 1, 2018, TSgt (RET) Conti Filed A Complaint With The IG ............... 21

VI.     Retirement .......................................................................................................... 22

VII.     First AFBCMR Review ...................................................................................... 22

VIII.     Litigation And Remand By The Court ............................................................... 24

IX.     Second AFBMCR Review .................................................................................. 24

ARGUMENT .................................................................................................................. 27

I.     Motion to Dismiss ................................................................................................ 27

A.     The Court Must Dismiss This Case Because TSgt (RET) Conti's Foundational Claim – The 149th Failed to Reassign Her – Lacks Both A Money-Mandating Statute And Justiciability .......................................................................................................... 28

B.     TSgt (RET) Conti's Reassignment Allegations Are Also Nonjusticiable Because the Reassignment Instruction Does Not Provide A Workable Test Or Standard By Which To Judge The 149th's Conduct ........................................................ 32

C.     The Court Need Not Address The Promotion Process Because TSgt (RET) Conti Was Not Within It; Even If She Were, TSgt (RET) Conti's Allegations Are

Nonjusticiable Because They Do Not Rise To The "Clear-Cut" Exception Required For Promotion Justiciability ........................................................................................... 34

II.       The AFBCMR's Decision Was Not Arbitrary, Capricious, Or Unsupported By Substantial Evidence ................................................................................................... 38

        A.       The AFBCMR Correctly Concluded That Despite The Evidence of Error And Injustice, TSgt (RET) Conti's Remedy – Retroactive Promotion To MSgt (E-7) – Was "Wholly Speculative" ....................................................................................................... 39

        B.       The AFBCMR Correctly Concluded That The Authority To Promote A Drill Status Guardsman To The Rank And Grade Of E-7 Lies With The TAG ....................... 43

# TABLE OF AUTHORITIES

## Cases

*A&D Fire Prot., Inc. v. United States*,
    72 Fed. Cl. 126 (2006) .......................................................................................... 38

*Adkins v. United States*,
    68 F.3d 1317 (Fed. Cir. 1995)............................................................................... 32

*Anderson v. United States*,
    111 Fed. Cl. 572 (2013) ........................................................................................ 31

*Baker v. Carr*,
    369 U.S. 186 (1961)............................................................................................... 31

*Barnes v. United States*,
    473 F.3d 1356 (Fed. Cir. 2007)............................................................................. 32

*Brenner v. United States*,
    202 Ct.Cl. 678 (1973) ........................................................................................... 35

*Dysart v. United States*,
    369 F.3d 1303 (Fed. Cir. 2004).................................................................. 35, 36, 37

*Fisher v. United States*,
    402 F.3d 1167 (Fed. Cir. 2005)............................................................................. 29

*Gilligan v. Morgan*,
    413 U.S. 1 (1973).................................................................................................. 31

*Knightly v. United States*,
    227 Ct. Cl. 767 (1981) .......................................................................................... 30

*Murphy v. United States*,
    993 F.2d 871 (Fed. Cir. 1993)................................................................... 32, 33, 34

*Orloff v. Willoughby*,
    345 U.S. 83 (1953)................................................................................................ 31

*Pittman v. United States*,
    135 Fed. Cl. 507 (2017) ........................................................................................ 31

*Robbins v. United States*,
    29 Fed. Cl. 717 (1993) .......................................................................................... 38

*Rostker v. Goldberg*,
   453 U.S. 57 (1981) ................................................................................. 31

*Sargisson v. United States*,
   913 F.2d 918 (Fed. Cir. 1990) ......................................................... 30, 33

*Singleton v. M.S.P.B.*,
   244 F.3d 1331 (Fed. Cir. 2001) ................................................. 39, 42, 43

*Smith v. Sec'y of Army*,
   384 F.3d 1288 (Fed. Cir. 2004) ......................................................... 29, 30

*Spellissy v. United States*,
   103 Fed. Cl. 274 (2012) ...................................................................... 38

*Voge v. United States*,
   844 F.2d 776 (Fed. Cir. 1988) ......................................................... 29, 31

*Wilson v. Walker*,
   777 F.2d 427 (8th Cir.1985) ................................................................. 31

*Wronke v. Marsh*,
   787 F.2d 1569 (Fed. Cir. 1986) ............................................................ 38

*Wyatt v. United States*,
   23 Cl. Ct. 314 (Cl. Ct. 1991) ............................................................... 38

## **Statutes**

10 U.S.C. § 1201 .................................................................................... 29

10 U.S.C. § 1401 .................................................................................... 29

10 U.S.C. § 1552 .................................................................................... 43

10 U.S.C. § 1552(a)(1) ...................................................................... 43, 44

10 U.S.C. § 10501 ............................................................................... 8, 39

10 U.S.C § 1414 ..................................................................................... 29

37 U.S.C. § 204 .......................................................................... 28, 29, 30

The United States respectfully requests that this Court dismiss the complaint under Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC) or, in the alternative, grant judgment on the administrative record in favor of the United States pursuant to RCFC 52.1.  In support of these motions, we rely on TSgt (RET) Conti's amended complaint, the administrative record (AR) filed on July 4, 2022, the following brief and response, the attached exhibits, and a future reply brief.

## QUESTIONS PRESENTED

1)      Does Air National Guard Instruction (ANGI) 36-2101 – an instruction addressing *job assignments* – provide an inherent test or standard for this Court to measure the military's conduct regarding *promotions* in the Air National Guard (ANG), or does TSgt (RET) Conti ask this Court to decide military affairs beyond its competence, applying the wrong test and standard?

2)      Was the March 11, 2022 decision of the Air Force Board for Correction of Military Records (AFBCMR) arbitrary, capricious, contrary to law, or unsupported by substantial evidence in declining to grant TSgt (RET) Conti's increased retired pay with a retroactive promotion?

3)      Was the ABCMR's March 11, 2022 decision arbitrary, capricious, contrary to law, or unsupported by substantial evidence in concluding that the authority to promote a drill status guardsman to the rank of MSgt (E-7) lies with the adjutant general (TAG) of the Texas Air National Guard (TXANG)?

## STATEMENT OF THE CASE

On October 13, 2018, TSgt (RET) Conti applied for relief to the AFBCMR, seeking a promotion to E-7, back pay, and appropriate disability retirement pay.  She maintained that had

the Air National Guard (ANG) 149th Civil Engineering Squadron (149th) reassigned her in accordance with ANGI 36-2101, governing position assignments in the ANG, she would have been both eligible and qualified to be promoted as of December 1, 2015, but that she was not promoted because the 149th wrongfully kept her in an overgrade status.

The AFBCMR denied her application because it could not conclude from the available documentation that the ANG did not follow proper procedures regarding her overgrade status. On December 2, 2020, TSgt (RET) Conti filed a complaint seeking the same relief.   ECF No. 1 (Compl.).   On August 23, 2021, after discovering that the National Guard Bureau Force Management Division (NGB/A1PP) advisory opinion upon which the AFBCMR had relied had violated AFI 36-2603, para. 4.2.2.4, the Government filed an unopposed motion for a voluntary remand.   The Court's subsequent remand order provided the AFBCMR six specific areas to consider and explain in accordance with the AFBCMR's procedures and powers.

Upon remand, TSgt (RET) Conti provided additional material to the AFBCMR and reiterated her argument that had the ANG 149th reassigned her in accordance with ANGI 36-2101, she would have been both eligible and qualified to be promoted.   She did, however, based largely on the new documents she provided, adjust her date of eligibility and qualification to March 3, 2014.

The AFBCMR again denied her application.   Consistent with the Court's remand order, the AFBCMR considered six areas and found that the 149th erred in not complying with procedures in Air National Guard Instruction (ANGI) 36-2101, ANGI 36-2502, and Department of Defense Directive (DoDD) 1304.20.   However, the AFBCMR concluded that "the unit's responsibility to correct the applicant's overgrade condition . . . would have been met by placing her in a technical sergeant (E-6) billet," explaining that TSgt (RET) Conti's argument that she

would have been promoted if not for her overgrade condition was "wholly speculative." The AFBCMR also stated that the authority to promote TSgt (RET) Conti rested with the TAG, not the AFBCMR. Accordingly, the AFBCMR recommended that TSgt (RET) Conti seek relief from the state agency holding appropriate authority.

The Court received the AFBCMR's decision on remand on March 31, 2022.

## STATEMENT OF FACTS

I. **Background**

A. **The ANG Regulates Enlistments, Assignments, and Promotions with Separate Instructions**

ANG Instruction (ANGI) 36-2002, "Enlistment and Reenlistment in the Air National Guard and as a Reserve of the Air Force" (Reenlistment Instruction), regulates enlistment and reenlistment in the ANG. Ex. A, Reenlistment Instruction.

Separate, but interrelated to the other instructions mentioned, the ANG regulates assignments in ANGI 36-2101, titled "Assignments Within the Air National Guard" (Assignment Instruction). Ex. B, Assignment Instruction.[1]

Finally, the ANG regulates promotions with a third separate but interrelated instruction, ANGI 36-2502, "Promotion of Airmen" (Promotion Instruction). Ex. C, Promotion Instruction. On December 14, 2014, the Promtion Instruction was superseded by AFI 36-2502, "Enlisted Airman Promotion/Demotion Programs" (Promotion Instruction II). Ex. D, Promotion

---

[1] An earlier version of the ANGI 36-2101 dated June 11, 2004 was in effect briefly at the beginning of TSgt (RET) Conti's overgrade, however, differences between the versions are not significant. The follow-on instruction is AFI 36-2110, Total Force Assignments, effective October 5, 2018, or after TSgt (RET) Conti retired. The AFBCMR cites to paragraph 17.1.2 in its decision. That paragraph is substantively identical to paragraph 2.18.2 of ANGI 36-2101, Assignments. Because ANGI 36-2101, Assignments, was in effect the entire time pertinent to this matter, we refer to it instead of the later AFI.

3

Instruction II.   For purposes of this case, there are no substantive differences between the cited portions of the different Promotion Instructions, but the Government endeavors to cite them as temporally appropriate.

### B.    The Air Force Specialty Code System

The ANG places service members in duty positions according to the Air Force Specialty Code (AFSC) system, whose codes comprise a combination of numbers and letters used to identify an AFS.   Ex. B, Assignment Instruction, p. 37.   Air Force Specialties (AFS) are groups of positions, or jobs, requiring common qualifications.   *Id.*   AFSCs consist of five-character digits, and members have a Primary AFSC, which identifies the AFSC in which the service member has the highest skill level and is most qualified.   A Duty AFSC identifies a duty position (or job) by a code found on the Unit Manning Document (UMD).   The UMD is "a document containing all authorized wartime and pre or post mobilization manpower positions and personnel assigned to those positions for an ANG Unit."   *Id.* at 39.   Each position on a UMD has an authorized grade, like E-7, associated with it.   *Id.* at 38.   That authorized grade is normally the highest grade that an ANG member holding the position can have.   *Id.*   An ANG "Unit" is a separate and distinct functional organization, and each ANG unit has separate UMD vacancies.   *Id.* at 39.

