No. 20-1732C
(Judge Dietz)

---

# UNITED STATES COURT OF FEDERAL CLAIMS

---

LESLIE J. CONTI,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

---

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
FOR JUDGMENT ON THE ADMINSTRATIVE RECORD AND RESPONSE TO
DEFENDANT'S MOTIONS FOR JUDGMENT ON THE RECORD AND TO DISMISS**

---

BRIAN D. SCHENK
Midwest Military & Veterans Law, PLLC
400 South 4th Street, Suite 401-510
Minneapolis, Minnesota 55415
Telephone: (202) 557-6570 (c)
brian@militaryandveteranslaw.com

*Counsel for Plaintiff*

September 30, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

I. INTRODUCTION .........................................................................................................1

II. RESPONSE TO DEFENDANT'S STATEMENT OF FACTS...................................1

   A. Ms. Conti's military service history.......................................................................1

   B. Ms. Conti's efforts to seek a resolution to her career-advancement impediments ................2

   C. Ms. Conti's involvement in the Disability Evaluation System process ..................................6

   D. Ms. Conti's AFSC retraining .................................................................................7

III. RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE
     ADMINISTRATIVE RECORD AND REPLY TO DEFENDANT'S RESPONSE TO
     PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD........8

   A. The AFBCMR's determination that it lacked authority to correct Ms. Conti's record to
      remove an error or injustice is erroneous and the Defendant has not offered any compelling
      argument to the contrary.. .....................................................................................8

   B. The AFBCMR arbitrarily and capriciously failed to find that Ms. Conti's command's
      procedural violations precluded her promotion to E-7 and failed to correct a demonstrated
      error or injustice in her record. ...........................................................................10

IV. RESPONSE TO DEFENDANT'S MOTION TO DISMISS ...................................13

   A. Standard of Review................................................................................................13

   B. This Court has jurisdiction over Ms. Conti's claims.............................................14

   C. Ms. Conti's allegations of regulatory violations related to her overgrade status and denial of
      career progression and promotion are justiciable because they state facially plausible
      procedural violations in the AFBCMR's decisionmaking and the underlying conduct of Ms.
      Conti's command on review before the Board ....................................................15

   D. Because Ms. Conti's claims are firmly rooted in allegations of procedural error committed
      by Ms. Conti's command, the IG, and the AFBCMR, Ms. Conti need not establish a clear-
      cut legal entitlement to a promotion to state a claim for relief. But, even if she did need to
      establish a clear-cut entitlement, her case meets the standard.. ............................21

V. CONCLUSION ............................................................................................................25

PLAINTIFF'S APPENDIX ...................................................................................App. 492

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adkins v. United States*, 68 F.3d 1317 (Fed. Cir. 1995) ........................................................16, 19

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..........................................................................................14

*Bader v. United States*, No. 21-1501, 2022 U.S. Claims LEXIS 1455 (Ct. Cl. July 6, 2022).......15

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ..........................................................................14

*Bond v. United States*, 47 Fed. Cl. 641 (2000) ..............................................................................16

*Call Henry, Inc. v. United States,* 855 F.3d 1348 (Fed. Cir. 2017) ...............................................13

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) ........................16

*Dodson v. Dep't of Army*, 988 F.2d 1199 (Fed. Cir. 1993) ...........................................................16

*Dysart v. United States*, 369 F.3d 1303 (Fed. Cir. 2004) .........................................................24, 25

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005)...............................................................15

*Gose v. U.S. Postal Serv.,* 451 F.3d 831 (Fed. Cir. 2006) .............................................................11

*Hoskins v. United States*, 61 Fed. Cl. 209 (2004) .........................................................................14

*Krauss v. United States*, 40 Fed. Cl. 834 (1998).......................................................................16, 17

*Lindsay v. United States,* 295 F.3d 1252 (Fed. Cir 2002)...............................................13, 16, 18, 22

*Miller v. United States*, 119 Fed. Cl. 717 (2015)........................................................14, 16, 17, 21

*Murphy v. United States*, 993 F.2d 871 (Fed. Cir. 1993)..........................................................16, 19

*Pedden v. United States*, 145 Fed. Cl. 785 (Ct. Cl. 2019) .......................................................24, 25

*Peoples v. United States,* 101 Fed. Cl. 245 (2011) ........................................................................13

*Perez v. United States,* 156 F.3d 1366 (Fed. Cir. 1998) ...............................................................13

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) .................................................................................11

*Sargisson v. United States*, 913 F.2d 918 (Fed. Cir. 1990).............................................................19

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) .......................................................................................13

*Smith v. Sec'y of Army*, 384 F.3d 1288 (Fed. Cir. 2004 ) ........................................................14, 24

*Strickland v. United States,* 69 Fed. Cl. 684 (2006) ....................................................................13

*Watson v. United States,* 113 Fed. Cl. 615 (2013) .........................................................................12

*Yee v. United States*, 206 Ct. Cl. 388 (1975) .................................................................................13

*Young v. United States,* 497 F. App'x 53 (Fed. Cir. 2012) ...........................................................14

**STATUTES**

10 U.S.C. § 611 ...............................................................................................................................25

10 U.S.C. § 624 ...............................................................................................................................25

10 U.S.C. § 1201 .............................................................................................................................15

10 U.S.C. § 1401 .............................................................................................................................15

10 U.S.C. § 1552 ...................................................................................................................2, 8, 9, 17

10 U.S.C. § 10503 ...........................................................................................................................10

**RULES AND REGULATIONS**

32 C.F.R. § 865 ........................................................................................................................10, 11

Air Force Instruction 36-2101, *Classifying Military Personnel (Officer and Enlisted)* (Mar. 7, 2006) .........................................................................................................................................20, 23

Air Force Instruction 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) ....................................................................................................................6, 12, 17, 21, 23

Air Force Instruction 36-2603, *Air Force Board for Correction of Military Records (AFBCMR)* (Sept. 18, 2017).............................................................................................................................10

AFI 36- 2626, *Airman Retraining Program*, (June 3, 2013) ..........................................................8

Air National Guard Instruction 36-2101, *Assignments within the Air National Guard (ANG)* (Apr. 10, 2012).........................................................................................2, 3, 4, 5, 6, 12, 17, 19, 23