### C.    Medical Evaluation of Service Members For Continued Military Service And TSgt (RET) Conti's Involvement In The Disability Evaluation System (DES)

When a service member has a medical limitation that prohibits or limits them from completing his or her duties and/or routinely interferes with his or her ability to be deployment ready, and/or imposes unreasonable requirements on the military to maintain or protect the member, that member may be separated discharged or retired from military service.   Ex. J,

Tricare Operations and Patient Administration Functions (Tricare Operations), p. 173.   A service member's condition may also be considered a medical disability, and when evaluated as such the member will be referred to the rather complex Disability Evaluation System (DES). *See generally*, *id.* Section 4K, p. 173.

The Integrated Disability Evaluation Systems (IDES) integrates the DES system with the Veterans Administration (VA), thus giving service members a single-sourced disability rating that is accepted by both the DoD and the VA.   *Id.* at 174.   The system also expedites the provision of VA benefits after separation or retirement.   *Id.*   DoD carefully screens service members so that only those unlikely to "return to duty" are referred to the IDES system.   *Id.*

Evaluation for continued military service generally begins when health related "trigger events" may indicate a member has conditions that may prevent deployment.   *Id.* at 175.   In these circumstances, a "Review-in-Lieu-of" (RILO) Medical Evaluation Board (MEB) will be used as a pre-IDES screening process.   *Id.*   This preserves limited MEB and Physical Evaluation Board (PEB) resources.   Initial RILO packages are reviewed by the Medical Treatment Facility (MTF) Deployment Availability Working Group (DAWG).   *Id.*   Thus, while many injured service members may participate in the RILO process through the MTF DAWG, fewer will participate in MEBs and PEBs.   *See id.* at 175.

Most importantly, an airman is not eligible for promotion if he/she is pending a MEB/PEB/Worldwide Duty Determination and/or is not qualified for worldwide duty (temporary-4 profiles).   Ex. C, Promotion Instruction, p. 6; Ex. D, Promotion Instruction II, p.

104.   Further, commanders must "use discretion" when promoting members with physical

profiles.   Ex. C, Promotion Instruction, p. 8; Ex. D, Promotion Instruction II, p. 106.

The record TSgt (RET) Conti provided to the AFBCMR regarding her continued military

service evaluations is incomplete.   *See* AR105-06.   Therefore, it is difficult to exactly

determine when – between November 2012 and retirement – TSgt (RET) Conti was within the

MEB/PEB process, and when she was not.[2]   Setting aside precision, there is no dispute that

TSgt (RET) Conti was deeply involved in RILO/MEB/PEB/IDES evaluations for retirement for

large portions of time from November 2012 until her retirement.   *See* AR105-06; 110; 112-13;

118-21; 128-29.   Additionally, there is no dispute that from November 2012 until her retirement,

TSgt (RET) Conti was on numerous restrictive physical profiles, thereby giving her commanders

even more discretion concerning whether to promote her.   *See* Ex. C, Promotion Instruction, p.

8; Ex. D, Promotion Instruction II, p. 106.

However, it is true that pursuant to AFI 36-3212, for Physical Evaluation for Retention,

Retirement, and Separation, a member "may be retired in the grade *to which they had already*

*been selected and would have been promoted*, had it not been for the physical disability for

---

[2]   See section II.C, below, for a discussion of the approximate time TSgt (RET) Conti was
directly involved in the RILO/MEB/PEB/IDES processes.   TSgt (RET) Conti's filings with the
AFBCMR and this Court make no effort to clarify when exactly she was outside of
the RILO/MEB/PEB/IDES processes and therefore eligible for promotion, except to request a
March 3, 2014 "effective date of rank" because it would "be the earliest she would have been
eligible for promotion but for the 149's procedural violations."   AR319.   TSgt (RET) Conti's
filings with the AFBCMR and this Court never explain her ineligibility for promotion while
within the RILO/MEB/PEB/IDES processes, nor how she could be instantly promoted on March
3, 2014, given she did not have her commander's required recommendation, nor the approval of
The Adjutant General (TAG) of the State or Territory in question.   Ex. C, Promotion Instruction,
para. 1.4.2 and 2.5 ("Prior to promotion to any grade, the immediate commander must first
recommend the airman"), p. 5, 12; Ex. D, Promotion Instruction II, para. 10.1.1.2 and 10.1.2.1, p.
98.

which they were retired." *See* Ex. I, Physical Evaluation For Retention, Retirement, and Separation, para. 5.15.4, p. 51 (emphasis added). Thus, if at any time between November 2012 and her retirement, TSgt (RET) Conti had been selected for promotion, and thereafter entered the physical evaluation process, she would have been eligible for promotion. However, from November 2012 until her retirement in May 2018, TSgt (RET), Conti was not selected for promotion to Master Sergeant (E-7) – indeed, she was never even within the promotion process. Therefore, she could not be promoted under para. 5.15.4.

### D.    TSgt (RET) Conti's Early Air National Guard Career

TSgt (RET) Conti enlisted and began her military career in the Ohio ANG, on March 21, 1980, during which she served a total of four years on active duty, and over three years in inactive service. AR 45, 453. On July 15, 2004, TSgt (RET) Conti reenlisted in the ANG for a term of six years, as a drill-status guardsman. Am. Compl. ¶21; AR 241 (DD Form 4/1, Enlistment / Reenlistment Document). Drill-status guardsman participate in unit training assemblies, traditionally one weekend per month and a two-week annual training period. *See* Ex. B, Assignment Instruction, p. 37. In May 2005, TSgt (RET) Conti entered an Active Duty for Operation Support (ADOS) program wherein the Texas National Guard Joint Counterdrug Task Force (JCDTF) "provides professional support to multi-jurisdictional, federal, state, and local law enforcement agencies and community-based organizations in the state of Texas [and] [a]ll support is conducted in accordance with the Texas Adjutant General's vision, and the National Guard Bureau policies and Executive Orders." *See generally* AFI 36-2619, *Military Personnel Appropriate Manday Program* (July 18, 2014), Ex. E, p. 5; https://tmd.texas.gov/counterdrug. TSgt (RET) Conti remained in an ADOS position in support of the JCTDF for over 13 years. See Am. Compl. ¶ 22. From May 2005 until her May 2018

7

retirement, TSgt (RET) Conti maintained status as both a drill status guardsman (DSG), and an ADOS.   On June 11, 2010, TSgt (RET) Conti reenlisted for another six years, meaning her Expiration of Term of Service (ETS), or reenlistment, would expire on June 20, 2016.   AR 238.

**II.     The Significant Barriers To TSgt (RET) Conti's Promotion**

**A.     From June 11, 2010, Until November 21, 2013, TSgt (RET) Conti Was Promotion Ineligible Due To Her Incomplete USAF NCO Course**

As of her reenlistment on June 11, 2010, TSGt (RET) Conti was not eligible for promotion until November 22, 2013, when she completed the noncommissioned officer training course (USAF NCO course).   *See* Ex. C, Promotion Instruction, para. 2.2; *see also id.* Table 2.1, Rule 6; AR111.

**B.     From January 2012 Until Her May 2018 Retirement, TSgt (RET) Conti Was Promotion Ineligible Due To Both Her Overgrade Status And Lack Of Assignment To A UMD Position Authorized For Grade E-7 Or Greater**

As of September 2011, TSgt (RET) Conti was with the ANG 149th Civil Engineering Squadron (149th), and fully qualified for her Duty AFSC, knowledge operations, 3D071.   Soon thereafter, however, the National Guard Bureau (NGB)[3] downgraded her position on the UMD to E-5.[4]   AR109.   Thus, as of January 1, 2012, TSgt (RET) Conti was in an "overgrade" status, which the ANG defines as a "personnel assignment condition where an individual's grade is greater than the authorized grade indicated for the UMD position to which assigned."   Ex. B, Assignment Instruction, p. 39.   More plainly stated, the person is too high-ranking and over-

---

[3]   The NGB is a joint activity of the Department of Defense.   Its purpose is to serve as "the channel of communications on all matters pertaining to the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States between (1) the Department of the Army and Department of the Air Force, and (2) the several States."   *See* 10 U.S.C. § 10501.

[4]   The ANG designates a "[NGB] directed unit realignment, reorganization, or Unit Manpower Document change" as code "P".   Ex. B, Assignment Instruction, Table 4.2.

compensated for their job.   Because of these undesirable consequences, the ANG penalizes

overgrade members by making them: (1) ineligible for promotion; and (2) limited to 24 months

of retention or retainability, after which the ANG can remove them from service.   Ex. C,

Promotion Instruction, para. 2.2 and Table 2.1, Rule 6; Ex. B, Assignment Instruction, para.

4.2.1.

To warn members like TSgt (RET) Conti of the problems with being in an overgrade

status, the ANG requires the overgrade members and their unit commander to sign a NGB Form

36-11, Statement of Understanding for Excess/Over-grade Condition (Awareness of Overgrade

Form).   Ex. B, Assignment Instruction, para. 2.18.2 ("When a commander places a member in

an . . . overgrade condition, they are tasked with having the member sign NGB 36-11, *Statement

of Understanding*.)   On February 29, 2012, TSgt (RET) Conti and her 149th unit commander

signed an Awareness of Overgrade Form effective January 1, 2012 through December 31, 2014.

AR52.   It appears from this Awareness of Overgrade Form that TSgt (RET) Conti was the

beneficiary of a scrivener's error.   While ANG members in an overgrade status are limited to 24

months of retainability, TSgt (RET) Conti's Awareness of Overgrade Form gave her 36 months

retainability (January 2012 – December 2014).   *See* Ex. B, Assignment Instruction, para. 4.2.1.

Regardless, the Awareness of Overgrade Form required TSgt (RET) Conti to initial the

"Overgrade Condition" paragraph, stating:

> I understand that prior to my expiration date of the OVERGRADE
> condition, *my unit and I share the responsibility to locate and
> place me in a vacant position (with the AFSC for which I am
> currently qualified) which is commensurate with my grade.*   If a
> valid position is not available by my expiration date, I further
> understand that: 1) I must be reassigned for retraining purposes to
> another vacant position commensurate with my grade or, 2) My
> unit commander may request an extension to my expiration date,
> or 3) I will be administratively demoted to the authorized grade of

my current position or, 4) I will be involuntarily separated from the
Air National Guard.

AR52 (emphasis added).    The form made clear to TSgt (RET) Conti:

(1)    locating a vacant position is a *shared responsibility* of her
and the 149th; and

(2)    whatever the 149th's responsibility, that responsibility
applies only to locating a vacant position *commensurate with the
ANG member's grade*, that is, an E-6 position.