Air National Guard Instruction 36-2502, *Promotion of Airmen* (June 17, 2010)....6, 12, 17, 18, 21

Air Force Instruction 90-301, *Inspector General Complaints Resolution* (Aug. 27, 2015) ............5

Air Force Instruction 36-3212, *Physical Evaluation for Retention, Retirement, and Separation* (Feb. 2, 2006) ................................................................................................................6

Department of Defense Directive 1304.20, *Enlisted Personnel Management System (EPMS)*, (July 28, 2005) .............................................................................................12, 17, 20, 23

RCFC 12 .......................................................................................................................13

RCFC 52.1 ....................................................................................................................14

## I. INTRODUCTION

Plaintiff, Leslie J. Conti, respectfully submits this combined memorandum in reply to Defendant's response to Plaintiff's motion for judgment on the administrative record and in response to Defendant's motions for judgment on the administrative record and to dismiss. ECF No. 34 [hereinafter "Def.'s Mot."]. For the reasons stated herein and in Plaintiff's motion for judgment on the administrative record, ECF No. 33 [hereinafter "Pl.'s MJAR"], this Court has ample reason to deny Defendant's motions to dismiss and for judgment on the administrative record and enter judgment in Ms. Conti's favor.

This Court is authorized and competent to review the AFBCMR's decision at issue in this case and the underlying procedural violations that adversely impacted Ms. Conti's career progression and promotability. Despite Defendant's attempts to persuade this Court otherwise, there is a clear nexus between the procedural violations in this case, their impact on Ms. Conti's promotion eligibility and her non-promotion before her retirement in a lower grade. Not only is the AFBCMR's decision arbitrary, capricious, and contrary to law, it is an abdication of the board's statutory duty to determine the true nature of errors or injustices and grant thorough and fitting relief.

## II. RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

The Government's "statement of facts" is a dense blend of argumentation and facts. Several instances of this warrant a response, clarification, or additional context.

### A. Ms. Conti's military service history

The Government misstates Ms. Conti's military history. *See* Def.'s Mot. 7. Her service began in 1980 with the regular component of the Air Force, not the Ohio ANG, where she served a period of four years. AR224. Thereafter, she completed two years of traditional reserve service.

Her ANG career began in Ohio in August 1991. AR247. When she retired in 2018 after serving in the Active Duty for Operational Support (ADOS) program, she accrued 22 years, 6 months and 19 days of service for basic pay, of which 17 years, 14 months, and 15 days constituted active service for retirement. AR473, 431.

**B.  Ms. Conti's efforts to seek a resolution to her career-advancement impediments**

At various points, the Defendant minimizes the 149th's regulatory obligations to resolve Ms. Conti's overgrade status—and demonstrated violations thereof—while casting blame on Ms. Conti for not resolving them herself. For instance, the Defendant relies on the "shared responsibility" language in the NGB Form 36-11 to suggest that it was Ms. Conti's responsibility to resolve her own overgrade status. Def.'s Mot. 9, 10. The Defendant then uses this flawed premise to accuse Ms. Conti of exhibiting a "lack of effort" to resolve her own overgrade status or assignment to an E-7 position. *See* Def.'s Mot. 17, 41 n. 28; *id.* at 14 (claiming there was no evidence Ms. Conti was "doing anything to resolve her overgrade status or lack of assignment to a E-7 or greater UMD position.")

The Defendant's assertions conflict with the regulatory scheme that places the bulk of the responsibilities on her command. Their position is further undermined by the AFBCMR's findings and decision that are the crux of this case. The AFBCMR found that the 149th violated numerous regulations and that Ms. Conti was the victim of an error or injustice within the meaning of 10 U.S.C. § 1552. The Defendant generally downplays these findings but the AFBCMR determined that Ms. Conti's *unit* "did not comply with ANGI 36-2101, paragraphs 4.2 and 4.2.1 when they established the applicant's overgrade condition effective 1 Jan 12, and again on 12 Jul 15, and allowed her to remain in the overgrade condition beyond 24 months." AR10–

11.[1] The Board also found that "the *unit* did not comply with ANGI 36- 2101, paragraph 2.18.11 . . . by failing to reassign the applicant to the first available position commensurate with her grade for which she was qualified." AR10 (emphasis added); *see also* AR11–12 (characterizing this as a unit's responsibility to correct Ms. Conti's overgrade condition). It further found that her *commander* violated regulation when he failed "to ensure members meet all promotion criteria prior to promotion and to ensure a viable personnel force management plan is in place to provide for the progressive development and upward mobility of the assigned personnel." AR11[2] It found no evidence that her command implemented a force management plan or that "any effort was made to resolve [Ms. Conti's] overgrade condition." *Id.*

Contrary to the Defendant's characterization of the NGB Form 36-11 as intended to "warn" an "over-compensated" member (Def.'s Mot. 8–9), the regulations do not suggest that a member's overgrade status and counseling is some sort of motivational tool to incentivize a member to resolve her own overgrade condition. If anything, it triggers the command's clear duty to timely resolve a member's overgrade condition in a manner that complies with procedural guidelines, which the AFBCMR confirmed Ms. Conti's unit did not do.

---

[1] Despite this finding, the Defendant insists that first NGB Form 36-11's imposition of 36-months of overgrade status was a benign "scrivner's error" from which Ms. Conti actually benefitted because it "gave her 36 months [of] retainability." Def.'s Mot. 9, 13 n. 10. Such a statement ignores the fact that her overgrade status alone made her ineligible for promotion and subjected her to possible removal from service or demotion.

[2] More than merely "doing paperwork," *see* Def.'s Mot. 26, a force management plan is vital for the unit and higher-level Force Support Squadron (FSS) to "meet[] the needs of the ANG." *See* ANGI 36-2101, para. 1.1.3. The purpose of a force management plan—that the 149th did not have (AR11)— is to "provide[] the optimum career progression and promotion opportunity while keeping personnel in excess and overgrade status to a minimum." *Id.* p. 38. Indeed, assignments cannot occur unless they are part of a force management plan. *Id.* para. 2.1.4.1.