*Id.*

To be clear, an E-7 position, not an E-6 position, would be necessary for TSgt (RET)

Conti to promote.    Am. Comp. ¶ 15 (citing ANGI 36-2502, para. 2.1.2 and para. 10.1.15.2).

Thus, even under the Assignment Instruction as interpreted by TSgt (RET) Conti,[5] the 149th

would only have responsibility to locate her an E-6 position that would resolve her overgrade

status, *not an E-7 position* that would make her promotable under the Promotion Instruction.

*See* Ex. C, Promotion Instruction, para. 2.1.2; Ex. D, Promotion Instruction II, para. 10.1.15.2

("Must be assigned to a valid UMD position with an authorized grade greater than or equal to the

grade for which the member is being recommended").    TSgt (RET) Conti is aware of this

requirement and the Promotion Instruction it comes from.    Am. Comp. ¶ 15.    Her amended

complaint, the Air Force Inspector General's (IG) response to her complaint (discussed below),

and the AFBCMR all reference it, though she may be confused as to whether she met it.    *See*

Am. Compl. ¶¶ 35, 51, and 61 (¶ 61 incorrectly states she should have been qualified to promote

in accordance with AFI 36-2502).

From February 2012, when she signed the Awareness of Overgrade Form, until

_____

[5]    The Government disputes this interpretation.

November 2012 (when TSgt (RET) Conti first entered the DES process), there is no evidence in

the administrative record of TSgt (RET) Conti inquiring of the 149th about the status of a

position for reassignment commensurate to her grade, or the E-7 grade which would be required

for her promotion.   Nor is there any record of TSgt (RET) Conti executing her "responsibility to

locate and place me in a vacant position (with the AFSC for which I am currently qualified)

which is commensurate with my grade" pursuant to the Awareness of Overgrade Form.[6]

AR101; Ex. B, Assignment Instruction, para. 2.18.2.

> **C.    Beginning in November 2012, TSgt (RET) Conti Was Participating In The MEB Or IDES Process Approximately 42 Of 66 Months Prior To Her May 2018 Retirement; During Those 42 Months TSgt (RET) Conti Was Promotion Ineligible; During The Remaining 24 Months TSgt (RET) Conti's Commanders Had Additional Discretion Whether To Promote Her**

In addition to the above three ongoing barriers to TSgt (RET) Conti's promotion, a fourth

barrier arose in November 2012:   TSgt (RET) Conti's participation in the DES process.

AR105, 110.   The November 2012 duty limiting condition report stated that TSgt (RET) Conti

was "undergoing an MEB to determine medical fitness for continued worldwide duty and

retention."   AR110.   The release date for TSgt (RET) Conti's duty limiting condition report

---

[6]   TSgt (RET) Conti's filings with the AFBCMR and this Court state or suggest that "the evidence is clear that Ms. Conti was working to resolve the matter [her overgrade condition] at the earliest stages."   AR99 (fn.5); *see* Am. Compl. ¶¶ 47; 62; AR85, 87-88, 91, 98-99.   There is no record evidence to support these statements or suggestions except a scant three email thread from March to April 2013.   *See* AR135-36.   To be clear, at the time of the March to April 2013 email thread TSgt (RET) Conti was within the MEB process, not fit for duty, and had not completed the noncommissioned officer training course necessary for her to promote to E-7. AR105.   None of the alleged evidence of TSgt (RET) Conti's efforts provided on remand occurred from January 2012 to November 2012 (when TSgt (RET) Conti entered the DES process).

was June 13, 2013.[7]  *Id.*   As discussed in section I.D. above, during the MEB process TSgt

(RET) Conti was not eligible for promotion.   *See* AR106.

In fact, the only time between November 2012 and her May 2018 retirement when TSgt

(RET) Conti was not involved in the DES process was a two-year period between January 2014

to January 2016.[8]  *See* AR110, 112-13, 118-21, and 128-29.   TSgt (RET) Conti's motion for

judgment on the administrative record (MJAR) largely ignores her involvement in what appear

to be four separate DES processes between November 2012 and December 2016.   TSgt (RET)

Conti also ignores that during those DES processes, she was not promotable.   The fourth DES

process, which began in December 2016 and appears to have run largely uninterrupted, resulted

in her participating in the IDES process and separating from the ANG in May 2018.   *Id.*

> **D.    During The 24 Months TSgt (RET) Conti Was Not Involved In The DES, She
> Took No Responsibility For Finding An E-6 Position To Resolve Her
> Overgrade Condition Nor Did She Locate A E-7 Or Greater UMD Position
> To Make Herself Promotion Eligible**

On remand, TSgt (RET) Conti submitted additional materials to the AFBCMR as exhibits

to her Memorandum In Support of Supplemental Remand Materials (Memorandum in Support).

*See* AR78, AR105-07 ("Event Time-Line and Impact on Career and Promotion Eligibility" and

---

[7]   The duty limiting condition report (AF Form 469) provides release dates for the various
Assigned Availability Codes (AAC) applied to the member.   In this case TSgt (RET) Conti had
an AAC 37, which is MEB / PEB PCS (permanent change of station) deferment, which released
on June 13, 2013.  *See* AR 110.

[8]   To be precise, it appears there was an over two-week gap beginning May 19, 2015, in
which TSgt (RET) Conti was involved in an MEB.  *See* AR118.   But, essentially, January 2014
to January 2016 was a two-year (or 24 month) window where TSgt (RET) Conti appears – based
on the limited record – to have not been involved in the DES (though during that time she was on
multiple physical profiles).

list of "Supporting Attachments").[9]    Among these new materials are fourteen pages of TSgt

(RET) Conti's email communications with ANG and other authorities regarding her overgrade

situation.  *See* AR132-45.  Conspicuously, only three of the emails belong to an email chain

that occurred *before* TSgt (RET) Conti was found unfit for duty on March 27, 2017.  *See*

AR106; 135-36.  The other emails – discussions with her Group Commander in August 2017,

her Wing Commander in November 2017, and the IG in April 2018 – all occurred after she was

found unfit for duty in March 2017.  AR137-41; 142-45; 132-34.

Specifically, in March 2013, while within the MEB process, TSgt (RET) Conti sent an

email to 1st Lt. Johnson inquiring about her overgrade status and whether she would be "grand-

fathered," thereby eliminating the overgrade issue:

> Do you have information regarding my position down-grade being
> grandfathered for me?  Colonel Miller and I both noticed last UTA
> [unit training assembly] that my record is showing my excess status
> will expire at the end of this year [2013[10]] and we want to get the
> record corrected.  Sergeant Jagielski told me that when she told me
> I was being grand-fathered, it was based on something that you had
> had.

AR136.  Lt. Johnson's March 8, 2013, reply notes that he is not sure about any grandfathering,

and reiterates the end of TSgt (RET) Conti's retainability at the end of 2013.  AR135.  He also

noted there might be an E-7 (MSgt) drill status guardsman position available that might or might

---

[9]    The "event time-line" and supporting materials appear to be an expanded revision of the
materials TSgt (RET) Conti provided to Colonel Madden via email on October 31, 2017.  *See*
AR143.  Therefore, while these materials existed for TSgt (RET) Conti's first AFBCMR
review, TSgt (RET) Conti did not provide them to the AFBCMR until the second AFBCMR
review after remand.

[10]    This email makes clear that TSgt (RET) Conti was completely aware she was limited to
24 months of retainability in her overgrade status despite the forementioned scrivener's error
suggesting a 36-month limit.  *See* Section II.B., above.

13

not be filled.  *Id.*  He concludes by recommending TSgt (RET) Conti coordinate with Lt Col

Miller to "play the shell game to keep you safe."  *Id.*  Over a month later, while still in a MEB

status, TSgt (RET) Conti emailed Lt Col Miller asking him to talk to Colonel Dickens

(presumably the Group Commander above Lt Col Miller) to see what could be done.   It appears

Lt Col Miller did not reply to this email, nor is there any record of email follow up by TSgt

(RET) Conti.  *See* AR135.

On January 21, 2014, TSgt (RET) Conti was found fit for duty after her first MEB,[11]

beginning the essentially 24-month period in which she was only promotion ineligible due to her

overgrade status and lack of assignment to a UMD position authorized for grade E-7 or greater.

AR112.   Despite this 24-month period without a MEB or something similar limiting her

promotion, and despite her complete awareness that her 24 months of retainability in her

overgrade status had expired in December 2013 (*see* AR135-36), there is no evidence of TSgt

(RET) Conti doing anything to resolve her overgrade status or lack of assignment to a E-7 or

greater UMD position.

   **E.     As Of October 1, 2014, TSgt (RET) Conti Was Also Promotion Ineligible
           Because Of Her Retraining Status And Her Choice Not To Attend Technical
           School**

In May 2014, TSgt (RET) Conti learned of an additional reason why she would not be

promotable.   Her Primary AFSC converted from 3D071, knowledge operations, to 3A171,

administration.   AR114.   Her Duty AFSC also changed, but she remained "qualified" for her

---

[11]   TSgt (RET) Conti states March 3, 2014, is the date she returned to duty (AR113)
"following a medical review and there were not promotion-eligibility limitations aside from the
overgrade and position and assignment preclusions that NGB/A1PP Advisory Opinion confirms
were the product of the 149th's numerous regulatory violations."   AR319.   It is unclear to the
Government whether the NGB paperwork (AR112) or the Duty Limiting Condition Reports
(AR113) control the date TSgt (RET) Conti is officially returned to duty.

new administration position without retraining.  *Id.*  But she also learned that her AFSCs would change again in October 2014, converting from 3A171, administration, to 3S0X1, personnel, thus requiring her to attend technical school to retrain.  AR115.  Simultaneously, she learned she could seek a waiver for retraining, but she has presented no record of her pursuing a waiver.  *Id.*  Thus, in October 2014, TSgt (RET) Conti became promotion ineligible for her retraining status (that is, the requirement she attend technical school and her failure to seek a waiver).

In her August 1, 2022 MJAR, TSgt (RET) Conti states "she could not attend training to obtain the new AFSC into which she had been forced" due to medical duty limiting restrictions.  MJAR p. 12.  That does not appear to be accurate.  In January 2014, TSgt (RET) Conti was found fit for duty, and her AF Form 469 allowed her to "be assigned or deployed to CONUS, Hawaii, or Alaska installations with fixed medical treatment facilities[.]"  AR113.  Though TSgt (RET) subsequently went back into an MEB status briefly in May 2015, that MEB status ended quickly on June 8, 2015, with no subsequent AF 469 Duty Limiting Condition Report limiting her until January 20, 2016.  *See* AR120.  Thus, TSgt (RET) Conti essentially had two years between January 2014 and January 2016 in which she could have pursued retraining but chose not to.[12]  *See* AR105.