The reality is that the *commander and the FSS*—not the subordinate member—control unit-assignment data and wield the force-management-driven reassignment authority required to resolve a member's overgrade condition in compliance with their procedural obligations. Ms. Conti could not simply reassign herself. By way of illustration, in the context of reassignment a member between units serviced by the same FSS or between units located in the same state requires "the concurrence of both gaining and losing unit commanders or be directed by higher authority." ANGI 36-2101, para. 3.1; *see also id* (requiring that unit commanders "exercise due care in making reassignments").

In any event, the evidence shows that Ms. Conti was working to resolve the issue with the limited information access, resources, and authority that she had. The Defendant attempts to discredit the email exchange between Ms. Conti, 1st Lt Terrance Johnson, and her commander, Lt Col Christopher Miller, as "scant evidence" of Ms. Conti's early efforts to work to resolve her overgrade status. Def.'s Mot. 11 n. 6. But the documents are more significant in their proper context. This email evidence indicates that 1st Lt Johnson, as the 149th Communications Flight commander, clearly had access to force-management data and was aware of a potentially available master sergeant (E-7) position for which Ms. Conti could be assigned. *See* AR135. He recommended that Lt Col Miller should coordinate with FSS and a higher-level commander to "play the shell game to keep [her] safe," which presumably alludes to making force-management moves to protect members like her from deleterious effects of being in overgrade status. *See id.* Ms. Conti then elevated the matter directly to her commander, Lt Col Miller. *Id.* There is no evidence he responded.

Later, when Ms. Conti sought a fact-finding IG investigation into these matters, Lt Col

Miller was the investigator, essentially tasked with investigating his own conduct.[3] AR31, 33,

132–33. Perhaps not surprisingly, he dismissed the IG complaint without investigation, citing

lack of evidence of a procedural violation, which was dubious at the time and since then,

NGB/A1PP and the AFBCMR have confirmed was not actually the case. AR33. Notably,

however, Lt Col Miller conceded that Ms. Conti "could have possibly been placed into a

different position to possibly satisfy the AFSC requirement for promotion." *Id.*

Also relevant to her efforts to resolve her overgrade status, Ms. Conti attested that she

was told by her leadership there were no available positions to correct her overgrade condition.[4]

AR104; *see also* AR32. She also attested that her attempts to present her concerns to the wing

commander went unanswered. AR104; *see also* AR32. NGB/A1PP credited Ms. Conti's

assertions, which supported its findings that there was "no evidence the unit commander took

any action to rectify the applicant's overgrade condition" in accordance with ANGI 36-2101,

---

[3] It is difficult to reconcile Lt Col Miller's earlier role as Ms. Conti's commander with his obligation as IG to remain independent and fair. The regulation governing the Air Force IG complaint system states that, "All IGs must maintain a clear distinction between being an extension of the commander and their duty to serve as fair, impartial, and objective fact-finders and problem solvers. They must be sufficiently independent so those complainants requesting IG help will continue to do so, even when they feel the commander may be the problem. Commanders must support this clear distinction for their IGs to be effective." AFI 90-301, *Inspector General Complaints Resolution*, para. 1.2.3 (Aug. 27, 2015). Here, Lt Col Miller *was* Ms. Conti's commander during the time relevant to Ms. Conti's complaint.

[4] Ms. Conti stated in her IG complaint materials that it was not until August 2017 that she discovered there were, in fact, positions in the wing to which she could have been moved to correct her over-grade condition. AR32. The NGB/A1PP Advisory Opinion agreed that "[t]here is evidence which shows that positions were available within the wing commensurate with her AFSC, which would have removed TSgt Conti from being in overgrade status." AR301.

para. 2.18.2.2. AR09, 301. In sum, any suggestion that Ms. Conti is to blame for not resolving her overgrade condition is belied by the facts and the controlling regulations.

## C. Ms. Conti's involvement in the Disability Evaluation System process

The Defendant makes numerous references to Ms. Conti's involvement with the Disability Evaluation System (DES) and her duty limiting conditions, which gives the misleading impression that when she was subject to duty or mobility restrictions, she was not performing her assigned tasks. For instance, the Defendant expresses confusion about the date Ms. Conti "returned to duty" which leaves open the incorrect inference that she was not actually doing the day-to-day work she was expected to perform. Def.'s Mot. 14 n. 11. To be clear, Ms. Conti's daily tasks were entirely administrative. *See* AR35–36. The limitations and the questions of her "fitness" for duty that caused her referral to the DES related to her medical disqualification for worldwide duty and lack of medical clearance for active and inactive duty training. But she was on duty every day performing her administrative duties. *See* AR110. Thus, in this context, a "return to duty" means that she was released from the medical evaluation board (MEB) process and physically qualified for continued military service or "fit for duty," which includes the ability to deploy or mobilize. *See, e.g.,* AFI 36-3212, paras. 3.29.1, 5.9.5.1. She was subject to an assignment limitation code (ALC) that did not affect her promotion eligibility but, again, she was performing all her expected daily tasks and contributing to the unit.

Ultimately, the Defendant's references to Ms. Conti's involvement with the DES are a distraction. Ms. Conti does not dispute that she was promotion ineligible while she was in the DES process. *See* AR105–06; *see* ANGI 36-2502, Table 1.1, Rule 1; AFI 36-2502, Table 10.2, Rule 1. But her requested relief was for corrections to her records to reflect promotion to E-7 effective March 3, 2014, when she was deemed fit for duty in the DES. The requested date is

earlier than the 2016 through 2018 timeframe that she was continually in the DES process and ultimately retired for disability. The Defendant concedes that on March 3, 2014 the only impediments to her promotion eligibility were "her overgrade status and lack of assignment to a UMD position authorized for grade E-7 or greater." Def.'s Mot. 14. And, as argued in Plaintiff's motion for judgment on the administrative record and *infra* Part II.B, Ms. Conti challenges the AFBCMR's decisionmaking with respect to her unit's obligations to place her in an E-7 position and promote her.

**D. Ms. Conti's AFSC retraining**

The Defendant expresses confusion about why Ms. Conti did not retrain into the 3S0X1 AFSC. *See* Def.'s Mot. 15. The issue is somewhat complex but, for context, the second NGB Form 36-11 (AR123) and Classification/On-the-Job Training Action AF Form 2096 (AR122) were signed on July 12, 2015. However, for reasons unknown, the forms were backdated over eight months to October 1, 2014.[5] AR122, 123. The stated basis for the retraining action (documented on an AF Form 2096) was that her 3A171 AFSC, which was the result of the May 2014 AFSC conversion, had changed to a 3S011 personnel AFSC and, thus, required retraining. *See* AR122; 115. Importantly, as of July 12, 2015, Ms. Conti's expiration of service (ETS) date was set at June 10, 2016. AR6, 29, 238.