---

[12]  TSgt (RET) Conti's October 13, 2018, Application For Correction of Military Record stated that the 149th's failure to reassign her "forced" her into retraining when her overgrade position converted her to another AFSC in violation of Assignment Instruction, para. 2.7.  Para. 2.7 states, in pertinent part: "Every effort will be made to ensure assignment to a position for retraining does not result in an overgrade situation."  *See* AR20; Am. Compl. ¶ 59.  Additionally, TSgt (RET) Conti's supplemental remand materials, dated October 4, 2021, include a statement that her being "[c]oerced into signing [an] AF2096 to retrain . . . started the two-year period over again and made it virually impossible for me [TSgt (RET) Conti] to promote."  AR105.  We do not understand this argument, and TSgt (RET) Conti's Memorandum In Support of Supplemental Remand Materials (AR78), amended Complaint, and MJAR, appear neither make the argument nor explain it.  Regardless, TSgt (RET) Conti was not

**F.     From January 2016 Until Her May 2018 Retirement, TSgt (RET) Conti Was Promotion Ineligible Due To Three Or More of the Following: Her Overgrade Status, Lack of Assignment To A UMD Position Authorized For Grade E-7 Or Greater, Her Retraining Status / Failure to Attend Technical School, And Her DES Status**

From January 2016 until she retired in May 2018, TSgt (RET) Conti was promotion

ineligible for three or more of the following reasons:

1.     She was in an overgrade status; see section II.B., above.

2.     She was not assigned to a UMD authorized position E-7 or greater; see section II.B., above.

3.     She could not attend her required AFSC training and did not seek a waiver; see section II.E., above.

4.     She was involved in the DES process, and therefore not promotable; see section I.C., above.[13]

**G.     Sometime In 2016 TSgt (RET) Conti Became Promotion Ineligible Because Of High Year Tenure**

The High Year Tenure is an "established date by which an enlisted member is

mandatorily separated from active service."   Ex. A, Reenlistment Instruction, para. 4.1, p. 64.

High Year Tenure, or mandatory separation date, for ANG members is at age 60.   *Id.* at para.

4.5, p. 66.   TSgt (RET) Conti reached age 60 in 2017.   AR224.   Sometime in 2016, on her 59th

---

assigned to a position for retraining, she was already in a position that subsequently required retraining, and her overgrade status in the position predated her ineligibility for promotion due to retraining by almost three years.   While it appears TSgt (RET) Conti's amended Complaint has dropped her previous ANGI 36-2101 para. 2.7 arguments as a basis for any violation by the 149th, to the extent she has not, para. 2.7 is irrelevant to her allegations because she was not assigned to the position for retraining, she was already in it.

[13]   The only question from the record is TSgt (RET) Conti's exact DES status from January 2016, forward.   It is unclear whether the DES process TSgt (RET) Conti entered in January 2016 (AR120), or one thereafter (*see* AR128, 121, and 129) was the final DES process that led to her PEB and finding of unfit for duty.   *See* AR106.

Birthday, TSgt (RET) Conti became ineligible for promotion to MSgt because she would not meet the 12-month ANG service commitment prior to her 60th birthday.   *See* Ex. C, Promotion Instruction, Table 1.1 Rule 13, p. 7; AR224.   There is no waiver or exception to this policy. *See* Ex. C, Promotion Instruction, Table 1.1 Rule 13, note 6, p. 8.

### III.    Despite TSgt (RET) Conti's Lack Of Effort To Resolve Her Overgrade Status, Her Commanders Made Significant Efforts To Retain Her In The ANG

On January 1, 2015, TSgt (RET) Conti's Awareness of Overgrade Form expired. AR187.   At that time, the 149th could have begun the administrative processes to demote her to E-5, and/or involuntarily separate her from the ANG.   *Id.*   Neither was done, TSgt (RET) Conti's commanders showed her continuous support.[14]   AR189-92.

---

[14]   For example, Lt Col Eskridge's decision extended the expiration dates for TSgt (RET) Conti's retention despite the overgrade status.   Their support was essential, in that:

> No individual will reenlist or extend their enlistment without the concurrence of the unit commander. A commander may approve or deny reenlistments and extension of enlistments to any member of his or her command. Continued retention in the ANG is a command prerogative and is not an inherent right of any individual unless the member has between 18 and 20 years of satisfactory service towards a reserve retirement. In those cases, only the SAF may deny retention. Reenlistments and extension may not exceed a member's [High Year Tenure (HYT)] except as explain (sic) in Paragraph 4.5.

Ex. A, Reenlistment Instruction, para. 4.1, p. 64.   The High Year Tenure is an "established date by which an enlisted member is mandatorily separated from active service."   *Id.* at 93.   High Year Tenure, or mandatory separation date, for ANG members is at age 60.   *Id.* at para. 4.5. p. 66.   TSgt (RET) Conti reached age 60 in 2017.   AR224.   The commanders supported the extensions past her High Year Tenure date all the way through September 23, 2018, if needed. AR189.   Despite TSgt (RET) Conti failing to retrain since 2014, her commanders supported her career until she obtained her disability retirement in 2018.

On June 21, 2015, Tsgt (RET) Conti's retainability was under 12 months, therefore she did not meet the promotion retainability requirement.   *See* Ex. D, Promotion Instruction II, Table 10.1, Rule 6 (12-month promotion retainability requirement), p. 103; AR238.

Instead of involuntary separation, or demotion, on July 12, 2015, the 149th and TSgt (RET) Conti signed a second Awareness of Overgrade Form,[15] again formally acknowledging her overgrade condition, and backdating it to be effective October 1, 2014 through her June 10, 2016, ETS.   AR123.   The October 1, 2014, effective date coincides with when TSgt (RET) Conti became promotion ineligible for her retraining status.[16]   This second Awareness of Overgrade Form had the same reason code as her prior form, indicating an overgrade status due to a UMD change.   *Id.*

Again, showing support for TSgt (RET) Conti, on March 8, 2016, the 149th Commander requested an exception to the Reenlistment Instruction policy, Chapter 4, to extend her ETS 14 months from her current ETS (June 10, 2016).   AR126.   In that request the 149th stated that TSgt (RET) Conti was unable to travel to technical school to obtain her new AFSC due to medical conditions limiting her duty.   *Id.*   Though she could not reenlist because she did not have an eligible AFSC, the 149th advocated for her to be able to extend, stating it would help the 149th with administrative functions such as promotions and evaluations, while allowing the 149th to recruit someone to replace her by her 2017 retirement.   *Id.*

---

[15]   *See* fn. 14, *supra*, discussing that continued retention in the ANG is a command prerogative and is not an inherent right of any individual.

[16]   It is unclear why the Awareness of Overgrade Form, which addresses her overgrade status, is backdated to a date having to do with her retraining status.   While both TSgt (RET) Conti's overgrade and training status were challenges to her continued service, they appear to be unrelated.   TSgt (RET) Conti also does not appear to have an explanation for this coincidence. *See* MJAR p. 12.

18

In April 2017, the 149th wrote an Enlisted Performance Report (EPR) for TSgt (RET) Conti.   The EPR covered the period December 1, 2014, through November 30, 2016, and gave her an overall performance assessment of "Met all expectations," a mid-level rating.   AR50-51. More importantly, of the five promotion recommendation ratings – Do Not Promote, Not Ready Now, Promote, Must Promote, and Promote Now – TSgt (RET) Conti also received the middle rating, Promote.   *Id.*   TSgt (RET) Conti refused to sign the document.   *Id.*

On September 23, 2017, TSgt (RET) Conti requested and the 149th approved a six-month extension of her expiration of term of service (ETS) for medical reasons.   AR191-92.   This was her third extension, bringing her total extensions to 21 months past her original ETS of June 10, 2016.[17]   The reason for the extension cited the rule for a member "who is hospitalized, temporarily physically disqualified, or pending Disability Evaluation System (DES), Medical Evaluation Board (MEB), or Physical Evaluation Board (PEB)."   AR191; Ex. F, AFI 36-2606, Reenlistment and Extension of Enlistment in the United States Air Force, Table 6.3 Rule 11, p. 113.

On March 20, 2018, TSgt (RET) Conti requested and the 149th approved another six-month extension of her ETS.   AR189-90.   This was her fourth extension, bringing her extension total to 27 months.   The reason for the extension was the same as that of the third extension.

In summary, even though TSgt (RET) Conti's retention in the ANG was a command prerogative, and not an inherent right, both the 149th (and the JCDTF, where she was working

---

[17]   There is nothing in the administrative record documenting her second extension, but presumably it exists because her first extension expired in August 2017, and her third extension did not begin until September 2017.

full time) repeatedly extended her enlistment and orders, respectively, to allow her DES situation resolve.

**IV.    After TSgt (RET) Conti's PEB Found Her Unfit For Duty In March 2017, She Sent Emails Months Later To Her Group Commander and Wing Commander Pleading She Should Have Been Promoted**

TSgt (RET) Conti has represented through the AFBCMR process that she has properly addressed her promotion concerns to her chain of command, but they have "gone unanswered." *See* Am. Compl. ¶ 47 (quoting TSgt (RET) Conti's IG Complaint).   TSgt (RET) Conti relies on four email chains to support this argument, only one of which was to her direct commander, and occurred before she was found unfit for duty.   *See* section II.D., supra.

The remaining conversations occurred after TSgt (RET) Conti was found unfit for duty in March 2017 and include emails to her group commander (Col Erickson, one level above TSgt (RET) Conti's commander, Lt Col Robinson), the wing commander (Col Madden, two levels above her commander), and the IG (discussed in section V., below).   *See* AR137-41; 142-45; 132-34; MJAR p. 10.   The August 2017 emails to her group commander are non-substantive, and ultimately TSgt (RET) Conti declined a meeting request with the group commander because she was scheduled for leave.   AR137.   No evidence in the AR gives any indication if a meeting with the wing commander, Col Erickson, ever happened.

In November 2017, TSgt (RET) Conti sent an email directly to the wing commander, Col Madden.   AR143-45.   In the email, she states that she has "met with leadership in the 149 CES, the Force Support Squadron, the Mission Squadron, and with the Wing Command Chief.   My attempts to resolve concerns regarding numerous events, which have prevented my career progression since January 2012, was met with opposition and provide no resolution."   AR144.

No evidence in the AR gives any indication if these meetings TSgt (RET) Conti alleges happened, or the contents of those meetings.

TSgt (RET) Conti's email to the wing commander goes on to state that she believes Lt Col Robinson's "decision not to promote me is linked to my complaint of discrimination in the Counterdrug Program [JCDTF]."   TSgt (RET) Conti's reference to discrimination in the JCDTF is discussed in the timeline she provided to the AFBCMR on remand.   *See* AR106.   However, TSgt (RET) Conti declined to provide any supporting documentation regarding her JCDTF discrimination complaint.   *Id.* ("Supporting documentation available upon request." – documentation that was not provided to the AFBCMR).   After her JCDTF discrimination complaint TSgt (RET) Conti "[f]iled EEO, Reprisal, and Whistleblower complaints to State EEO, 149 FW EEO, 149 FW IG, and cc'd SDC."[18]   *Id.*   None of the complaints TSgt (RET) Conti filed are part of the AR, and TSgt (RET) Conti does not discuss her JCDTF discrimination complaint or her reprisal theory in her MJAR.