The assertion that she could not attend training due to medical limitations is derived from her commander, Col Robert Eskridge's, statement to support his request to NGB/A1P for March 8, 2016 exception to policy to extend her ETS. AR29. Col Eskridge stated that Ms. Conti

---

[5] The Defendant claims that Ms. Conti had "essentially had two years between January 2014 and January 2016 in which she could have pursued retraining . . . ." Def.'s Mot. 15. But the AFSC change to 3S0X1 that triggered the retraining requirement did not occur until October 1, 2014 and her commander did not initiate a training action (AF Form 2096) until July 12, 2015, though it was backdated to October 1, 2014. AR115, 122.

currently held a 3A171 AFSC—which she was mandatorily forced into—but was unable to

travel for training the "new AFSC," i.e. the 3S051 personnel AFSC. AR29, 114. The record is

not entirely clear whether Col Eskridge's statement related back to Ms. Conti's status on October

1, 2014 or July 12, 2015. But, either way, the retraining action was fundamentally problematic

because the AF Form 2096 incorrectly noted that a career change worksheet was not required

and, thus, none was completed. AR122; *See* AFI 36-2626, *Airman Retraining Program*, para. 7.3

(June 3, 2013) (requiring a career change worksheet for "all voluntary and involuntary requests

for Retraining [sic]") (contained in Plaintiff's Appendix at App. 492). This error is not

insignificant as a career change worksheet would then have been routed through various levels of

review to approve the retraining, which did not occur. *See id.* paras. 7.4.4, 7.4.6.2, 7.4.6.7,

7.4.7.2, 7.4.7.8.

### III. RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

**A. The AFBCMR's determination that it lacked authority to correct Ms. Conti's record to remove an error or injustice is erroneous and the Defendant has not offered any compelling argument to the contrary.**

The Defendant's argument that the "BCMR lacks the authority to order a state TAG to

promote a guardsman of that state," Def.'s Mot. 43, fundamentally misstates the issue to create a

straw-man argument that is far afield from the AFBCMR's stated basis for denial. The

AFBCMR stated, incorrectly, that its 10 U.S.C. § 1552 records-correction authority did not

extend to *any* of Ms. Conti's requested relief; that its hands were tied because it was wholly a

state issue. AR12. Ms. Conti requested that the "AFBCMR correct her records to reflect (a)

promotion to E-7 with an effective date of March 3, 2014; and (b) an adjusted retired grade of E-

7 effective on the date of her retirement." AR7, 94–95. As argued in Plaintiff's motion for

judgment on the administrative record, the AFBCMR has full authority to make such corrections to Ms. Conti's federal military records that would, in turn, result in full relief. Pl.'s MJAR 24–26. Indeed, NGB/A1PP clearly understood this when Col Kirk stated that, should the AFBCMR grant relief, ARPC should correct: its system of records to reflect MSgt (E-7) with a new effective date or rank; her DD 214 and/or NGB Form 22 (presumably to reflect a new rank, date of rank, and retired grade); and the Secretary of the Air Force's Special Order Number ACD-02623 to reflect the corrected rank. AR302.

The Defendant does not address the argument that the AFBCMR's 10 U.S.C. § 1552 records-correction authority extends to these Air Force records. If not an outright concession, it is certainly telling that the Defendant has no meaningful response. Instead, the Defendant attempts to distinguish the AFBCMR cases filed in Plaintiff's Appendix, arguing that none of them stand for the proposition that a BCMR can promote a national guard member. But the Defendant misses the point. The AFBCMR cases were cited to illustrate the AFBCMR's myopic, fallacious rationale that it could not grant any records-correction relief to Ms. Conti solely because she was a member of the ANG. All the cited cases support the proposition that the AFBCMR routinely makes corrections for ANG applicants to records under its purview, undeterred by the applicant's dual ANG/federal reservist status. It is beyond dispute that the AFBCMR had authority under 10 U.S.C. § 1552 and its rationale stating otherwise is clearly arbitrary, capricious, and contrary to law.

**B. The AFBCMR arbitrarily and capriciously failed to find that Ms. Conti's command's procedural violations precluded her promotion to E-7 and failed to correct a demonstrated error or injustice in her record.**

The government begins its defense of the AFBCMR's decisionmaking with an anemic argument that the TXANG's input on the matter was somehow unfairly excluded from the adjudication process. According to the Defendant, the AFBCMR's choice to get an advisory opinion from the National Guard Bureau, and not the TXANG itself, has led the AFBCMR to consider "incomplete, one-sided evidence" when it concluded that the 149th committed numerous procedural violations. Def.'s Mot. 39. This argument misconstrues the AFBCMR process and is ultimately irrelevant.

In AFBCMR proceedings, the applicant bears the burden to establish by a preponderance of the evidence the existence of an error or injustice in their record. 32 C.F.R. § 865.4(a); AFI 36-2603, para. 4.1. The AFBCMR may solicit advisory opinions from Air Force organizations or officials in considering a petition. 32 C.F.R. § 865.4(a)(1). Here, the AFBCMR sought an advisory opinion from the NGB which is more than a mere "channel of communications on matters pertaining to the TXANG." Def'.'s Mot. 39. NGB/A1PP is competent to analyze and opine on the TXANG's compliance with mandatory procedures. 10 U.S.C. § 10503 (11) (NGB duty is "[i]ssuing directives, regulations, and publications consistent with approved policies of the Army and Air Force, as appropriate."); *id.* § 10503 (5) ("Monitoring and assisting the States in the organization, maintenance, and operation of National Guard units"); *id.* § 10503 (3) ("Prescribing the training discipline and training requirements . . . ."). Indeed, the AFBCMR routinely seeks advisory opinions from the NGB in cases involving ANG members, as demonstrated by the AFBCMR decisions provided in Plaintiff's Appendix and numerous cases

available in the BCMR reading room or on the Lexis/Nexis database. Once all evidence is submitted, "The Board will make determinations on . . . [w]hether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what corrections are needed to provide full and effective relief." 32 C.F.R. § 865.4(h).