Unsatisfied with the responses provided by her chain of command, TSgt (RET) Conti then turned to the Inspector General.

## V.   <u>On March 1, 2018, TSgt (RET) Conti Filed A Complaint With The IG</u>

On March 1, 2018, TSgt (RET) Conti filed an IG complaint.   AR31-32.   The IG Complaint is the first formal record of an allegation by TSgt (RET) Conti that she believed the 149th had a responsibility to reassign her to the first available position commensurate to her grade, pursuant to the Assignment Instruction, para. 2.18.11.   *See* AR 31; Ex. B, Assignment Instruction, para. 2.18.11, p. 15.   On April 10, 2018, the IG dismissed her IG Complaint, concluding that, "the complainant has not brought forth credible evidence of a violation of law,

---

[18]   The Government is uncertain what the "SDC" references.

instruction, regulation, or policy." Ex. G, AFI 90-301, Inspector General Complaints Resolution Table 3.12, Rule 1, p. 65. While the IG did state that TSgt (RET) Conti "could have possibly been placed into a different position to possibly satisfy the AFSC requirement for promotion," the IG provided no further explanation for its observation. AR 33.

The IG provided its response to TSgt (RET) Conti on April 10, 2018. AR133. The IG official performing the investigation was Lt Col Christopher Miller, who was TSgt (RET) Conti's commander during the time in question. AR132. Lt Col Miller acknowledged the discrepancy and stated TSgt (RET) Conti could appeal the handling of her case to the next higher-level IG and provided her that information. *Id.* He also stated that TSgt (RET) Conti had the right to petition the AFBCMR to correct any personnel actions. AR133.

## VI.    **Retirement**

The Air Force granted TSgt (RET) Conti a permanent disability retirement, with retirement effective May 28, 2018. AR46. She retired at the E-6 grade, technical sergeant, with a 40% permanent disability rating. She had served a total of seventeen years, three months, and sixteen days of active service. *Id*.

## VII.   **First AFBCMR Review**

On October 13, 2018, TSgt (RET) Conti submitted an application, DD Form 149, for the correction of her military records to the AFBCMR. AR20. She alleged violations of the Assignment Instruction, paragraphs 2.18.11 and 2.7. Ex. B, Assignment Instruction p. 10, 15. She specifically alleged the 149th violated 2.18.11 and 2.7, respectively, when it made her ineligible for promotion by not adhering to requirements by: (1) failing to reassign her to the first available position commensurate with her grade and qualifications; and (2) requiring that she undergo "retraining when [her] overgrade position converted to another AFSC." AR20.

She alleged the 149th should have reassigned her into one of the six positions she identified in an attached list she pulled from the Command Human Resources Intelligence System on August 26, 2017 (Possibilities List).   AR37-42.   TSgt (RET) Conti's application did not acknowledge that other ANG members occupied those positions, or that regulations discourage moving another Airman to resolve an overgrade status, and prohibit such a move if it would cause an overgrade or excess status.   *See* AR20; Ex. B, Assignment Instruction, para. 2.18.12, p. 14.

Additionally, nothing in TSgt (RET) Conti's first AFBCMR request addressed:

(1)    that assignment to a UMD Position Authorized for Grade E-7 or Greater was necessary for her to promote (s*ee* Ex. C, Promotion Instruction, para. 2.1.2, p. 10; and Ex. D, Promotion Instruction II, para. 10.1.15.2, p. 100);

(2)    whether the identified positions were available from November 2013 to the fall of 2016;

(3)    whether she was available to transfer to the identified positions when they were available;[19]

(4)    whether the positions listed were ADOS or would support her ADOS assignment, and if not, whether she would have been willing to return to only a traditional drilling assignment with the commensurate reduction in pay and retirement accrual;

(5)    whether she ever presented a similar list to the 149th, consistent with her shared "responsibility to locate and place" her in a valid position; or

(6)    how the member in these positions could be reassigned as part of overall mission planning, in harmony with overgrade statuses, excesses, and mission needs and the best interest of the Air National Guard.   AR 100-01.

---

[19]   TSgt (RET) Conti did not present evidence to the AFBCMR of any available positions at other Air National Guard bases within Texas or outside of Texas.   Nor did she indicate whether she would have been willing to transfer to another base.

Despite these gaps in her evidence, TSgt (RET) Conti requested a promotion to master sergeant (E-7) effective December 1, 2015, and appropriate back pay.[20]   AR 6.   The AFBCMR considered TSgt (RET) Conti's submissions, her Master Human Resources Records, an advisory opinion from the Force Management Branch of the NGB (NGB/A1PP) (AR 136), and TSgt (RET) Conti's response to the advisory opinion (AR 133).   AR 5.   On November 21, 2019, the AFBCMR found that a preponderance of the evidence did not substantiate TSgt (RET) Conti's contentions.   AR17.

## VIII.   <u>Litigation And Remand By The Court</u>

On December 2, 2020, TSgt (RET) Conti filed her complaint in this Court.   ECF No. 1. On August 23, 2021, after discovering that the NGB/A1PP advisory opinion upon which the AFBCMR had relied violated AFI 36-2603, para. 4.2.2.4, the Government filed an unopposed motion for a voluntary remand and for a stay of court proceedings pending remand results.   ECF No. 20.   On August 31, 2021, the case was remanded via an order instructing the AFBCMR to, among other things, evaluate specific regulatory violations at the heart of this case.   AR4–5.

## IX.   <u>Second AFBMCR Review</u>

On remand, TSgt (RET) Conti submitted significant additional evidence (AR103-45) and provided a Memorandum in Support (AR78).   Specifically, she requested the AFBCMR correct her records to reflect:

(a)  promotion to E-7 with an effective date of March 3, 2014;[21]  and

---

[20]   TSgt (RET) Conti chose December 1, 2015.   At that time, she was not promotable for three reasons over and above her overgrade status: (1) her retainability; (2) her retraining status/failure to attend technical school; and (3) her lack of assignment to a UMD position authorized for grade E-7 or above.

[21]   TSgt (RET) Conti changed her effective date to March 3, 2014, the date she returned to

(b) an adjusted retired grade of E-7 effective on the date of her retirement.

AR94.    TSgt (RET) Conti argued that her command committed errors or injustices by violating procedures requiring timely, adequate resolution of her overgrade status and career progression, including:

(a) violating ANGI 36-2101 by requiring her to remain in a position in overgrade status for time periods exceeding 24 months;

(b) failing to adhere to numerous mandatory procedures required by her overgrade status, including producing a list of those in overgrade positions, using the list for force management decisions including a viable plan to resolve the conditions, keeping members informed of there overgrade status, and noting that any member assigned in an excess or overgrade status must be reassigned to the first available position commensurate with their grade and for which they are qualified;

AR96-99.   TSgt (RET) Conti concluded that these procedural violations precluded her eligibility for promotion to E-7, and, regardless of the procedural errors, "constitutes an injustice the AFBCMR must correct."   AR99-101.

After TSgt (RET) Conti's Memorandum in Support, the AFBCMR asked NGB/A1PP for an advisory opinion.   AR300-02.   NGB/A1PP's opinion acknowledges that TSgt (RET) Conti was kept in overgrade status beyond 24 months, acknowledges that there were positions

---

duty (AR113) "following a medical review and there were not promotion-eligibility limitations aside from the overgrade and position and assignment preclusions that NGB/A1PP Advisory Opinion confirms were the product of the 149th's numerous regulatory violations."   AR319. As discussed in fn. 2, above, TSgt (RET) Conti is able to identify the first time she believes she is able to promote, but cannot identify or chooses not to identify the many time periods she was within the DES process, and therefore not promotable.

available[22] with the wing commensurate with her AFSC which would have relieved her

overgrade status, and acknowledges that there was no evidence that TSgt Conti's commander

had a force management plan in place, nor that she was provided a career progression.   AR300-

01.   However, NGB/A1PP concluded:

> Based on the documentation provided by the applicant and analysis of the facts, there IS evidence of an injustice. The Inspector General did not address the applicant's complaint of being kept in an overgrade status for over 48 months, or the acts of harassment and reprisal she endured on account of her pursuant for redress of her concerns.   *Although TSgt Conti should not have been in an overgrade status for an extended period of time, there is no guarantee the TAG would have promoted the member had she been in a valid position.*

AR301 (emphasis added).

On February 1, 2022, TSgt (RET) Conti provided a response to the NGB/A1PP opinion.

AR317-19.   It argued the violations referenced by NGB/A1PP adversely impacted her career,

and that the lack of TAG consideration "is an error and injustice itself."   AR318.

The AFBCMR convened on February 28, 2022 and completed its Addendum to Record

of Proceedings on March 11, 2022.   AR4-12.   The AFBCMR identified many of the issues

identified by the NGB/A1PP, including the unit's failure to resolve her overgrade condition and

do paperwork related to, as well as conduct, complete force management.   The AFBCMR

acknowledged that TSgt (RET) Conti's promotion ineligibility was "to a certain extent, the result

of error or oversight on the part of the unit, creating an injustice upon the applicant by impairing

her ability to advance in her career."   AR11.   However, the Board concluded by stating:

> However, the unit's responsibility to correct the applicant's overgrade condition by reassigning her to a position commensurate

---

[22]   It is unclear how NGB/A1PP is using the term "available" to mean the positions existed, or that the positions existed and were unfilled.

with her grade and for which she was qualified would have been met by placing her in a technical sergeant (E-6) billet, as acknowledged by counsel's statement that placement in a master sergeant (E-7) authorized position was possible, if not mandatory. This would have corrected the overgrade condition, but the applicant would still not have been eligible for promotion to the rank and grade of master sergeant (E-7), in accordance with AFI 36-2502, which requires the applicant to be assigned to a valid UMD position with an authorized grade greater than or equal to the grade for which she is being recommended. *Therefore, the Board concurs with the advisory opinion and rationale of NGB/A1PP and finds a preponderance of the evidence does not substantiate the applicant's position with regard to her promotion to the rank and grade of master sergeant (E-7), finding her contention that correction of her overgrade condition would have resulted in her promotion to be wholly speculative.*

AR11-12 (emphasis added).   After denying relief based on TSgt (RET) Conti's request being "wholly speculative" the board went on to state that pursuant to AFI 36-2502, "authority to approve promotion of a drill status guardsman to the rank and grade of master sergent (E-7), *lies within the discretion of the state Adjutant General* . . . placing the applicant's relief outside this Board's authority."   AR12 (emphasis added).   The board therefore also recommended against correcting TSgt (RET) Conti's record with a promotion because the board did not have the proper authority, and instead recommended the applicant instead seek relief from the state agency holding the appropriate authority, *i.e.,* the Texas Air National Guard.   AR12.