Here, although Ms. Conti challenges some of NGB/A1PP's conclusions, the NGB substantiated Ms. Conti's procedural-violation allegations and the AFBCMR endorsed these findings, determining that she had demonstrated the existence of an error or injustice. The notion that because the AFBCMR did not specifically solicit the opinion of the TXARNG does not make the record "incomplete" nor does it undermine the Board's findings that Ms. Conti's unit committed numerous procedural violations. Further, the Defendant concedes that nothing barred the AFBCMR or the NGB from communicating with or soliciting information from the TXARNG. Def's Mot. 39 n. 27. Indeed, Ms. Conti's AFBCMR remand application specifically requested that "any advisory opinion solicited from an office of primary responsibility (OPR) be sought from an office with access to documents and data relevant to the facts of this case." AR95. The Defendant's complaint simply rings hollow.

The Defendant next argues that the AFBCMR's claim that Ms. Conti's promotion relief was "wholly speculative" is not arbitrary and capricious. As a preliminary matter, much of counsel's defense of this finding amounts to *post hoc* justification that cannot substitute for the AFBCMR's proffered rationale. *Gose v. U.S. Postal Serv.*, 451 F.3d 831, 838 (Fed. Cir. 2006) ("The courts may not accept appellate counsel's *post hoc* rationalizations for agency action; [*SEC v. Chenery Corp.*, 332 U.S. 194 (1947)] requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself . . . .") (ellipsis in

original) (citation omitted); *Watson v. United States*, 113 Fed. Cl. 615, 635 (2013) (applying rule to military record correction board).

The Defendant provides a lengthy discussion of so-called "significant hurdles to promotion" that he believes support the AFBCMR's "wholly speculative" rationale but the AFBCMR itself did not articulate. Def.'s Mot. 40–42. To be clear, the AFBCMR's opinion that Ms. Conti's promotion was speculative appears to relate to the regulatory requirement that Ms. Conti's overgrade status be resolved by placing her in another E-6 position—a requirement that her unit indisputably violated. AR11–12. It further appears to be based on the AFBCMR's endorsement of NGB/A1PP's opinion that there was no guarantee TAG would have approved her promotion. AR311; AR12. Entertaining any additional explanation from Defendant would impermissibly take this Court beyond an analysis of the rationale expressed by the AFBCMR.

As already argued in Plaintiff's motion for judgment on the record, placing Ms. Conti in an E-6 position might have satisfied ANGI 36-2101, para. 2.18.11, but failing to place her in an E-7 authorized position would have contravened their obligation to provide stable career progression under DoDD 1304.20—an obligation the AFBCMR found that her unit violated. Pl.'s MJAR 28–29. The Defendant may argue that this "goes entirely too far." Def.'s Mot. 41 n. 28. But the AFBCMR conceded that the 149th violated DoD 1304.20 and ANGI 36-2101 and that "this error was exacerbated by the unit's partial compliance with ANGI 36-2502, and . . . AFI 36-2502." AR11.[6] Importantly, the Board then found that these violations caused her promotion ineligibility which "created an injustice upon the applicant by impairing her ability to

---

[6] It bears noting that the Texas Adjutant General (TAG) "is responsible for implementing, monitoring and enforcing the policies and procedures within the state as outlined in [ANGI 36-2101]." ANGI 36-2101, para. 1.1.2.  Similarly, the TAG was "responsible for implementing the policies and procedures within the state as outlined in [ANGI 36-2502]." ANGI 36-2501, para. 1.1.2. Thus, to a certain extent, these violations are imputed to the TAG.

advance her career" and that they were "to a certain extent, the result of error or oversight on the part of the unit." AR11.

There is clear nexus between the procedural violations in this case, their impact on Ms. Conti's promotion eligibility and her non-promotion before her retirement in a lower grade. *See Lindsay v. United States*, 295 F.3d 1252, 1259 (Fed. Cir. 2002). It has long been held in the court of federal claims that "when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate" and may be viewed as acting in an arbitrary and capricious fashion. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (quoting *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975)); *Peoples v. United States*, 101 Fed. Cl. 245, 262 (2011); *Strickland v. United States*, 69 Fed. Cl. 684, 687 (2006). This is precisely what the AFBCMR has done here with its failure to correct a conceded error or injustice in Ms. Conti's records and by relying on an incorrect claim that it has no records-correction authority to act.

## IV. RESPONSE TO DEFENDANT'S MOTION TO DISMISS

### A. Standard of Review

To prevail on its motion to dismiss, a defendant must show that the "facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). When analyzing a motion to dismiss, a court must construe the allegations of the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court similarly assumes that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017). Thus, to survive a motion to dismiss pursuant to RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is

13

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant. *Id.* at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Relevant here, where parties present and the Court considers matters beyond the pleadings, such as the administrative record, the Court may convert the defendant's motion to dismiss to a motion on the administrative record under RCFC 52.1. *See Young v. United States*, 497 F. App'x 53, 58 n.7 (Fed. Cir. 2012); *see also Hoskins v. United States*, 61 Fed. Cl. 209, 218 (2004) ("Although defendant's motion to dismiss on the alternative basis of nonjusticiability is a Rule 12(b)(6) motion, it must be decided under the motion for summary judgment standard because an administrative record has been filed in this case and the evidence therein is necessary to the disposition of defendant's motion.") (citing RCFC 12(b)).

## B. This Court has jurisdiction over Ms. Conti's claims.

The Defendant begins its Rule 12 argument with a flawed jurisdictional challenge, arguing that the Military Pay Act does not provide requisite money-mandating basis for Ms. Conti's promotion-related claims. Def.'s Mot. 28–30. The Defendant relies primarily on the approach to Military Pay Act jurisdiction articulated in *Smith v. Sec'y of Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004), which acknowledged the Military Pay Act generally applies to promotion-related claims but engaged in an additional step of addressing whether the act could provide a monetary remedy. But, as observed in *Miller v. United States,* 119 Fed. Cl. 717 (2015), "the holding in *Smith* has been eroded" by more recent Federal Circuit precedent. No longer does the

14

Court apply the type of two-step analysis the Defendant suggests is required in this case. *Id.* at 729 (quoting *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) ("The single step would be one in which the trial court determines both the question of whether the statute provides the predicate for its jurisdiction, and lays to rest for purposes of the case before it the question of whether the statute on its merits provides a money-mandating remedy.")).