## **ARGUMENT**

### I.    **Motion to Dismiss**

For TSgt (RET) Conti's claim to succeed, TSgt (RET) Conti would have to establish this Court's authority to resolve four distinct issues in her favor:: (1) that the 149th erred in not reassigning her to an E-6 position; (2) that it erred in not finding her an E-7 position, a prerequisite to her eligibility for promotion to E-7; (3) that no other disqualifying features in her service record precluded her promotion; and (4) that she is entitled to promotion to E-7.   Only

then could her claim be considered money-mandating, because only upon promotion would the pay at issue be affected.

TSgt (RET) Conti cannot succeed because the Court lacks authority to assign or promote her.   Perhaps concluding that her case most closely approximates a non-promotion case, TSgt (RET) Conti mischaracterizes her nonjusticiable assignment case as a justiciable promotion case. Nonetheless, the alleged improper non-assignment out of her overgrade position is the focus of her case, presuming that if she can succeed there the rest would follow.   However, her case falters irreparably at the assignment issue for two reasons: *first*, the assignment regulation is not money mandating (she does not allege she would have received more pay and she would not have, absent a promotion); *second*, assignments are nonjusticiable.

A.    **The Court Must Dismiss This Case Because TSgt (RET) Conti's Foundational Claim – The 149th Failed to Reassign Her – Lacks Both A Money-Mandating Statute And Justiciability**

TSgt (RET) Conti's claims immediately fail because her claim that the 149th violated a regulation by failing to reassign her lacks a money-mandating statute, and thereby jurisdiction, and justiciability.

1.    **The Court Lacks Jurisdiction Because TSgt (RET) Conti Does Not Identify a Money-Mandating Statute For Her Foundational Reassignment Claim**

TSgt (RET) Conti states this Court has jurisdiction under the Tucker Act because she raises claims under military regulations.   Am. Compl. ¶ 2.   She alleges the 149th violated Assignment Instruction para. 2.18.11, by failing "to resolve Plaintiff's overgrade status by placing her in a position commensurate with her grade [E-6]."   Am. Compl. ¶ 114.   The money-mandating statutes she identifies are the Military Pay Act (37 U.S.C. § 204), which can apply in

wrongful discharge cases and cases involving clear-cut entitlement to promotion,[23] and the

Disability Retired Pay Act (10 U.S.C. § 1201),[24] which applies to claims of disability retirement

pay based on the military denying them disability retirement status.[25]   *See Smith v. Sec'y of*

*Army*, 384 F.3d 1288, 1294-95 (Fed. Cir. 2004); *Fisher v. United States*, 402 F.3d 1167, 1174-75

(Fed. Cir. 2005).

TSgt (RET) Conti's predicate claim – the one on which all the other claims depend – is

that the 149th failed to reassign her.   Am. Compl. ¶ 114.   She asks this Court to grant non-

monetary relief as a predicate for monetary relief, whereas this Court only has jurisdiction to

grant affirmative non-monetary relief where it is incident and collateral to a money judgment.

*See Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir. 1988).   But "[t]he Tucker Act itself does

not create a substantive cause of action; in order to come within the jurisdictional reach and the

waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that

creates the right to money damages."   *Fisher*, 402 F.3d at 1172.

TSgt (RET) Conti relies on the Military Pay Act (37 U.S.C. § 204) as her money-

mandating statute, and it sometimes is a money-mandating statute.   But § 204 only provides that

---

[23]   This motion discusses the "clear-cut" entitlement exception below.

[24]   TSgt (RET) Conti does not contend, nor could she, that Disability Retired Pay Act
has been breached.   *See* 10 U.S.C. § 1201.   The act provides that disability retired pay is
computed under 10 U.S.C. § 1401, and there is no dispute that her retirement pay is calculated
consistent with that.   Rather, TSgt (RET) Conti argues that because she should have been
promoted prior to retirement, and because her retirement pay is premised on her non-promoted
retirement grade, that her retirement pay should be increased.

[25]   TSgt (RET) Conti also included 10 U.S.C § 1414, addressing concurrent disability
retired pay and Veterans Affairs disability compensation, however the Government is unaware of
any case law finding it money-mandating, so does not address it.   Am. Compl. ¶ 3.   Regardless,
the same arguments would apply.

a member of a uniformed service who is on active duty is entitled to "the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service . . . . ."  37 U.S.C. § 204 (a).   TSgt (RET) Conti does not contend, however, that she was not paid according to her pay grade – or even that if the ANG assigned her to a non-overgrade positon, she would have been paid more.   *See* Am. Compl. ¶¶ 59-60.   That is because in the overgrade position she was paid according to her grade, but more than the amount of pay designated for the position. The reassignment plaintiff wanted would not have resulted in her receiving more pay, it only have cured the pay mismatch.   Thus, the Court lacks jurisdiction to entertain her reassignment complaint upon which the rest of her claim depends.

Moreover, even if the Court looks beyond her reassignment to the promotion she alleges she was "fully qualified" for, the Military Pay Act still does not apply.   *Smith*, 384 F.3d at 1294 ("We do not have jurisdiction of a back pay claim predicated on a promotion not received.") (quoting *Knightly v. United States*, 227 Ct. Cl. 767, 769 (1981)).

### 2.    TSgt (RET) Conti's Reassignment Allegations Are Nonjusticiable Because They Are Professional Military Judgments About The Composition, Training, and Control of the ANG

Justiciability is a question of judicial competence.   When something is beyond the ken of judicial competence, it is nonjusticiable.   *See Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990).   Per the Supreme Court:

> The distinction between [nonjusticiability and lack of jurisdiction] is significant. In the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.

*Baker v. Carr*, 369 U.S. 186, 198 (1961).   A controversy is justiciable only if a court can effectively, soundly, and finally decide it under tests and standards in its special field of competence.   *Voge*, 844 F.2d at 780.   The justiciability of a military personnel decision depends on the type of military personnel decision made.   *Anderson v. United States*, 111 Fed. Cl. 572, 582 (2013), *aff'd* (July 11, 2014).

Here, TSgt (RET) Conti asks this Court to assess the wisdom of the 149th's decision to not to reassign her.   This request not only ignores TSgt (RET) Conti's significant responsibility for her non-reassignment, more fundamentally it second guesses a routine military personnel decision, a power vested by Congress in the military, not this Court.   *Voge*, 844 F.2d at 780-82. TSgt (RET) Conti asks this Court to wrestle with a routine personnel decision that is beyond its competence, and therefore nonjusticiable.   *See, e.g., Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) ("training, weaponry and orders" of the National Guard presents nonjusticiable issue); *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953) ("not within the power" of the courts to review determination to assign doctor to particular duties in the medical field); *Wilson v. Walker*, 777 F.2d 427, 429 (8th Cir.1985) ("[t]raditional notions of judicial restraint and of the separation of powers" require courts to refuse to review military duty assignments); *Pittman v. United States*, 135 Fed. Cl. 507, 537–38 (2017), *aff'd*, 753 F. App'x 904 (Fed. Cir. 2019) (declining to second guess the sentence decided by a special court-martial, stating there are no tests or standards).

In short, the Constitution does not task this Court with running the military, and it need not attempt to do so.   That responsibility rests with Congress and the President.   *See Rostker v. Goldberg*, 453 U.S. 57, 70-71 (1981).

31

**B.      TSgt (RET) Conti's Reassignment Allegations Are Also Nonjusticiable Because the Reassignment Instruction Does Not Provide A Workable Test Or Standard By Which To Judge The 149th's Conduct**

TSgt (RET) Conti's allegation that the 149th did not comply with the Assignment Instruction is also nonjusticiable because the assignment regulation does not provide an inherent test or standard against which the Court can measure the military's conduct.   *See Barnes v. United States,* 473 F.3d 1356, 1361 (Fed. Cir. 2007); *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995); *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993) (holding the Court cannot exercise discretion reserved for the military, but may "determine[] whether the procedures were followed by applying the facts to the statutory or regulatory standard.").

TSgt (RET) Conti alleges that the 149th committed a procedural violation by unlawfully keeping her in an overgrade condition, thereby violating the Assignment Instruction, para. 2.18.11.[26]   Am. Compl. ¶ 114.   As a rule, military affairs decisions exercising discretion reserved for the military are beyond the competence of the judiciary to review.   *See Adkins*, 68 F.3d at 1322; *Murphy*, 993 F.2d at 873.   However, as here, the Court can look at the allegations and determine whether there is a statutory or regulatory standard to follow, and then apply the facts to any existing standard.   *Murphy*, 993 F.2d at 873.   The Assignment Instruction procedure TSgt (RET) Conti alleges the 149th violated states: "Any member assigned in an excess or overgrade status must be reassigned to the first available position commensurate with

---

[26]   To be clear, TSgt (RET) Conti is alleging a procedural violation of the assignment process, separate and apart from the promotion process.   *See* Ex. B, Assignment Instruction; Ex. C, Promotion Instruction.   Though related, assignment procedures are well upstream of, and distinct from, promotion procedures.   At no time during the facts of this case was TSgt (RET) Conti participating in the promotion process.

their grade and for which they are qualified."   Ex. B, Assignment Instruction, para. 2.18.11, p. 15.

That procedure, even viewed in isolation, gives the commander discretion with its "for which they are qualified" terminology.   *Id.*   However, when analyzed in the context of the paragraphs around it, the discretion afforded the commander is irrefutable.   For example, para. 2.18.2, found just before 2.18.11, states: "Unit commanders must exercise due care in making assignment/reassignment decisions, *giving primary considerations to mission needs and ANG requirements.*"   *Id.* at para. 2.18.2, p. 14 (emphasis added).   If the commander primarily considers mission needs and ANG requirements, then he or she must do that by examining all positions under his command and who are the best qualified for each position.   *See id.* at paras. 2.18.2, p. 14, 2.18.11, p. 15.   The determination of mission needs is plainly one of military judgment and discretion, and not one subject to an inherent test or standard against which the Court can measure the military's conduct.   *See Murphy*, 993 F.2d at 873; *Sargisson*, 913 F.2d at 922 ("A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit.").

Part and parcel of paragraph 2.18.2, discussed above, is the Awareness of Overgrade Form, acknowledged in TSgt (RET) Conti's complaint.   Am. Compl. ¶¶ 18, 29.   Conspicuously absent, however, is TSgt (RET) Conti's recognition of her responsibilities pursuant to the multiple Awareness of Overgrade Forms she signed, which made clear that the "unit and [her] share responsibility to locate and place [her] in a vacant position (within the AFSC for which [she is] currently qualified) which is commensurate with [her] grade."   Awareness of Overgrade Form, *pursuant to* Ex. B, Assignment Instruction.