Here, Ms. Conti's amended complaint asserts promotion-related back pay and retired pay claims anchored by procedural violations and a challenge to the AFBCMR's decisionmaking. The Military Pay Act provides for the difference in pay Ms. Conti would have received had the AFBCMR properly exercised its authority and found that she should have been promoted consistent with applicable regulation and the disability pay statutes, 10 U.S.C. § 1201 and 10 U.S.C. § 1401, provide for the additional retired pay Ms. Conti would receive if the AFBCMR then adjusted her retired grade. The statutes clearly provide the predicate for this Court's jurisdiction under the applicable single-step analysis articulated in *Fisher*.

**C. Ms. Conti's allegations of regulatory violations related to her overgrade status and denial of career progression and promotion are justiciable because they state facially plausible procedural violations in the AFBCMR's decisionmaking and the underlying conduct of Ms. Conti's command on review before the Board.**

Although some cases may present nonjusticiable controversies that are "beyond the ken of judicial competence," Def.'s Mot. 17, this is not one of them because it is premised on procedural defects in the AFBCMR's decision-making process and in the underlying actions of the agency challenged before the Board. It is well within the competency of this Court to determine whether these procedural standards were properly followed. *See Bader v. United States*, No. 21-1501, 2022 U.S. Claims LEXIS 1455, at *29–32 (Ct. Cl. July 6, 2022).

"The military no less than any other organ of the government is bound by statute, and even when granted unfettered discretion by Congress the military must abide by its own

15

procedural regulations should it choose to promulgate them." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (citing *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993)). Although the "merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy." *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995). "A claim of procedural violations may present a justiciable controversy because 'the test or standards against which this court measures the military's action are inherent: they are the applicable statutes and regulations.'" *Lindsay,* 295 F.3d at 1257–58 (quoting *Adkins*, 68 F.3d at 1323)). *See also Bond v. United States*, 47 Fed. Cl. 641, 651 (2000) (finding that the plaintiff's challenge to his military duty assignment was justiciable because the plaintiff alleged that the military did not follow the classification scheme that it was required by regulation to follow); *Dodson v. Dep't of Army*, 988 F.2d 1199, 1207 n.7 (Fed. Cir. 1993) (reviewing the procedural regularity of the challenged action, but not the substance of the Army's decision, and finding Army Board for Correction of Military Records erred in failing to correct procedural error).

Ms. Conti's claims seek review of an AFBCMR decision and are firmly grounded by allegations of procedural violations that provide clear tests and standards by which this Court can evaluate the agency's actions. Importantly, these allegations are asserted through a procedural challenge to the AFBCMR's decision. *See Miller*, 119 Fed. Cl. at 731 ("[O]nce a service-member has had recourse to a corrections board, the focus is both on the procedural infirmity alleged before the board, as well as on a review of the board's decision under the arbitrary and capricious standard."); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (2020). *See also Krauss v. United States*, 40 Fed. Cl. 834, 839 (1998) ("It is well

established that the legal sufficiency of a [10 U.S.C. § 1552 records correction board] decision presents a justiciable issue, even if the challenged . . . decision relates to a purely discretionary military decision like the fitness for duty of a servicemember."), *aff'd*, 185 F.3d 886 (Fed. Cir. 1999).

Citing binding regulation, Ms. Conti's amended complaint asserts allegations that AFBCMR determined constituted errors or injustices within the meaning of 10 U.S.C. § 1552. The Air Force violated procedures by failing to resolve her overgrade condition within 24 months and reassigning her to a position for which she was qualified and in accordance with a management plan that provides the optimum career progression and promotion opportunity while keeping personnel in excess and overgrade status to a minimum. *See* Am. Compl. paras. 18, 114, 115, 118. It further plausibly alleges that but for these violations that perpetually affected her promotion eligibility, she would have been promoted. *See, e.g., id.* paras. 43, 112. Contrary to Defendant's assertions, these regulations provide objective, discernable regulatory standards that her command was required to follow and did not, as the amended complaint alleges.

The AFBCMR's decision confirms many of the underlying procedural violations Ms. Conti raised on remand and only enhances to the competency of this court to evaluate whether these regulations were properly followed and whether the AFBCMR's decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *See Miller*, 119 Fed. Cl. at 731–32. The AFBCMR conceded that the 149th violated DoD 1304.20 and ANGI 36-2101 and that "this error was exacerbated by the unit's partial compliance with ANGI 36-2502, and . . . AFI 36-2502" which contributed to her promotion ineligibility. AR11. Importantly, the Board then found that these violations and Ms. Conti's promotion ineligibility "created an injustice upon the applicant by impairing her ability to advance her career" and that they were "to a

certain extent, the result of error or oversight on the part of the unit." AR11. Ms. Conti's complaint alleges that there is a nexus between these career-impairing regulatory violations, her promotion ineligibility and her lack of promotion when she otherwise would have met the eligibility criteria. *See* Am. Compl. paras. 18, 114, 115, 118. Thus, the AFBCMR's failure to correct the error or injustice is arbitrary, capricious, and contrary to law. *Id.* paras. 116, 120. These considerations are well within the Court's competency to evaluate. *See Lindsay*, 295 F.3d at 1259.

The Defendant asserts several arguments that Ms. Conti's promotion-related claims are nonjusticiable but none are persuasive given the clear procedural violations at the heart of this case and the Court's clear competence to review the AFBCMR's decision. The Defendant claims that Ms. Conti was not "participating in the promotion process" yet offers no explanation as to when the process begins for ANG members like Ms. Conti. Def.'s Mot. 32 n. 26. The Defendant nonetheless argues that Ms. Conti's alleged procedural violations relate to an assignment instruction, not a promotion instruction, and therefore there is no inherent test or standard for the Court to measure the Air Force's conduct. *Id.*

Assignments are an inextricable component of the promotion process for enlisted ANG members and, therefore, failure to follow assignment regulations can negatively affect promotion eligibility and consideration. Far from being "upstream" from the promotion process, personnel force-management procedures regulating assignments and AFSCs are key elements of the promotion system for ANG members. *See, e.g.,* ANGI 36-2502, para. 1.1.4 (command required to implement viable force management plan "to provide for the progressive development and upward mobility of their assigned personnel."); *see id.* Table 2.1, Rule 6 (promotion to E-7 requires that a member hold a 7-skill level in their PAFSC); *id.* para. 2.1.2 (member must be

assigned to "a valid UMD position with an authorized grade greater than or equal to the grade for which the member is being recommended" and cannot be in overgrade).