Nonetheless, TSgt (RET) Conti asks this Court to referee this intra-service assignment

process – a joint agreement between TSgt (RET) Conti and her superiors – and dictate an outcome without any inherent test or standard against which the Court can measure the military's conduct. *Murphy*, 993 F.2d at 873. Even if the Court could discern that, the task would not stop there.

This Court would then have to definitively determine – years after the fact – what both TSgt (RET) Conti and the IG could not: whether there was an available position from November 2013 to October 2014 in which the 149th could have placed her given all the competing priorities. Then, if a position or positions were identified, the Court would have to try and establish:

> (1) if TSgt (RET) Conti was available to transfer to the identified positions when they were available;
>
> (2) if the positions listed were ADOS or supported her ADOS assignment, and if not, if TSgt (RET) Conti would have been willing to return to a traditional drilling assignment with the commensurate reduction in pay and retirement accrual.

TSgt (RET) Conti asks this Court to wade impossibly deep into the waters of military affairs, well beyond its competence and authority. But the Court should not wade into this morass, because there is no test or standard on which it can rely for determining military assignments.

**C.    The Court Need Not Address The Promotion Process Because TSgt (RET) Conti Was Not Within It; Even If She Were, TSgt (RET) Conti's Allegations Are Nonjusticiable Because They Do Not Rise To The "Clear-Cut" Exception Required For Promotion Justiciability**

Contrary to her assertions, TSgt (RET) Conti's promotion process had not commenced nor been interrupted by the 149th's alleged failure to find her an E-6 position, in fact she was not

in the promotion process and nowhere near a "clear-cut" entitlement to promotion.   *See Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004).

> **1.    TSgt (RET) Conti Was Not Within the Promotion Process, Therefore The Court Need Not, And Cannot Examine The Promotion Process**

TSgt (RET) Conti's complaint, against all evidence, assumes her promotion to E-7 was a forgone conclusion if she were not in an overgrade status, and then asks this Court to promote TSgt (RET) Conti to E-7, contrary to well-established precedent.   *See* Am. Compl. ¶¶ 112-13; Compl. Prayer for Relief; *e.g. Brenner v. United States*, 202 Ct.Cl. 678 (1973), *cert. denied*, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974).

As outlined above, even if the 149th were required to resolve TSgt (RET) Conti's overgrade status, which it was not, that alone would not have placed her in an E-7 position, allowing her to promote.   *See* Ex. C, Promotion Instruction, para. 2.1.2, p. 10; Ex. D, Promotion Instruction II, para. 10.1.15.2, p. 100 ("Must be assigned to a valid UMD position with an authorized grade greater than or equal to the grade for which the member is being recommended").   Therefore, under the most favorable circumstances conceivable under these facts, TSgt (RET) Conti would not have been promotable.

Further, TSgt (RET) Conti's complaint states she was not in the promotion process, only stating she was "fully qualified."   Am. Compl. ¶ 27.   The Promotion Instruction, makes clear: "[t]he fact a [ANG] member meets each of the eligibility criteria outlined in this instruction does not automatically guarantee promotion . . . [m]eeting minimum eligibility criteria *only indicates* that a member *can be considered eligible for promotion* . . . [which] is not a reward for past performance, but recognition of the member's potential to successfully serve in the higher grade."   Ex. C, Promotion Instruction, para. 1.4.1, p. 5 (Actions Required Prior to Promotion

Approval) (emphasis added); Ex. D, Promotion Instruction II, para. 10.1.1.1, p. 98.   Moreover,

promotions are limited, and competitive, not automatic as TSgt (RET) Conti implies.   *See* Ex. C,

Promotion Instruction, para. 2.1.5, p.10; Ex. D, Promotion Instruction II, para. 10.1.15.5, p.100.

TSgt (RET) Conti was not on track to promote regardless of her overgrade status.

### 2.    The "Clear Cut" Promotion Exception For Justiciability Does Not Apply To TSgt (RET) Conti

This Court may review a military promotion decision for something beyond procedural

error only where a promotion has commenced and later been interrupted, a so-called "clear-cut"

entitlement to promotion.   *See Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004).

For all the reasons under II.B.1, immediately above, TSgt (RET) Conti did not have "clear-cut"

entitlement to promotion.

TSgt (RET) Conti's April 2017 EPR establishes that even if she had not been in an

overgrade status as of November 2013, and somehow located an E-7 position, she cannot argue

with any certainty that the ANG would have selected her for a highly competitive promotion to

MSgt.   Despite TSgt (RET) Conti's representations her box 6 rating of Promote on her EPR is

not a strong endorsement from her immediate commander for promotion under ANGI para.

10.1.1.1.   *See* MJAR p. 19.   Per the AFI controlling TSgt (RET) Conti's EPR:

> 4.19.2.1. Promote Now ("PN") and Must Promote ("MP")
> recommendations are limited in number to ensure only the highest
> performing Airman with the greatest potential to serve in the next
> grade receive "PN" and "MP" recommendations.   [This system] is
> sending a strong signal that the Airman is ready for immediate
> promotion . . . The intent is to ensure those Airman awarded a "PN"
> or "MP" receive a distinct advantage when competing for
> promotion.
>
> **Promote:** Recommended for promotion based on performance at or
> above established AF standards and expectations.   Performs with
> the majority of Airmen and at a level commensurate with peers.

Ex. H, AFI 36-2406, para. 4.19.2.1, p. 130, Table 4.2 Item 33, p. 150.    The promote rating merely represents that TSgt (RET) Conti was performing at a level with the majority of her peers, and is not recognition of her potential to successfully serve in the higher E-7 grade.    *See* Ex. C, Promotion Instruction, para. 1.4, p. 5 (Actions Required Prior to Promotion Approval); Ex. D, Promotion Instruction II, para. 10.1.1.1, p. 98.

Not only that, both Promotion Instructions make plain: "Prior to promotion to any grade, the immediate commander must first recommend the airman" and a promotion to MSgt (which TSgt (RET) Conti sought) requires the approval of The Adjutant General (TAG) of the State or Territory in question.    Ex. C, Promotion Instruction, paras. 1.4.2, p. 5 and 2.5, p. 12; Ex. D, Promotion Instruction II, paras. 10.1.1.2, p. 98 and 10.1.2.1, p. 98.    This requires a separate action of TSgt (RET) Conti's commander forwarding his recommendation with a requested promotion date.    Ex. C, Promotion Instruction, para. 1.6.1.1, p.8; Ex. D, Promotion Instruction II, para. 10.3.2, p. 107.    Such promotion actions were not automatic.    Furthermore, any commander at any level of the chain of command between the immediate commander and the TAG could deny promotion. Ex. C, Promotion Instruction, para.1.3, p.5; Ex. D, Promotion Instruction II, para. 10.1.6, p. 99.    The record is not clear that she would have had the support of every commander.

Further, even if she made it through all those wickets, she would not have a clear-cut entitlement to promotion without the approval of TAG of the State of Texas.    Ex. C, Promotion Instruction, para. 2.5, p. 12; Ex. D, Promotion Instruction II, para. 10.1.2.1, p. 98; *see Dysart*, 369 F.3d at 1315.

II.    **The AFBCMR's Decision Was Not Arbitrary, Capricious, Or Unsupported By Substantial Evidence**

Even if this Court were to find it had jurisdiction and a question justiciable to review, its review of the correction board's decision is "limited to the administrative record before the deciding official or officials."   *Wyatt v. United States*, 23 Cl. Ct. 314, 319 (Cl. Ct. 1991); *Spellissy v. United States*, 103 Fed. Cl. 274, 283 (2012) ("When a service member chooses first to petition a military correction board, the Court of Federal Claims' review is limited to the administrative record").

For a plaintiff to succeed in overturning the decision of the AFBCMR, it must show "cogent and clearly convincing evidence" that the decision of the board was arbitrary, capricious, unsupported by evidence, or contrary to law.   *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986); *Robbins v. United States*, 29 Fed. Cl. 717, 725 (1993).   In reviewing an administrative record, the Court asks whether, given all of the disputed and undisputed facts, a party has met its burden of proof based upon the evidence in the record.   *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

TSgt (RET) Conti makes two arguments contending the AFBCMR conclusions were in error.

> A.    The AFBCMR arbitrarily and capriciously failed to find that TSgt (RET) Conti's command's procedural violations precluded her promotion to E-7, and thereby the AFBCMR failed to correct an error clearly presented to it.   MJAR p.27, 30.
>
> B.    The AFBCMR erroneously determined that it did not have authority to grant the records-correction relief TSgt (RET) Conti requested.   MJAR p. 24

Neither of these are correct.

A.    **The AFBCMR Correctly Concluded That Despite The Evidence of Error
And Injustice, TSgt (RET) Conti's Remedy – Retroactive Promotion To
MSgt (E-7) – Was "Wholly Speculative"**

TSgt (RET) Conti's MJAR states that the 149th's "procedural violations are now beyond

dispute."   MJAR 20.   To be clear, the 149th – that is, the TXANG organization whose actions

are largely at issue in this case – was not represented in the AFBCMR process.   The advisory

opinion that the AFBCMR relies on to conclude there were procedural violations came from the

NGB/A1PP.   The NGB/A1PP is part of the National Guard Bureau, which, by statute, "is the

channel of communications on all matters pertaining to the National Guard, the Army National

Guard of the United States, and the Air National Guard of the United States between (1) the

Department of the Army and Department of the Air Force, and (2) the several States."   10 U.S.

Code § 10501 - National Guard Bureau.   While the NGB/A1PP is a channel of communications

on matters pertaining to the TXANG, it does not and cannot speak for the TXANG, because the

TXANG is a state agency under state authority and control.   *See Singleton v. M.S.P.B.*, 244 F.3d

1331, 1333 (Fed. Cir. 2001).   The AFBCMR cannot order an advisory opinion from the

TXANG regarding the circumstances of TSgt (RET) Conti's non-promotion.   Thus, it is not

unusual for the evidence the AFBCMR has in National Guard matters to come entirely from the

applicant, as here.   It is important to understand that the opinions given by the NGB/A1PP are

not those of the TXANG, and in this case are based entirely on the incomplete, and likely one-

sided, evidence provided by TSgt (RET) Conti.[27]   In short, while the AFBCMR has

---

[27]   It is true that NGB/A1PP can communicate with the appropriate state National Guard to
gather necessary information where necessary.   *See* Ex. K, ABCMR Dkt. No. BC20080018039
(Apr. 22, 2009) ("The NGB official also states that the applicant requested that his promotion be
backdated to 1993; however, upon coordination with the NCARNG [North Carolina Army
National Guard], no promotion lists were available for that time period.").   Here, however, it
appears NGB/A1PP relied exclusively on the information provided by TSgt (RET) Conti.

acknowledged procedural violations by the 149th, those violations appear to be based on incomplete evidence.