As alleged in Ms. Conti's Amended Complaint, the Air Force's violations of these "assignment" provisions had a clear, discernable impact on Ms. Conti's career progression, promotion eligibility, and promotion. *See, e.g.*, Am. Compl. paras. 17, 18, 81, 112, 114, 118. Indeed, the AFBCMR itself conceded that her unit's regulatory violations impaired her ability to advance in her career, which unjustly contributed to her promotion ineligibility. To the extent she was not technically "participating in the promotion process," the reason she was kept from the process was due to her command's failure to follow binding regulation, which is reviewable by this Court. *See Lindsay*, 295 F.3d at 1258.

Defendant next claims that assignment decisions are generally matters of a commander's discretion and therefore there are no inherent tests or standards to measure the Air Force's conduct. Def.'s Mot. 32. As this Court has held numerous times, "[i]n cases in which procedural violations are alleged, the test or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations." *Adkins*, 68 F.3d 1317, 1323; *Murphy*, 993 F.2d at 873; *Lindsay*, 295 F.3d at 1257–58; *see also Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990) (holding that when the military promulgates procedural regulations and instructions and makes them the basis for a personnel action, that action is "subject to judicial review for compliance with those regulations and instructions.")

The Defendant cites a few isolated provisions of ANGI 36-2101 that they argue give a commander unreviewable discretion over assignments. Def.'s Mot. 33–34. But the argument ignores the clear, objective procedures that governed her command's conduct and required specific action when Ms. Conti's position became overgrade—procedures that the AFBCMR

confirmed had been violated. *See* AR10–11. For example, the Defendant ignores the overall requirement a command "provide visible, relatively stable career progression opportunities over the long term;" the 24-month limitation period (which the initial NGB Form 36-11 exceeded); and the command's duties to identify members in overgrade 12 months before the expiration period and to "provide[] the optimum career progression and promotion opportunity *while keeping personnel in excess and overgrade status to a minimum*"—all of which frame the command's obligation to reassign an overgrade member to the first available position commensurate with their grade and for which they are qualified. *See* DoDD 1304.20, para. 4.2.2; ANGI 36-2101*, para. 1.1.3; *id.* at p. 38; para. 2.18.11 (emphasis added). The Defendant's argument also ignores evidence arising during the IG and AFBCMR process that there were viable available positions to resolve her overgrade status to make her promotion eligible, through force-management decisions. *See* AR33, 300–01.

Further, whether a member is "qualified" is not reserved wholly to a commander's discretion as the Defendant insists. Def.'s Mot. 33. Rather, it is controlled by objective qualification criteria such as the member's AFS, skill level attained by, among other things, acquiring technical knowledge and serving a certain amount of time in service—all encapsulated by a member's AFSC within the context of a defined classification scheme. *See* AFI 36-2101, para. 1.2.3.1 ("The classification system is established to identify requirements and identify the personnel qualified to fill those requirements."); *see also id.* para. 3.1.1–3.1.6 (describing factors that determine a PAFSC, which thereafter indicates the duties for which a member is most qualified to perform). All these items suggest that it was *not* a discretionary command decision that kept Ms. Conti in overgrade status and promotion ineligible, but a series of regulatory violations that the Court is competent to assess.

The Defendant's suggestion that promotions are limited and competitive is also misleading. *See* Def.'s Mot. 36–37. The Defendant's attempts to minimize Lt Col Eskridge's "promote" recommendation on Ms. Conti's EPR fall flat. *See id.* The regulation the Defendant quotes indicates that most airmen receive "promote" recommendations as it indicates that the member is performing, with most of her peers, at or above standards and expectations. Def.'s Mot. 36. There may be stronger recommendation options authorized by regulation but a "promote" rating on an EPR is still a recommendation from a commander that the member be promoted. See AR35–36. Likewise, there are weaker options such as "DO NOT PROMOTE" and "NOT READY NOW" that Lt Col Eskridge tellingly did not select. AR36. Further, the Defendant's claim that promotions are "limited" and "highly competitive" (Def.'s Mot. 36) is misleading because promotion eligibility for ANG members, by regulation, necessarily entails that the position the member is already filling is authorized for the higher grade into which they are promoted. *See* ANGI 36-2502, para. 2.1.2; AFI 36-2502, para. 10.1.15.2.

In sum, Ms. Conti's claims are plainly justiciable because it seeks a challenge to the AFBCMR decision and whether underlying regulations were properly followed.

**D. Because Ms. Conti's claims are firmly rooted in allegations of procedural error committed by Ms. Conti's command, the IG, and the AFBCMR, Ms. Conti need not establish a clear-cut legal entitlement to a promotion to state a claim for relief. But, even if she did need to establish a clear-cut entitlement, her case meets the standard.**

A plaintiff adequately states a claim upon which relief can be granted when they assert a procedural challenge to a decision not to promote the member. *See Miller*, 119 Fed. Cl. at 731. The *Miller* court discerned a claim where, as Ms. Conti does here, "a plaintiff seeks review not of the substance of a military decision, but instead its compliance with an applicable statute or regulation, this court may review a military promotion decision for procedural error." *Id*. The Court further found "once a service-member has had recourse to a corrections board, the focus is

both on the procedural infirmity alleged before the board, as well as on a review of the board's decision under the arbitrary and capricious standard." *Id*. at 731. Denying the defendant's motion to dismiss, the court identified a procedural issue inherent to the plaintiff's military pay claim relating to his promotion in the complaint. *Id*. at 732.