Even though the AFBCMR acknowledged evidence of procedural violations that suggested an error or injustice, it correctly concluded that TSgt (RET) Conti's remedy – retroactive promotion to MSgt (E-7) – was "wholly speculative." AR12.

The AFBCMR examined AFI 36-2502 and properly concluded that even under the Assignment Instruction as interpreted by TSgt (RET) Conti, the 149th would only have responsibility to locate her an E-6 position that would resolve her overgrade status, *not an E-7 position* that would make her promotable under the Promotion Instruction. *See* AR11; Ex. C, Promotion Instruction, para. 2.1.2, p.10; Ex. D, Promotion Instruction II, para. 10.1.15.2, p. 100. Nothing about the AFBCMR's conclusion is arbitrary, capricious, unsupported by evidence, or contrary to law. Indeed, TSgt (RET) Conti acknowledged the basis for the AFBCMR's conclusion: The 149th only had to resolve her overgrade status, not place her in a position that would make her promotable. *See* AR99, TSgt (RET) Conti's Memorandum in Support ("Although the flawed 2012 Form 36-11 required Ms. Conti to be placed in a vacant position within an AFSC for which she was qualified and *commensurate with her grade, placement in a MSgt (E-7) authorized position was possible, if not mandatory.*") (emphasis added).

It was also not arbitrary or capricious for the AFBCMR to recognize that the significant hurdles to promotion that TSgt (RET) Conti still faced made her promotion "wholly speculative." AR12. Assuming TSgt (RET) Conti's overgrade status was resolved on March 3, 2014, as TSgt (RET) Conti suggests it should have been, she still would have had to accomplish the following prior to her next entry into the DES system in January 2016 (which would make her unpromotable): (1) locate and get approval to be placed in an E-7 position which

40

would allow her to be promoted;[28] (2) gain the support of her commander for promotion; (3)

gain the support of her group commander for promotion; (4) gain the approval of her wing

commander for promotion; (5) gainthe approval of her TAG for promotion.   She would have to

accomplish all the above despite the restrictions her duty limiting condition report placed her

under, including: (1) an inability to take the Air Force fitness test; (2) an inability to participate

in unit physical training; and (3) an inability to deploy outside the United States, Hawaii, or

Alaska (assignment limitation code two, ALC-2).   AR113.   The promotion instructions are

clear that "[c]ommanders should use discretion when promoting members with physical

profiles."   *See* Ex. C, Promotion Instruction, p. 8; Ex. D, Promotion Instruction II, p. 106.

These challenges are entirely consistent with the AFBCMR's conclusion that TSgt (RET)

Conti's remedy – promotion – was wholly speculative.

Promotion "is not a reward for past performance, but recognition of the member's

potential to successfully serve in the higher grade."   Ex. C, Promotion Instruction, para. 1.4.1, p.

5; Ex. D, Promotion Instruction II, para. 10.1.1.1, p. 98.   The Promotion Instruction, makes

clear: "[t]he fact a [ANG] member meets each of the eligibility criteria outlined in this

---

    28    TSgt (RET) Conti's MJAR suggests that the AFBCMR endorses her speculation that
there were other positions she could have been placed in allowing her promotion.   MJAR 29.
The AFBCMR's failure to dispute TSgt (RET) Conti's incomplete and speculative evidence is
not an endorsement.   There is no evidence that TSgt (RET) Conti made any effort to identify
positions to resolve her overgrade status or place her in a promotable E-7 position prior to
August 2017.   *See* MJAR 14 (citing AR104-06).   This evidence does not exist despite her
signing Awareness of Overgrade forms in February 2012 and July 2015 which made clear her
shared responsibility in resolving the issue.   *See* AR15.   TSgt (RET) Conti's MJAR also
suggests that the 149th's failure to place her in an E-7 position somehow contravened DoDD
1304.20 which requires "visible, relatively stable career progression opportunities."   To be
clear, while there is an ANGI saying a command has some responsibility for resolving an
overgrade condition, TSgt (RET) Conti cites to no instruction saying a command is responsible
for locating a higher rank UMD position so that a SM can be promoted.   TSgt (RET) Conti's
reading of 1304.20 is unsupported by the law and goes entirely too far.

instruction does not automatically guarantee promotion[.]" *Id.* Moreover, promotions are limited and competitive, not automatic. *See id.* While TSgt (RET) Conti's MJAR attempts to convey that promotion is just a matter of meeting certain parameters, and thereafter it is automatic, that is anything but the case. Promotions are often extremely competitive, with numerous service members pursing limited spots. This is especially true when moving into the higher levels of the enlisted ranks, like MSgt (E-7).

A BCMR case is particularly illustrative of these challenges. In BC20080018039 an applicant requested that his E-8, master sergeant (MSG) promotion effective date be moved back, and that he be promoted to E-9, sergeant major (SGM). Ex. K. The basis for his claims were that the North Carolina Army National Guard (NCARNG) had an incorrect promotion policy that was confirmed by the Department of Defense. *Id.* The applicant argued the incorrect promotion policy slowed his promotions, ultimately preventing him from being promoted to MSG. *Id.* After confirming the facts, the ABCMR recommended that the applicant's promotion effective date be backdated to a date comparable to his peers who were promoted earlier than him yet had fewer points on the same promotion list. *Id.* However, the ABCMR denied his promotion stating he would have had to have been selected for promotion to SGM and the promotion approved by the TAG. *Id.* As in this case, the ABCMR concluded his selection and promotion to SGM was too speculative, even though the applicant showed that had he been on the promotion list he would have been ranked second, with little competition. *See id.* Nonetheless, in circumstances much less speculative than those proposed by TSgt (RET) Conti, the ABCMR found the relationship between the error or injustice and the remedy too speculative. *See id.*

TSgt (RET) Conti concludes her argument stating there "is a *direct nexus* between the unit's procedural violations, Ms. Conti's ineligibility for promotion and her failure to promote to E-7." MJAR 30 (emphasis added). The AFBCMR disagreed and explained using the law and evidence why it disagreed. TSgt (RET) Conti has not shown "cogent and clearly convincing evidence" that the AFBCMR should be overturned.

**B.     The AFBCMR Correctly Concluded That The Authority To Promote A Drill Status Guardsman To The Rank And Grade Of E-7 Lies With The TAG**

"[T]he role of the national guard does not fit neatly within the scope of either state or national concerns; instead, the national guard is somewhat of a hybrid. *Within each state, the national guard is a state agency, under state authority and control.* At the same time, the activity, make-up, and function of the national guard are provided for, to a large extent, by federal law." *Singleton*, 244 F.3d at 1333 (emphasis added). Though the relationship between the state national guards and the BCMRs can be confusing, it is well settled that a BCMR lacks the authority to order a state TAG to promote a guardsman of that state. Under 10 U.S.C. § 1552 (Correction of military records: claims incident thereto) the secretary of a military department shall act through the appropriate BCMR to correct military records, however the secretary "is not required to act through a board in the case of the correction of a military announcing . . . the promotion . . . of an enlisted member to an . . . higher grade[.]" *See* 10 U.S.C. § 1552(a)(1) and (2). Thus, to promote an individual, the Secretary of the military department can act through whomever he has the power to act through.

The problem that arises in this scenario is that the TAG of the TXANG is appointed by the governor of Texas. Neither the AFBCMR, nor the Secretary of the Air Force, has the authority to order the TAG of the TXANG to promote TSgt (RET) Conti. Therefore, because it

is undisputed that both promotion instructions require the approval of the TXANG TAG to promote TSgt (RET) Conti, neither the AFBCMR nor the Secretary of the Air Force has the authority to do it.   *See* Ex. D, AFI 36-2502, Promotions Instruction II, para. 10.1.2.1, p. 98 ("The authority to approve promotions to the grades of MSgt, SMSgt, and CMSgt is TAG. TAG may delegate authority to promote airmen in these grades to the State Assistant Adjutant General for Air (AAG for Air).   However, the AAG for Airman delegate this authority to the State Director of Staff (DoS). This authority cannot be delegated below the DoS. There will be no exceptions to this policy.")

Consistently, none of the BCMR cases cited by TSgt (RET) Conti stand for the proposition that a BCMR can promote a National Guard member.   TSgt (RET) Conti's best BCMR case (BC201003680) stands only for the proposition that a BCMR can correct a date of rank (DOR), thereby allowing the applicant to receive an automatic promotion (from first lieutenant to second lieutenant) sooner.   *See* MJAR App. 467.   To be clear, in BC201003680 the ANG had already decided when an officer would be promoted from first lieutenant to second lieutenant based on time in rank.   *Id.*   The AFBMR in BC201003680 did not decide to promote the applicant, the AFBCMR just adjusted her DOR so that the promotion the ANG had already decided would happen, retroactively occurred sooner.   *Id.*

BC201501220, also cited by TSgt (RET) Conti in support, is equally unpersuasive.   In fact, it highlights many of the arguments made by the Government in support of TSgt (RET) Conti's non-promotion, with the NGB/A1PP stating:

> [T]he applicant did not receive a promotion recommendation until 6 Oct 13.   The six months referred to in ANGI 36-2502, Table 2.1, reflect TIG requirements to be eligible for promotion *and does not require automatic promotion upon meeting said milestones.*   ANGI 36-2502, paragraph 1.4 states, *The fact a member meets each of the*

44

> *eligibility criteria outlined in this instruction does not automatically guarantee promotion to the next higher grade. Meeting minimum eligibility criteria only indicates that a member can be considered eligible for promotion. Promotion is not a reward for past performance, but recognition of the members potential to successfully serve in the higher grade.* Prior to promotion to any grade, the immediate commander must first recommend the airman. The applicants commander approved his promotion to the grade of E-3 with an effective date and date of rank of 6 Oct 13. *Without the commanders endorsement, the applicant would not have been allowed to be promoted from E-2 to E-3.*

*See* MJAR App. 469 (emphasis added).   The AFBCMR agreed, stating the applicant was not a victim of error injustice.

In conclusion, it was not arbitrary or capricious, or contrary to law, for the AFBCMR to conclude that it did not have the authority to promote TSgt (RET) Conti.

### <u>Conclusion</u>

For the foregoing reasons, the United States respectfully requests the Court dismiss TSgt (RET) Conti's Complaint, or, in the alternative, grant judgment upon the administrative record in favor of the United States.

<div style="margin-left:50%">

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

 /s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

</div>

                                        /s/ Dan Hoffman
                                        DANIEL A. HOFFMAN
Of Counsel:                             Trial Attorney
                                        Commercial Litigation Branch
SCOTT MEDLYN, Maj, USAF                 Civil Division
Personnel and Information Law           Department of Justice
AF/JAC-Military Personnel Law and Litigation    P.O. Box 480
1500 West Perimeter Rd., Suite 1370     Ben Franklin Station
Joint Base Andrews-                     Washington, DC 20044
Naval Air Facility, MD 20762            Tel: (202) 307-0972

August 31, 2022                         Attorneys for Defendant United States