Further, a claimant may be entitled to relief if they can set forth a *prima facie* case that there is a nexus between a clear violation of a specific objective requirement of a statute or regulation amounting to an error or injustice and subsequent adverse action. *Lindsay*, 295 F.2d at 1259. Here, as raised in the Amended Complaint, discussed throughout this memorandum and her previous motion for judgment on the administrative record, Ms. Conti has established that her unit committed numerous procedural violations. AR10–12; *see also* AR300–301. The AFBCMR conceded these violations impaired her ability to advance in her career and unjustly contributed to her promotion ineligibility. AR11. Thus, although the TAG does have authority to promote an ANG member, the lack of TAG consideration was a consequence of Ms. Conti's command's numerous procedural errors related to their failure to resolve her overgrade status and ensure optimum career progression. Ms. Conti has clearly asserted claims upon which relief can be granted.

Even if Ms. Conti needed to establish a clear-cut entitlement to promotion to state a claim for relief, the facts of her case meet the standard. As alleged in the Amended Complaint and explained in detail in Plaintiff's motion for judgment on the administrative record, Ms. Conti's promotion ineligibility and failure to promote was caused by her unit's violations of mandatory procedure. Her unit violated regulations when it placed her in overgrade status twice for periods longer than 24 months and then failed to even monitor her status or take mandatory action to reassign her into a position commensurate with her grade and for which she was qualified. *See*

AR 10–11 (confirming violations of ANGI 36-2101, paragraphs 4.2, 4.2.1, 2.18.2.2, and 2.18.4;

AFI 36-2502, paragraphs 10.1.11.2 and 10.1.11.3). As the AFBCMR found, her unit further

violated the regulatory requirement that she be provided "visible, relatively stable career

progression opportunities." *See* DoDD 1304.20, para. 4.2.2; *see also* ANGI 36-2101, at 38

(purpose of required force management plan—that the 149th did not have (AR11)— is

"provide[] the optimum career progression and promotion opportunity while keeping personnel

in excess and overgrade status to a minimum.").

      Ms. Conti alleges that her unit's failure to place her in an E-7 authorized position violated

their requirement to provide stable career progression opportunities. Am. Compl. paras. 1, 112,

116, 119. Indeed, the AFBCMR concluded that her unit's violation of DoDD 1304.20 was an

"error [that] was exacerbated by the unit's partial compliance with ANGI 36-2502, and . . . AFI

36-2502, whereby the applicant was appropriately not promoted due to ineligibility, but that

ineligibility was, to a certain extent, the result of error or oversight on the part of the unit,

creating an injustice upon the applicant by impairing her ability to advance in her career." AR

11. In her IG complaint, Ms. Conti stated that she had discovered in 2017 that there were

positions for which she was qualified and one of the positions had an E-7 authorized grade that

Ms. Conti explained was filled by an out-of-state member who needed to be retrained into the

position. AR104. She argued that she "should have been reassigned to this position when it

became available before recruitment of from out-of-state." *Id.* Although he dismissed the

complaint, Lt Col Miller acknowledged Ms. Conti's point that she "could have possibly been

placed into a different position to possibly satisfy the AFSC requirement for promotion." AR167.

      By March 3, 2014, Ms. Conti would have been promotion eligible had the 149th properly

resolved her overgrade status and placed her in an E-7 position that satisfied the dual regulatory

requirements that she be placed the first available position commensurate with her grade and qualifications and provided stable, career progression and promotion opportunities. In short, her command's procedural violations prevented her from meeting promotion-eligibility requirements and from advancing in her career. *See Pedden v. United States*, 145 Fed. Cl. 785, 795 (Ct. Cl. 2019) (explaining that a promotion prevented or delayed by a subordinate official's misconstruction of a statute qualifies as a case of clear-cut legal entitlement).

The Defendant's argument that the promotion process required command recommendation and TAG approval does not undermine Ms. Conti's ability to meet the clear-cut entitlement standard. *See* Def.'s Mot. 36–37. Instructive cases clearly contemplate that the standard may be met even if there are discretionary acts that would have needed to occur absent the improper action that prevented the promotion. For instance, *Dysart v. United States*, 369 F.3d 1303 (Fed. Cir. 2004) is a leading case cited to articulate the clear-cut entitlement standard. *See, e.g. Smith,* 384 F.3d at 1294–95; *Pedden*, 145 Fed. Cl. at 795–96 (citing *Smith* to frame its discussion of the clear-cut entitlement standard).

In *Dysart*, the Federal Circuit observed that "redress may be afforded for a promotion improperly denied" and, in such cases,

> it is apparently assumed that the constitutionally-mandated steps in the appointment process - nomination, confirmation, and actual appointment - would be followed absent improper action by subordinate officials, and that the rare exercise of Presidential (or Senate) discretion not to make the appointment creates no Article III bar to the action in the Court of Federal Claims.

*Dysart*, 369 F.3d at 1316. Put another way, a plaintiff can sustain a promotion-related claim even if, absent improper action, the promotion would have required future steps and would be subject to potential discretionary removal from the process.

24

In *Pedden v. United States*, the court found that the plaintiff met the standard even though plaintiff still would have required recommendation by a promotion selection board absent the alleged statutory and regulatory violations at the heart of the case. Although the promotion selection board that Pedden was prevented from meeting had a 100% selection rate, the board's recommendation authority was nonetheless discretionary and otherwise required Presidential approval. *See* 10 U.S.C. §§ 611(a); 624(a)(1). To be clear, Ms. Conti was an enlisted member and was not subject to the constitutional process discussed in *Dysart*, *Smith* and *Pedden*. But these cases illustrate a broader point: the fact that promotion-related processes needed to occur absent the improper actions of subordinate officials does not undermine a plaintiff's clear-cut entitlement argument. Applied here, Ms. Conti's case meets the clear-cut entitlement standard even though her promotion to E-7 would have required various later steps had her unit not committed the numerous procedural violations demonstrated in the record and otherwise found by the AFBCMR.

## V. CONCLUSION

Based on the foregoing, Ms. Conti respectfully requests that the Court grant Plaintiff's Motion for Judgment on the Administrative Record and deny Defendant's Motion for Judgment on the Administrative Record and Defendant's Motion to Dismiss.

Dated:  September 30, 2022                    Respectfully submitted,

                                                      /s/ *Brian D. Schenk*
                                                      Brian D. Schenk
                                                      Midwest Military & Veterans Law, PLLC
                                                      400 S. 4th Street, Suite 401-510
                                                      Minneapolis, Minnesota  55415
                                                      Telephone: (202) 557-6570 (c)
                                                      brian@militaryandveteranslaw.com
                                                      *Counsel for Plaintiff*